## INDEX OF APPENDIX MATERIAL

Ex. 1:    Secondment Legal Services Agreement dated July 1, 2012

Ex. 2:    Supplemental secondment engagement letter dated September 25, 2012

Ex. 3:    Agreement between Cogan & Partners LLP and Stone Pigman Walther Wittmann L.L.C. dated January 1, 2017

Ex. 4:    Texas Secretary of State Index of Records for Cogan & Partners LLP

Ex. 5:    Texas Secretary of State Annual Report of Cogan & Partners LLP filed May 30, 2017

Ex. 6:    Texas Secretary of State Annual Report of Cogan & Partners LLP filed May 20, 2019

Ex. 7:    Texas Secretary of State Notice of Impending Termination of Cogan & Partners LLP filed April 1, 2021

Ex. 8:    Texas Secretary of State Business Organizations Inquiry for Cogan & Partners LLP as of August 19, 2021

Ex. 9:    Louisiana Secretary of State record of any mergers for Stone Pigman Walther Wittmann L.L.C.

# Exhibit 1

Exhibit 1

# LEGAL SERVICES AGREEMENT

LEGAL SERVICES AGREEMENT (the **"Agreement"**) dated effective as of July 1, 2012 among CORNUCOPIA OIL AND GAS COMPANY, LLC. (**"Cornucopia"**) and its subsidiary, FURIE OPERATING ALASKA, LLC, (**"FOA"**), each of 100 Enterprise Avenue, League City, Texas 77573 (Cornucopia and FOA collectively called the **"Companies"**), KAY RIECK of Taj Grandeur Residences, Crescent Road West, Palm Jumeirah, Dubai, UAE, (**"Rieck"**) and   MICHAEL A. (TONY) NUNES, of 2601 South Broadway, La Porte, Texas 77571 (the **"Legal Consultant"**).   Companies, Rieck and Legal Consultant, each a **"Party"** or if all, **"Parties"**.

## WITNESSETH:

1.      SERVICES. Companies and Rieck engage Legal Consultant to serve as legal consultant and corporate counsel for the Companies (**"Legal Counsel"**) and legal consultant to Rieck, for up to a maximum of 100 hours per month.

2.      TERM. On a year to year basis unless terminated in writing by 30 days prior written notice by the Companies or Rieck (**"Term"**).

3.      DUTIES AND SERVICES. Legal Consultant shall serve as Legal Counsel to the Companies and as United States legal counsel and consultant to Rieck.   Companies and Rieck acknowledge that Legal Consultant is a partner of Cogan & Partners, LLP and may undertake legal work for other clients at any time as long as they do not directly compete with the business of the Companies and Rieck.

4.      FES. Companies and Rieck shall pay or cause to pay Legal Consultant a fixed fee of Fifty Thousand per month (Six Hundred Thousand ($600,000 each year) payable on a twice-monthly basis during the Term (the **"Fees"**). In their discretion, Companies and Rieck may agree to annual cost of living increases for Legal Consultant, not to exceed 3% annually.

5.      OTHER BENEFITS. `The Companies or Rieck shall reimburse Legal Consultant in full for all reasonable and necessary business, travel, entertainment and other related expenses in connection with his legal services for the Companies and/or Rieck.

6.      DEATH OR DISABILITY. The obligations of the Companies and Rieck hereunder shall terminate in the event of (i) the death of the Legal Consultant and (ii) if Legal Consultant fails to perform his services because of physical or mental incapacity or disability for a continuous period of more than 90 days in any calendar year.   In such case, Legal Consultant or his legal representative, as the case may be, shall continue to receive the Fees and benefits to which he is entitled until the end of the month in which termination or death occurs. Any benefits due under Section 5 shall immediately vest upon Legal Consultant's death.

7.      SEVERABILITY.   If any provision of this Agreement or any part hereof is invalid, unlawful or incapable of being enforced by reason of public policy or any rule of law or principle of equity, all conditions and provisions of the Agreement which can be given effect without such invalid, unlawful or unenforceable provision shall, nevertheless, remain in full force and effect.

1



8.     GOVERNING LAW.  This Agreement shall be governed by, and construed interpreted and enforced in accordance with, the laws of the State of Texas.

9.     **INDEMNIFICATION.**

(A) INDEMNIFICATION. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE COMPANIES AND RIECK EACH AGREES, JOINTLY AND SEVEERALLY, TO RELEASE, PROTECT, DEFEND AND INDEMNIFY AND HOLD FREE AND HARMLESS THE LEGAL CONSULTANT FROM, FOR AND AGAINST ANY AND ALL CLAIMS, DEMANDS, CAUSES OF ACTION, EXPENSES, LIABILITY, JUDGMENTS, AWARDS OR LOSSES WHATSOEVER (HEREINAFTER REFERRED TO AS "CLAIMS") BROUGHT OR SUFFERED BY ANY PERSON RELATING TO OR ARISING FROM,  OR ARE IN ANY WAY CONNECTED WITH OR RESULT FROM, ANY (I) ACTIVITY OR SERVICES BY LEGAL CONSULTANT UNDER THIS AGREEMENT, (II) BREACH OF THIS AGREEMENT BY COMPANIES OR RIECK OR (III) COMPANIES OR THEIR MEMBERS' OR RIECK'S FAILURE TO COMPLY WITH ANY LAW OR REGULATION, EXCEPT TO THE EXTENT ANY SUCH CLAIMS ARE CAUSED BY LEGAL CONSULTANT'S GROSS NEGLIGENCE, WILLFUL MISCONDUCT OR FRAUD .

(B) The Companies and Rieck shall provide to and protect Legal Consultant throughout the Term, with insurance coverage for all risks traditionally covered by insurance for directors, officers and legal counsel of a consultant.

10.     CONFIDENTIALITY. This Agreement and all provisions hereof shall remain confidential and may not be disclosed by any party hereto without the express written consent of the other party, provided, however, that same may disclosed to (i) the Companies and Rieck's accountants, bankers, attorneys, or officers provided same have a reason to know and agree to hold the information confidential, and (ii) to any person pursuant to a court order from a court with appropriate jurisdiction over Companies or Rieck or to any regulatory authority as may be required by applicable law.

11.     EXECUTION.     This Agreement may be executed by original or electronic signatures in one or more counterparts, all of which when read together shall constitute one instrument.

*[Signatures on the next page]*

2

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement effective as of the day and year first above written.

**CORNUCOPIA OIL AND GAS OMPANY, LLC.**

By: _____
Name: _____Kay Rieck_____
Title: _____

**FURIE OPERATING ALASKA, LLC**

By: _____
Name: _____KAY RIECK_____
Title: _____

_____
**KAY RIECK, individually**

_____
**MICHAEL A. (TONY) NUNES**

3

# Exhibit 2

Exhibit 2

# COGAN & PARTNERS LLP

1001 McKinney, Suite 1600
Houston, Texas 77002

www.coganpartners.com
t: 713.651.1881  f: 713.651.1888

September 25, 2012

Kay Rieck
c/o Energy Capital Invest Group
Stuttgart
Germany

Kay:

This letter supplements the Engagement letter between you, Furie Petroleum Company LLC (collectively, *"Furie"*) and Cogan & Partners, LLP dated October 28, 2011 (*"Engagement Letter"*) and documents certain changes in the relationship between Furie (and its affiliates) and Cogan & Partners, LLP.

As previously agreed with you, for the forseeable future, Tony Nunes will be seconded to work for you on a part-time consulting basis as special legal counsel to you and Furie's, affiliates, Furie Operating Alaska, LLC) (*"FOA"*) and Cornucopia Oil & Gas Company, LLC (*"Cornucopia"*) and their affiliates (collectively, the *"Company"*).  In light of this arrangement Kay Rieck, the Company and Cogan & Partners, LLP agree as follows:

1.  Effective as of July 1, 2012, Tony will work as special legal consultant for Kay Rieck, FOA and Cornucopia half days (up to a maximum of 80 hours per month) and the remainder of his time he will continue to work for other clients of, and will remain a partner of, Cogan & Partners, LLP.

2.  You or the Company will pay Tony directly for his services at an agreed rate.

3.  Because Cogan & Partners' professional liability insurance will not cover Tony's work for Furie while he works as a direct consultant of Furie, Furie agrees to (i) indemnify, hold harmless and defend Cogan & Partners, LLP and Tony, individually, for, from and against any and all liability, costs and expenses incurred in connection with his work and services for Furie and its consultants, and (ii) will ensure that Tony is covered under Furie's D&O or other liability policies for its consultants while working as a legal consultant for Furie.

4.  You will pay Cogan & Partners, LLP a fixed monthly amount of $12,000 to compensate the firm for Tony's health insurance and 50% of his firm overheads and his secretary's salary and benefits.  This amount will be invoiced to you during the last week of each calendar month (commencing with July, 2012).

5.  You also agree to pay Cogan & Partners, LLP for legal time billed by its other lawyers for any legal work performed by such lawyers for Furie and its affiliates each month at

such lawyers' standard hourly rates. These fees will be billed to you in the normal manner pursuant to the terms of the Engagement Letter.

6. In addition, all expenses and costs incurred by Cogan Partners lawyers other than Tony on Furie's behalf will continue to be invoiced to you by Cogan & Partners on a monthly basis. Tony will bill you and Furie directly for any out-of-pocket expenses, such as travel, etc., he incurs on your behalf.

If you agree to the above terms and supplemental provisions to our Engagement Letter, please sign in the space provided below and return a copy of this letter to me. Also, please let me know if you would like me to get this letter translated for you into German.

Regards,

Cogan & Partners, LLP

By: _____
    M.A. (Tony) Nunes

Agreed to by:

Furie Petroleum Company LLC and Kay Rieck

By: _____

Furie Operating Alaska, LLC

By: _____

Cornucopia Oil & Gas Company, LLC

By: _____

4830-4041-3521, v. 1

# Exhibit 3

Final

<span style="border:1px solid red; color:red;">Exhibit 3</span>

# AGREEMENT

This Agreement is effective as of January 1, 2017 (the **"Effective Date"**) between Cogan & Partners LLP (**"Cogan Partners"**), a Texas limited liability partnership, and Stone Pigman Walther Wittmann L.L.C. (**"SPWW"**), a Louisiana limited liability company. The parties, intending to be legally bound, agree as follows:

**1.** **John P. Cogan, Jr. and Tony Nunes**

    **1.1** **John P. Cogan, Jr..** John P. Cogan, Jr. (**"JPC"**) has become a member of SPWW pursuant to and in accordance with the provisions of the Membership Agreement between SPWW and JPC entered into contemporaneously with the execution and delivery of this Agreement.

    **1.2** **Michael Anthony Nunes.** Michael Anthony Nunes (**"MAN"**) has or is expected to become a member of SPWW pursuant to and in accordance with the provisions of the Membership Agreement between SPWW and MAN to be entered into contemporaneously with or shortly after the execution and delivery of this Agreement.

**2.** **Special Counsel Attorneys and Non-Attorney Staff**

    **2.1** **Special Counsel.** James A. Cogan, John P. Cogan III, and Carlos A. Morán, who are attorneys practicing with Cogan Partners, have each become special counsel attorney of SPWW, pursuant to and in accordance with the provisions of the respective Special Counsel Agreements being entered into between such attorneys and SPWW contemporaneously with the execution and delivery of this Agreement.

    **2.2** **Non-Attorney Staff.** The following Cogan Partners employees have become employees of SPWW, effective January 1, 2017:

        (a)    Robin Woods (legal administrator);

        (b)    Gwen Sammons (legal administrator);

        (c)    Nicki Kuras (office administrator, paralegal/receptionist); and

        (d)    Charles Cogan (IT/business development).

    **2.3** **Benefits.** All special counsel attorneys and non-attorney staff listed above will be eligible to participate in SPWW's health insurance, pension and other benefits in accordance with the eligibility requirements and rules of such plans.

**3.** **Assumption of Houston Lease**

Cogan Partners has assigned to SPWW, as of the Effective Date, and SPWW has assumed all obligations arising with respect to any period on or after the Effective Date under the lease dated February 8, 2010 between Cogan Partners and Cameron McKinney, L.L.C. (the

1217536v11

**"Landlord"**) (as amended to date, the **"Office Lease"**), pursuant to the agreement for assignment and assumption of the Office Lease executed and delivered contemporaneously herewith (the **"Assignment and Assumption of Office Lease"**).

**4.      Office Services**

Cogan Partners hereby assigns to SPWW, as of the Effective Date, and SPWW hereby assumes all obligations arising with respect to any period on and after the Effective Date under, all contracts for office services set forth on the attached Exhibit 4 (**"Assigned Office Service Contracts"**).

**5.      Integration**

Although SPWW will not be obligated to maintain a presence in Houston for any particular length of time, it is the intention of the parties that the combination of Cogan Partners attorneys with SPWW will constitute the beginnings of a long, fruitful and growing presence of SPWW in Houston, and that those attorneys, along with the New Orleans and Baton Rouge attorneys of SPWW, will assist in the effort to institutionalize that presence.  It is also the intention of the parties that the Houston office will not be simply an outpost of SPWW, but that the Houston-based SPWW members will become an integral part of the firm in all respects.  The parties are committed to exercising reasonable efforts to accomplish those intentions.  To that end, the parties intend to revisit the compensation arrangements of JPC and MAN within two years of the Effective Date to determine whether any different, mutually acceptable arrangements could be implemented, which would better serve to accomplish those intentions.

**6.      Cogan Partners Assets and Liabilities**

      **6.1      Receivables and WIP**. All accounts receivable of Cogan Partners on account of services performed before the Effective Date remain the property of Cogan Partners.   All revenues from work-in-progress of Cogan Partners before the Effective Date shall be the property of Cogan Partners.  Accounts receivable arising from work performed on and after the Effective Date out of legal services of the attorneys and employees who become employees or members of SPWW shall be the property of SPWW.

      **6.2      Payables and Accrued Liabilities**.

(a)      Assumed Obligations.  SPWW hereby assumes the Assumed Obligations and not any other obligations.  The **"Assumed Obligations"** are (i) the obligations arising under the Office Lease with respect to periods on and after the Effective Date; and (ii) the obligations arising under the Assigned Office Service Contracts with respect to periods on and after the Effective Date.  SPWW shall pay or perform the Assumed Obligations when due.   Compensation owed to employees and independent contractors of SPWW with respect to work performed for or on behalf of SPWW are obligations of SPWW and will be paid by SPWW when due.

(b)      Retained Obligations.   Except for the Assumed Obligations, SPWW is not accepting or assuming any liability or obligation of any nature or kind of Cogan Partners, whether known or unknown, liquidated or unliquidated, arising in tort,

- 2 -

contract, quasi contract, by statute or otherwise (including without limitation bank debt; compensation and benefits owed to employees and independent contractors of Cogan Partners with respect to work performed for or on behalf of Cogan Partners, including deferred compensation payable after the Effective Date; amounts owed or payable under any Benefit Plans (defined below); taxes or tort liability of any kind; any liability relating to services performed or owed by Cogan Partners before the Effective Date; any debt or other liability owed by Cogan Partners to JPC or other partner in or employee of Cogan Partners; or any liability under the Lease or an Assigned Office Services Contract that arises out of a breach that occurred before the Effective Date) (collectively, the **"Retained Obligations"**).

(c)  Payment of Accounts Payable and Accrued Liabilities.  Except for Assumed Obligations, all accounts payable and accrued liabilities of Cogan Partners, including without limitation compensation owed to its employees and independent contractors, shall be paid by Cogan Partners and JPC.

**6.3  Personal Property**. Cogan Partners hereby sells, assigns, and conveys to SPWW the furniture, fixtures, equipment, office supplies, and other personal property described on Exhibit 6.3 (the **"Acquired Personal Property"**), as is, where is, as of the Effective Date, free and clear of any debts, liens or encumbrances.  All items of personal property of Cogan Partners not on Exhibit 6.3 (including but not limited to cash, cash equivalents, trade names, service marks, logos, assumed or fictional business names, equity interests in any entity, minute books, financial and accounting records, personnel records, and any records that Cogan Partners is required by law to retain, but excluding all interests in client-related files and records, which are addressed separately below in Section 6.6) shall remain the property of Cogan Partners and may remain on the Office Lease premises until removed at the sole discretion of JPC but no later than the expiration of the Office Lease.

**6.4  Telephone and Email**.  Cogan Partners hereby assigns its rights with respect to existing telephone and telecopy (fax) numbers to SPWW.

**6.5  Benefit Plans**. SPWW does not assume any of the employee benefit plans of Cogan Partners, including without limitation any pension (401(k)), profit sharing, deferred compensation, health insurance, group life or any other plan (collectively, **"Benefit Plans"**).

**6.6  Client-Related Files and Records.**  Cogan Partners hereby sells, assigns, and conveys to SPWW the interest of Cogan Partners (including any unregistered copyright, trade secrets, or other intellectual property) in all files and records (physical and electronic) held by it relating to each client, but effective with respect to each client only upon receipt of consent thereto from the respective client; provided that Cogan & Partners and JPC hereby retain a perpetual, non-exclusive, royalty-free license to use, publish and license all such intellectual property to the extent it does not conflict with the rights of a client.  Unless and until a client consents, Cogan Partners shall retain its interest in its files and records related to such client and such files may remain on the Office Lease premises until removed at the sole discretion of Cogan Partners, but no later than the expiration of the Office Lease.  To the extent Cogan Partners owns intellectual property related to the practice of law which is not covered by the conveyance above,

- 3 -

Cogan & Partners hereby grants to SPWW a perpetual, non-exclusive, royalty-free license to use, publish and license all such intellectual property to the extent it does not conflict with the rights of clients.

**6.7     Related Rights.**  Cogan Partners hereby assigns to SPWW  all express or implied warranties by the manufacturers or sellers of any item or component part of the Assigned Office Service Contracts or the Acquired Personal Property and all maintenance records and other documents relating thereto.

**7.     Representations and Warranties by Cogan Partners**

Cogan Partners represents and warrants to SPWW as follows:

**7.1     Authority.**  Cogan Partners has full power and authority to execute and deliver this Agreement and the related agreements to which it is a party and to perform its obligations hereunder and thereunder, and such action has been duly authorized by all necessary action by Cogan Partners' partners.

**7.2     No Conflict.**   To the best of the knowledge of Cogan Partners, neither the execution and delivery of this Agreement nor the consummation or performance of any of the transactions contemplated herein will (a) breach any provision of any of the governing documents or resolutions of Cogan Partners, (b) breach any  law, regulation, or order applicable to Cogan Partners or its partners, (c) violate any terms of any license or permit held by Cogan Partners, (d) breach any term of the Office Lease or of any of the Assigned Office Service Contracts, or (e) result in the imposition of any encumbrance on any of the assets sold herein.

**7.3     Consents.**  Neither Cogan Partners nor any partner therein was or is required to give any notice to, make any filing with, or obtain the consent or approval of any governmental body or other person or entity in connection with the execution and delivery of this Agreement or the consummation or performance of any of the transactions contemplated herein, each of which has been given or obtained as required and is in full force and effect.

**7.4     Office Lease and Assigned Office Service Contracts.**  Cogan Partners has delivered to SPWW a true and complete copy of the Office Lease and each of the Office Service Contracts (including in each case all amendments) (collectively, the **"Assigned Contracts"**). Each Assigned Contract is in full force and effect.  Each party to each Assigned Contract is, and at all times since its inception has been, in substantial compliance with all applicable terms of such Assigned Contract.  To the extent required by each Assigned Contract, each of the parties to the Assigned Contract has consented or will consent in writing to the assignment of the Assigned Contract by Cogan Partners to SPWW effective as of the Effective Date and to the assumption by SPWW of Cogan Partners' obligations thereunder arising with respect to the period from and after the Effective Date.

**7.5     Excluded Furniture, Fixtures, and Equipment.**  Attached as Exhibit 7.5 is a schedule of all furniture, fixtures, and equipment located on the Office Lease premises that is *not* being sold, assigned, or conveyed to SPWW, whether because it is not owned by Cogan Partners or because Cogan Partners will retain ownership of it or otherwise.

**7.6    Benefit Plans.**  None of the Benefit Plans are defined benefit plans.  All contributions required to be made by Cogan Partners with respect to any Benefit Plan have been made, and all insurance premiums required have been paid.  All group health plans of Cogan Partners have been maintained in compliance with COBRA.  This Agreement and the transactions contemplated herein will not result in the imposition of any obligation or liability on Cogan Partners or SPWW to provide benefits or make any payment to any current or former partner, officer, or employee of Cogan Partners.

**7.7    Insurance.**  Cogan Partners has purchased or will purchase a "tail" on its professional liability insurance policy, with the same or greater limits, to cover any claims made with respect to legal services rendered by its attorneys prior to the Effective Date (the **"Tail Insurance"**), a copy of which policy has been or will be provided to SPWW.  SPWW will advance the cost of the Tail Insurance, up to $52,000, as a loan to JPC, which loan will be repaid through the deduction of 5% of the original loan amount from each monthly distribution payable to JPC under the Membership Agreement between SPWW and JPC referred to in Section 1.1 above.

**7.8    Brokers or Finders.**  Cogan Partners has not incurred any obligation, contingent or otherwise, for brokerage or finder's fees or agent's commissions or other similar payments in connection with the transactions contemplated in this Agreement.

**7.9    Solvency.**  Upon the consummation of the transactions contemplated by this Agreement, Cogan Partners will have assets that exceed its liabilities and will be able to pay its obligations in the ordinary course of business as they come due.  The sale of assets contemplated in this Agreement is not for less than their fair market value.  Cogan Partners has no current plans to, and has taken no action in the last year to, or to prepare to, dissolve or declare bankruptcy.

**8.    Representations and Warranties by SPWW**

SPWW represents and warrants to Cogan Partners as follows:

**8.1    Authority.**  SPWW has full power and authority to execute and deliver this Agreement and the related agreements to which it is a party and to perform its obligations hereunder and thereunder, and such action has been duly authorized by all necessary action by SPWW's members.

**8.2    No Conflict.**  To the best of the knowledge of SPWW, neither the execution and delivery of this Agreement nor the consummation or performance of any of the transactions contemplated herein will (a) breach any provision of any of the governing documents or resolutions of SPWW, (b) breach any law, regulation, or order applicable to SPWW or its members, or (c) violate any terms of any license or permit held by SPWW.

**8.3    Consents.**  Neither SPWW nor any member thereof was or is required to give any notice to, make any filing with, or obtain the consent or approval of any governmental body or other person or entity in connection with the execution and delivery of this Agreement or the consummation or performance of any of the transactions contemplated herein, except those which have been or will be given or obtained and are or will be in full force and effect.

1217536v11

**8.4**   **Brokers or Finders.**   SPWW has not incurred any obligation, contingent or otherwise, for brokerage or finder's fees or agent's commissions or other similar payments in connection with the transactions contemplated in this Agreement.

## 9.   Covenants

**9.1**   **SPWW December 2016 Related Payments.**   SPWW shall pay Cogan Partners $132,239, consisting of (a) $42,842 (which equals the amount paid by Cogan Partners in fulfillment of its obligations arising under the Office Lease and the Assigned Office Service Contracts and certain other office expenses, all with respect to the month of December 2016); *plus* (b) $74,028 (which equals the aggregate amount paid by Cogan Partners as payroll with respect to the month of December 2016); *plus* (c) $15,369 (which equals the aggregate amount paid by Cogan Partners with respect to health benefits for the month of December 2016).

**9.2**   **Cogan Partners December 2016 Related Payments.**   Cogan Partners shall bill its clients for work performed in December 2016, shall use reasonable efforts to collect such bills, and shall pay SPWW an amount equal to all amounts actually collected by Cogan Partners on account of services performed on behalf of Cogan Partners during the months of December 2016.  Such amount shall be payable in monthly installments, each equal to the amount collected during the previous calendar month.

**9.3**   **SPWW Acquired Personal Property Related Payment.**   SPWW shall pay Cogan Partners the sum of $50,000 (which equals the agreed fair market value of the Acquired Personal Property).

**9.4**   **Public Announcements.**   Any and all public announcements, press releases or similar publicity with respect to this Agreement or the transactions contemplated herein will be issued at such time and in such manner as SPWW determines, as approved by Cogan Partners. Cogan Partners and SPWW will consult with each other regarding the means by which clients, suppliers, and others will be informed of transactions contemplated herein.

**9.5**   **Client Matters.**   Cogan Partners shall use best efforts to cause all current clients of Cogan Partners to consent to become clients of SPWW as soon as possible, including encouraging the execution and delivery of SPWW standard form engagement letters by all such clients or other reasonable forms of engagement letters in line with good Texas law firm practices.

**9.6**   **Confidentiality.**   Each of Cogan Partners and SPWW shall hold in confidence all information with respect to the clients of the other to the same extent that it holds in confidence information with respect to its own clients.

**9.7**   **Insurance.**   Cogan Partners shall maintain in effect the Tail Insurance during the period from the Effective Date through a period of time thereafter at least equal to the Texas statute of limitations on claims of legal malpractice.

**9.8**   **Employee Matters.**   Cogan Partners shall be responsible for (a) the payment of any termination or severance payments due to former Cogan Partners employees based on termination of their employment with Cogan Partners (but not for any termination or severance

- 6 -

payments due any of the individuals named in Section 2 above based on any termination of their employment with SPWW), (b) to the extent applicable, the provision of health insurance coverage in accordance with the requirements of COBRA (or similar programs for small businesses under state law) and Sections 601 through 608 of ERISA, except with respect to the individuals named in Section 2 above for health insurance after the Effective Date, and (c) any claims made or incurred by any individuals at any time under the Benefit Plans. SPWW shall be responsible for (i) the payment of any termination or severance payments due any of the individuals named in Section 2 above based on any termination of their employment with SPWW, and (ii) the provision of health insurance coverage for the individuals named in Section 2 above for periods after the Effective Date in satisfaction of any requirements of COBRA and Sections 601 and 608 of ERISA.

**9.9     Payment of Retained Obligations.**    Cogan Partners shall pay or otherwise extinguish all of the Retained Obligations in due course.  If at any time SPWW reasonably determines that Cogan Partners' failure to make any payments will impair SPWW's operations, SPWW may elect to make any or all such payments directly (but shall have no obligation to do so) and be entitled to recover any payments so made from Cogan Partners upon demand.

**9.10     Access to Records.**    After the Effective Date, Cogan Partners shall provide SPWW and its representatives reasonable access to Cogan Partners' records for any reasonable business purpose of SPWW.

**9.11     Continuation in Existence.**    Cogan Partners shall continue to maintain its existence and its current name at least until the later of (a) the payment or extinguishment of all payables and other liabilities of Cogan Partners that have accrued before the Effective Date and all other Retained Obligations, (b) the termination date of its Tail Insurance, (c) the resolution of all claims pending or brought against Cogan Partners within two years after the Effective Date, and (d) three years after the Effective Date.

**9.12     Further Assurances.**  The parties shall cooperate reasonably with each other and their respective representatives in connection with any actions required to be taken as part of their respective obligations under this Agreement, and shall (a) furnish upon request to each other such further information, (b) execute and deliver to each other such other documents, and (c) do such other acts and things, all as the other party may reasonable request for the purpose of carrying out the intent of this Agreement and the transactions contemplated herein.

**10.     Indemnification**

**10.1     Cogan Partners Indemnity.**    SPWW shall not become liable for, and Cogan Partners hereby agrees to defend, indemnify and hold harmless SPWW and its members against any claims, damages, liabilities, loss, costs and expenses incurred by or asserted against SPWW and/or its attorneys and arising out of (a) the operation of Cogan Partners at any time, including any services performed by or on its behalf, (b) the performance or non-performance of the Retained Obligations, or (c) any breach of this Agreement by Cogan Partners.

**10.2     SPWW Indemnity.**    Cogan Partners shall not become liable for, and SPWW hereby agrees to defend, indemnify and hold harmless Cogan Partners and its attorneys against

1217536v11

any claims, damages, liabilities, loss, costs and expenses incurred by or asserted against Cogan Partners and/or its attorneys and arising out of (a) the operation of SPWW at any time prior to January 1, 2017, including any services performed by or on its behalf, (b) the performance or non-performance of the Assumed Obligations or (b) any breach of this Agreement by SPWW.

11.   **General**

11.1   **Expenses.**   Each party will bear its own expenses in documenting and negotiating the transaction, including the cost of obtaining any required governmental or contractual approvals.  SPWW will bear expenses relating to the qualification of SPWW to do business in Texas and any related approvals of the State Bar of Texas.

11.2   **Assignments; Successors.**   No party may assign any of its rights or delegate any of its obligations under this Agreement without the consent of the other party.  This Agreement shall apply to, be binding upon, and inure to the benefit of the successors and permitted assigns of the parties.

11.3   **Governing Law.**   This Agreement shall be construed and interpreted in accordance with and governed by the substantive laws of the State of Louisiana without giving effect to such state's conflict-of-law principles.

11.4   **Amendments.**   This Agreement may not be amended except by a written agreement executed and delivered by both parties.

11.5   **Execution and Delivery.**   This Agreement may be executed in one or more counterparts and may be delivered physically or electronically.

**IN WITNESS WHEREOF,** the parties have executed this Agreement effective as of the Effective Date.

**STONE PIGMAN WALTHER WITTMANN L.L.C.:**

By: _____
Name:  Barry W. Ashe
Title: Chair, Management Committee

**COGAN & PARTNERS LLP:**

By: _____
Name:  John P. Cogan, Jr.
Title: _____

I hereby intervene and agree to the provisions of Sections 6.2(c) and 7.7.

_____
**John P. Cogan, Jr.,** individually

- 8 -

1217536v11

**Exhibit 4**
**Assigned Office Service Contracts**

1.   Contract between Cogan Partners and **Aderant** for billing and time keeping programs (accounting software) [no written agreement located]

2.   Contract between Cogan Partners and **Net Documents** for electronic data storage (document management system) [no written agreement located]

3.   **Agreement for the Bloomberg Law Professional**, between Cogan & Partners LLP and Bloomberg Finance L.P., signed by both parties on January 4, 2011 (and related Schedule of Services to the Agreement for the Bloomberg Law Professional, signed by both parties on January 9, 2011)

4.   **LexisNexis Agreement for Lexis Advance and/or Lexis Practice Advisor for Law Firms**, between Cogan & Partners LLP and LexisNexis, a division of RELX Inc., signed by Cogan Partners on January 19, 2016 (and related Promotional Bridge Addendum, signed by Cogan Partners on January 19, 2016)

5.   **Order**, between Cogan & Partners LLP and Thomson Reuters, signed by Cogan & Partners LLP on September 19, 2014

6.   **Postage machine lease** between Cogan Partners and Pitney Bowes [no written agreement located]

7.   Contract between Cogan Partners and **Purchase Power** for postage [no written agreement located]

8.   **AT&T Business Network (ABN) Express Bundle Agreement** between Cogan Partners and AT&T Corp, signed by Cogan & Partners on August 11, 2015

9.   **Dedicated Internet Address Customer Order Form**, between Cogan Partners (signed Nov. 2, 2013) and **Cogent Communications, Inc.** (signed Nov. 6, 2013) (and related Network Services Terms & Conditions, 2 Product Riders -- Dedicated Internet Access Global (Ver. 1-6 and 1-9), all signed on above respective dates)

10.  Contract between Cogan Partners and **KK Systems, Inc.** for I.T. software (mainly monthly antivirus software) [no written agreement located]

11.  Contract between Cogan Partners and Kraft and Kennedy for I.T. support [no written agreement located]

12.  Contract between Cogan Partners and **Sparkletts and Sierra Springs** for water cooler service [no written agreement located]

1217536v11

<u>**Exhibit 6.3**</u>

<u>**Assigned Personal Property**</u>

**To be agreed and attached promptly after execution**

1217536v11

<u>**Exhibit 7.5**</u>
<u>**Excluded Furniture, Fixtures, and Equipment**</u>

**To be agreed and attached promptly after execution**

1217536v11

# Exhibit 4

# <u>TEXAS SECRETARY of STATE</u>
# JOSE A. ESPARZA



## BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 802137326 | **Entity Type:** | Domestic Limited Liability Partnership (LLP) |
| **Original Date of Filing:** | January 15, 2015 | **Entity Status:** | Terminated |
| **Formation Date:** | N/A | | |
| **Tax ID:** | | **FEIN:** | 271547700 |
| **Duration:** | Perpetual | | |
| **Name:** | Cogan & Partners LLP | | |
| **Address:** | 1001 McKinney St, Ste 1600 | | |
| | Houston, TX 77002 USA | | |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| View Image | Document Number | Filing Type | Filing Date | Effective Date | Eff. Cond | Page Count |
|---|---|---|---|---|---|---|
| 🍷 | 586801260002 | Registration of a Limited Liability Partnership | January 15, 2015 | January 15, 2015 | No | 1 |
| 🍷 | 640293290001 | Renewal Notice | November 12, 2015 | November 12, 2015 | No | 1 |
| 🍷 | 661166312901 | Report Notice | March 16, 2016 | March 16, 2016 | No | 1 |
| 🍷 | 673511590002 | Annual Report | May 27, 2016 | May 27, 2016 | No | 1 |
| 🍷 | 714834122555 | Report Notice | February 10, 2017 | February 10, 2017 | No | 1 |
| 🍷 | 741350210002 | Annual Report | May 30, 2017 | May 30, 2017 | No | 1 |
| 🍷 | 786421451166 | Report Notice | January 5, 2018 | January 5, 2018 | No | 1 |
| 🍷 | 875249460195 | Notice of Impending Termination | March 18, 2019 | March 18, 2019 | No | 1 |
| 🍷 | 890847330002 | Annual Report | May 20, 2019 | May 20, 2019 | No | 1 |
| 🍷 | 890847330003 | Annual Report | May 20, 2019 | May 20, 2019 | No | 1 |
| 🍷 | 945724832108 | Report Notice | February 21, 2020 | February 21, 2020 | No | 1 |
| 🍷 | 1039493250216 | Notice of Impending Termination | April 1, 2021 | April 1, 2021 | No | 1 |

[ Order ]   [ Return to Search ]

---

<u>Instructions</u>:
🔴 To place an order for additional information about a filing press the 'Order' button.

# Exhibit 5

Exhibit 5

| Form 713 | | This space reserved for office use |
|---|---|---|
| **(Revised 03/16)**<br>Submit in duplicate to:<br>Secretary of State<br>Reports Unit<br>P.O. Box 12028<br>Austin, TX 78711-2028<br>512 475-2705<br>FAX: 512 463-1423<br>**Filing Fee: See instructions** | <br>**Annual Report of a<br>Limited Liability Partnership** | **FILED**<br>**In the Office of the**<br>**Secretary of State of Texas**<br>**MAY 3 0 2017**<br>**Corporations Section** |

**File Number:** 802137326                                    **Report Year:** 2017

1. The name of the partnership is:

Cogan & Partners LLP

Provide the name of the partnership as shown in its registration record or most recent annual report. A change to the partnership name requires an amendment to the registration. See instructions.

2. The federal employer identification number of the partnership is:   27-1547700

☐ The partnership has not obtained a federal employer identification number at this time.

3. The number of general partners as of the date of filing is:   2

*The number of general partners in a general partnership must be at least two.*

4. The address of the partnership's principal office in Texas or outside of Texas, as applicable, is:

| 1001 McKinney St  Ste 1600 | Houston | TX | USA | 77002 |
|---|---|---|---|---|
| *Street Address* | *City* | *State* | *Country* | *Zip Code* |

**Execution**

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date:   05/24/2017

JOHN P. COGAN, JR.

MAJORITY-IN-INTEREST PARTNER

For a general partnership, signature of a majority-in-interest of the partners or signature of one or more of the partners authorized by a majority-in-interest. For a limited partnership, signature of one general partner.

**RECEIVED**

**MAY 3 0 2017**

**Secretary of State**

# Exhibit 6

Reports Unit
P.O. Box 12028
Austin, Texas 78711-2028



Exhibit 6

David Whitley
Secretary of State

F I L E D
In the Office of the
Secretary of State of Texas

MAY 2 0 2019

## Office of the Secretary of State
### Annual Report of a Limited Liability Partnership

Corporations Section

File Number: **802137326**

Report Year: **2019**

1. The name of the partnership is:
   **Cogan & Partners LLP**

2. The federal employer identification number is: **271547700**

3. The number of general partners as of the date of filing is:   **2**

4. The address of the partnership's principal office in Texas or outside of Texas, as applicable, is:
   **1001 McKinney St Ste 1600**
   **Houston, TX 77002**

### Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date: _May 13, 2019_

**RECEIVED**

MAY 2 0 2019

**Secretary of State**

_JOHN P. COGAN, JR._

_MAJORITY-IN-INTEREST PARTNER_
For a general partnership, signature of a majority-in-interest of the partners or signature of one or more of the partners authorized by a majority-in-interest. For a limited partnership, signature of one general partner.

### INSTRUCTIONS

The filing fee is $200 per general partner. Fees may be paid by check, money order, LegalEase debit card, or American Express, Discover, MasterCard, and Visa credit card. Checks or money orders must be payable through a U.S. bank or financial institution and made payable to the Secretary of State. Fees paid by credit card are subject to a statutorily authorized convenience fee of 2.7 percent of the total fees.

Submit the completed form in duplicate, together with the filing fee, on or before June 1. The form may be mailed to the address shown above; faxed to 512-463-1423; or delivered to the James Earl Rudder Office Building, 1019 Brazos, Austin, TX 78701. If transmitted by fax, a transmission payment form (Form 815) that includes credit card information must accompany the document. On filing, the secretary of state will return the appropriate evidence of filing to the submitter together with a file-stamped copy of the document, if a duplicate copy was provided as instructed.

Notice: Failure to file the annual report when due may result in the termination of the partnership's registration.

# Exhibit 7

Reports Unit
P.O. Box 12028
Austin, Texas 78711-2028



Ruth R. Hughs
Secretary of State

Exhibit 7

# Office of the Secretary of State

April 01, 2021

Cogan & Partners LLP
1001 McKinney St Ste 1600
Houston, TX 77002

___   RE:  **Notice of Impending Termination**      Reports Due:  **2020 & 2021**
For:  Cogan & Partners LLP
File No:  802137326

Dear Sir or Madam,

Section 152.806 of the Texas Business Organizations Code requires a partnership that registers as a Texas limited liability partnership to file an annual report, together with the applicable filing fee, with the Secretary of State no later than June 1 of each year following the calendar year in which the application for registration takes effect.  The filing fee is $200 per general partner.

**What Our Records Show**
Our records show that the partnership did not file the annual report due for 2020.

**What We Need and When We Need It**
Please send us: 1) the past due annual report; 2) the annual report due for the current year; and 3) the fee for each report.  In the case of a past due report, the fee is $200 for each general partner as of May 31st of the report year due. Both reports, together with all applicable fees, must be received in our office **on or before May 31, 2021**.

**What Will Happen**
If we do not receive and file both the past due report and the current year's report, together with all filing fees, on or before May 31st the registration of the partnership will be automatically terminated. Please note that a termination of registration affects only the partnership's status as a limited liability partnership and is not an event requiring the winding up of the partnership.

If you have any questions about this notice, or about filing the annual report, please call 512-475-2705 or e-mail: ReportsUnit@sos.texas.gov

Sincerely,
Reports Unit
Business & Public Filings Division

Enclosures

*Come visit us on the internet at https://www.sos.texas.gov/*

Phone: (512) 475-2705                    Fax: (512) 463-1423                    Dial: 7-1-1 for Relay Services
Prepared by: System                      TID: 11276                            Document #: 1039493250216

# Exhibit 8

# TEXAS SECRETARY of STATE
## JOSE A. ESPARZA



**BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY**

| | | | |
|---|---|---|---|
| **Filing Number:** | 802137326 | **Entity Type:** | Domestic Limited Liability Partnership (LLP) |
| **Original Date of Filing:** | January 15, 2015 | **Entity Status:** | Terminated |
| **Formation Date:** | N/A | | |
| **Tax ID:** | | **FEIN:** | 271547700 |
| **Duration:** | Perpetual | | |
| | | | |
| **Name:** | Cogan & Partners LLP | | |
| **Address:** | 1001 McKinney St, Ste 1600 | | |
| | Houston, TX 77002 USA | | |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|
| **Name** | | **Name Status** | **Name Type** | **Name Inactive Date** | **Consent Filing #** |
| Cogan & Partners LLP | | Inactive | Legal | June 10, 2021 | 0 |

Order    Return to Search

---

Instructions:

🔴 To place an order for additional information about a filing press the 'Order' button.

# Exhibit 9

**State of**
**Louisiana**
**Secretary of**
**State**

**COMMERCIAL DIVISION**
**225.925.4704**

Exhibit 9



Fax Numbers
225.932.5317 (Admin. Services)
225.932.5314 (Corporations)
225.932.5318 (UCC)

---

| Name | Type | City | Status |
|------|------|------|--------|
| STONE PIGMAN WALTHER WITTMANN L.L.C. | Limited Liability Company | NEW ORLEANS | Active |

**Previous Names**

| | |
|---|---|
| **Business:** | STONE PIGMAN WALTHER WITTMANN L.L.C. |
| **Charter Number:** | 35397577K |
| **Registration Date:** | 12/30/2002 |

**Domicile Address**

909 POYDRAS STREET, SUITE 3150
NEW ORLEANS, LA 701124042

**Mailing Address**

C/O NANCY L. CLAYPOOL
909 POYDRAS STREET, SUITE 3150
NEW ORLEANS, LA 701124042

## Status

| | |
|---|---|
| **Status:** | **Active** |
| **Annual Report Status:** | **In Good Standing** |
| **File Date:** | 12/30/2002 |
| **Last Report Filed:** | 11/30/2020 |
| **Type:** | Limited Liability Company |

## Registered Agent(s)

| | |
|---|---|
| **Agent:** | NANCY L. CLAYPOOL |
| **Address 1:** | 909 POYDRAS STREET, SUITE 3150 |
| **City, State, Zip:** | NEW ORLEANS, LA 701124042 |
| **Appointment Date:** | 12/30/2002 |

## Officer(s)

Additional Officers: No

| | |
|---|---|
| **Officer:** | PHILLIP A. WITTMANN |
| **Title:** | Member |
| **Address 1:** | 909 POYDRAS STREET, SUITE 3150 |
| **City, State, Zip:** | NEW ORLEANS, LA 701124042 |

| | |
|---|---|
| **Officer:** | PAUL L. ZIMMERING |
| **Title:** | Member |
| **Address 1:** | 909 POYDRAS STREET, SUITE 3150 |
| **City, State, Zip:** | NEW ORLEANS, LA 701124042 |

## Mergers (1)

| Filed Date | Effective Date: | Type | Charter# | Chater Name | Role |
|---|---|---|---|---|---|
| **12/30/2002** | **12/30/2002** | **MERGE** | **35397577K** | **STONE PIGMAN WALTHER WITTMANN L.L.C.** | **SURVIVOR** |
| | | | 34481772Y | STONE, PIGMAN, WALTHER, WITTMANN & HUTCHINSON, L.L.P. | NON-SURVIVOR |

## Amendments on File (2)

| Description | Date |
|---|---|
| Merger | 12/30/2002 |
| Domestic LLC Agent/Domicile Change | 8/16/2017 |

Print