# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CLINGMAN & HANGER MANAGEMENT ASSOCIATES, LLC, as Trustee of the Furie Litigation Trust, | § § § § | CIVIL ACTION NO. 4:21-cv-02698 |
| Plaintiff, | § § § | |
| vs. | § § | |
| KAY RIECK LARS DEGENHARDT THEODOR VAN STEPHOUDT DAVID HRYCK REED SMITH LLP THOMAS E. HORD MICHAEL ANTHONY NUNES STONE PIGMAN WALTHER WITTMAN LLC, in its own capacity and as successor by merger to Cogan & Partners LLP DAVID ELDER BRUCE GANER SIERRA PINE RESOURCES INTERNATIONAL, INC. and HELENA ENERGY, LLC | § § § § § § § § § § § § § § § § § § | |
| Defendants. | § § | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT KAY RIECK'S MOTION TO DISMISS

TABLE OF CONTENTS

**TABLE OF CONTENTS** ...................................................................................I

**TABLE OF AUTHORITIES** ...................................................................... II

**INTRODUCTION** ........................................................................................1

**STATEMENT OF FACTS**............................................................................2

I.   FACTS RELEVANT TO PERSONAL JURISDICTION ........................................2

II.  FACTS RELEVANT TO SERVICE OF PROCESS .............................................6

**STANDARDS ON THE MOTION** ...............................................................7

**ARGUMENT**..............................................................................................8

I.   THE COURT SHOULD DENY RIECK'S MOTION PURSUANT TO RULE 12(B)(2)...........8

   A.   Rieck Is Subject to Specific Jurisdiction...............................................8

      1.   Rieck's Purposeful Contacts With Texas......................................9

      2.   Exercising Jurisdiction over Rieck is Fair and Reasonable ...........12

   B.   The Court Should Resolve Any Remaining Disputes Over Jurisdiction at Trial......................................................................................14

II.  THE COURT SHOULD DENY RIECK'S MOTION UNDER RULE 12(B)(5) .................16

   A.   Defendant Rieck can be—and has been—lawfully served process..................16

   B.   In the Alternative, the Court Should Authorize Service on Rieck's Counsel.....17

**CONCLUSION** ..........................................................................................18

## TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County*,
 480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987).................................................. 15

*Brown v. Flowers Indus., Inc.*,
 688 F.2d 328 (5th Cir. 1982) ....................................................................................... 11

*Burger King Corp. v. John Rudzewicz*,
 471 U.S. 462, 105 S. Ct. 2174 (1985)........................................................................... 12

*Carmona v. Leo Ship Mgmt., Inc.*,
 924 F.3d 190 (5th Cir. 2019) ......................................................................................... 8

*Cent. Freight Lines v. APA Transp. Corp*,
 322 F.3d 376 (5th Cir. 2003).......................................................................................... 12

*Document Ops., LLC v. AOS Legal Techs, Inc.*,
 Civ. Act. No. 4:20-CV-1532, 2021 WL 3089258 (S.D. Tex. July 22, 2021).......... 17, 18

*Fintech Fund, F.L.P. v. Horne*,
 327 F. Supp. 3d 1007 (S.D. Tex. 2018)........................................................................ 13

*Fintech Fund, F.L.P. v. Horne*,
 836 Fed. App'x 215 (5th Cir. 2020) ........................................................................... 8, 9

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
 ⸺ U.S. ⸺, 141 S. Ct. 1017, 209 L. Ed. 2d 225 (2021)............................................... 8

*Gene Ennis v. Robert Loiseau, Special Deputy Receiver of Am. Benefit
 Plans*, 164 S.W.3d 698 (Tex. Ct. App. 2005)................................................................ 14

*ITL Int'l Inc. v. Constenla, S.A.*,
 669 F.3d 493 (5th Cir. 2012) ......................................................................................... 8

*Johnston v. Multidata Sys. Int'l Corp.*,
 523 F.3d 602 (5th Cir. 2008) .................................................................................... 7, 11

*Kuhlman v. McDonnel*,
 Case No. 1:20–cv–00510, 2021 WL 306468 (S.D. Ohio Jan. 29, 2021) ..................... 18

*Lewis v. Fresne,*
252 F.3d 352 (5th Cir. 2001) ............................................................... 9

*Mosley v. Bexar County,*
Civ. Act. No. SA–17–CV–583–XR, 2017 WL 3326968 (W.D. Tex. 2017) ............... 17

*Nagravision SA v. Gotech Int'l Tech. Ltd.,*
882 F.3d 494 (5th Cir. 2018) ...................................................... 17

*Pierce v. Aircraft Fin. Corp. LLC,*
512 F. Supp. 3d 753 (S.D. Tex. 2021) ........................................ 11

*Rio Props. Inc. v. Rio Int'l Interlink,*
284 F.3d 1007 (9th Cir. 2002) .................................................. 18

*Rittenmeyer v. Grauer,*
104 S.W.3d 725 (Tex. Ct. App. 2003) ........................................ 14

*Spencer v. Caracal Int'l, LLC,*
Case No. 2:21-cv-00005, 2021 WL 3172312 (M.D. Tenn. July 27, 2021) ................... 18

*TexVa, Inc. v. Boone,*
300 S.W.3d 879 (Tex. Ct. App. 2009) ........................................ 14

*U.S. Fire Pump Co. LLC. v. Alert Disaster Control (Middle East) Ltd.,*
Civ. Act. 19-335-SDD-EWD, 2021 WL 296073 (M.D. La. Jan. 28, 2021) ................ 17

*Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.,*
517 F.3d 235 (5th Cir. 2008) .............................................. 14, 15

*Wien Air Alaska, Inc. v. Brandt,*
195 F.3d 208 (5th Cir. 1999) .............................................. 9, 12

**Rules**

Fed. R. Civ. P. 4(f)(3) ............................................................. 17, 18

Fed. R. Civ. P. 4(f)(2)(A) ......................................................... 16

Fed. R. Civ. P. 4(f) ................................................................. 17

Fed. R. Civ. P. 4(h)(2) ............................................................. 17

Fed. R. Civ. P. 4(j)(1) ............................................................. 17

Fed. R. Civ. P. 4(m) ........................................................................................ 16, 17

Plaintiff Clingman & Hanger Management Associates, LLC, as Trustee of the Furie Litigation Trust (the "Trustee"), hereby opposes Defendant Kay Rieck's Motion to Dismiss for Lack of Personal Jurisdiction (ECF 32; the "Motion").  The Motion should be denied.

## INTRODUCTION

By this action, the Trustee seeks recompense against Rieck for breaching the fiduciary duties he owed to Cornucopia Oil and Gas, LLC and its wholly-owned subsidiary Furie Operating Alaska, LLC (collectively, "Furie").  Rieck served as Furie's de facto decision-maker concerning the actions alleged in the Complaint, not a distant member of a three-person board of managers.  As described in the Complaint, and again despite lacking an official position, Rieck directed Furie's Texas-based officers to engage in numerous insider transactions, including the structuring of various insider corporations and payment of millions of dollars from Furie's Texas headquarters, and including with Rieck's other energy companies, Aurora Gas LLC and Defendant Helena Energy, LLC ("Helena").  Rieck directed Defendant Bruce Ganer, Furie's Texas-based geologist, to inflate Furie's gas reserves as reported by Furie's Texas reserve auditor.  These transactions took place in Texas, not Alaska.  Moreover, these transactions were directed at and harmed Furie, a Texas company.

The facts underlying the Trustee's causes of action substantially occurred between November 2015 and October 2017.  From its inception until November 2016, Furie's principal place of business was in Texas.  Until January 2018, Furie was organized under Texas law.  As the Complaint alleges, Rieck travelled to the Houston area and communicated with Furie's officers and counterparties in Texas.  Because Rieck

1

committed these acts in Texas against a Texas company to which he owed direct fiduciary duties, this Court has specific jurisdiction over Rieck.

Additionally, Rieck has extensive contacts with Texas. Rieck operated oil and gas mineral rights throughout Texas, purportedly owned by separate companies owned by Rieck, which Furie's executives oversaw using Furie's personnel and infrastructure. Rieck used these corporate entities to extract funds from Furie and distribute them to Rieck and others. Thus, the Trustee has established a prima facie case for this Court to exercise specific personal jurisdiction over Rieck. At this stage of the proceedings, that is all that is required.

Finally, Rieck asserts that the Trustee has not served him with process properly. Rieck maintains that his Dubai address where the Trustee served him is not current and that he did not receive the state court petition from the Secretary of State. After Rieck filed the Motion, the Trustee effectuated service again in Dubai. Rieck is undisputedly on notice of this lawsuit and he should be required to defend it on the merits. If necessary, the Court can authorize alternate service on Rieck via his counsel, who also jointly represents Helena, and service would still be timely.

STATEMENT OF FACTS

I.     Facts Relevant to Personal Jurisdiction

The Trustee is trustee of a litigation trust established pursuant to Furie's confirmed chapter 11 plan. (Compl. ¶4). From inception until January 25, 2018, Furie was a Texas limited liability company, when Furie converted to a Delaware limited liability company. (*Id*. ¶6). Furie maintained its headquarters in League City, Texas until November 2016 (*id*.

¶5), where Furie's officers worked.  (*Id*. ¶30).  After its headquarters moved, "numerous Furie executives and critical service providers continued to work from the Houston area[.]" (Compl. ¶5).  In August 2019, Furie filed a voluntary petition for bankruptcy.  (*Id*. ¶146). By Order dated June 12, 2020, Furie's claims against Rieck were transferred to the Furie Litigation Trust.  (*Id*. ¶4).

In September 2011, Rieck purchased Furie through Furie Petroleum Company, LLC, another Texas entity Rieck managed with offices in League City, Texas.  (Response Ex. H).  Rieck travelled to Houston to meet with Furie's executives and counterparts and with attorneys.  (Compl. ¶9).  Rieck admits this, claiming that he travelled to Texas once in 2016 for a meeting at Furie's Texas offices.  (Declaration of Kay Rieck, dated Sept. 14, 2021 (ECF 46-1)("Rieck Decl."), ¶11).  However, in a 2014 Texas state court deposition, Rieck estimated that he travelled to Texas four to six times per year for business reasons to meet with Furie and its executives.  (Declaration of Michael Igyarto, dated Oct. 1, 2021 ("Igyarto Decl."), Ex. 1, at 20:2-13).  The Trustee has only limited documentation concerning Rieck's whereabouts, but can also confirm that Rieck travelled to Houston: in March 2016 to meet with defendant Nunes, Furie's General Counsel, defendant Hord, Furie's Chief Operating Officer and defendant Elder, Furie's Chief Financial Officer (*id*., Exs. 2-3, both at 1); in April 2014, to meet with Furie's executives (*id*., Ex. 4, at 1) and multiple times in 2012. (*id*., Exs. 5-8, all at 1).

Rieck also functioned as the de facto head of Furie.  (Compl. ¶8).  Rieck made all principal decisions at Furie and directed Furie's officers, attorneys and other counterparties, all in Texas or at Furie's Texas headquarters, to engage in a series of

improper and inequitable conduct designed to benefit his own interests (and other insiders') at Furie's expense.  (*Id.* ¶¶57-134).  Those insider transactions were all executed from Texas as that is where Furie's officers and attorneys (*id.* ¶30), and bank accounts (Igyarto Decl., Exs. 14-15), resided.  Even after November 2016, when Furie moved its corporate headquarters to Alaska, Rieck continued to conduct the acts complained of by communicating directly to Nunes, Ganer and others in Texas through emails and phone calls.  For example, Rieck called defendant Bruce Ganer (a Texas resident) on August 8, 2017 about replacing Furie's reserve auditor and keeping Furie's reserves at the 200 Bcf mark.  (*Id.*, Ex. 9; Compl. ¶¶122-24).  Similarly, in January 2015, when Rieck wanted to engineer a reserve report showing *less* reserves, he also called Ganer in Texas and similarly directed him.  (Igyarto Decl., Ex. 10, at 1).

Furthermore, to try and insulate his self-dealing, Rieck signed a Memorandum of Agreement in early 2016 purporting to release Hord and Nunes from their conflicts of interest.  In that document, Furie and the Investor Parties [defined to include Rieck] "agree[d] to subject themselves to, the exclusive jurisdiction of the state or federal courts sitting in Harris County, Texas."  (*Id.*, Ex. 11, at 2 (signed by Rieck only)); (Compl. ¶87).

Many of Rieck's statements in his declaration are demonstrably inaccurate.  For example, Rieck misdescribes the creation of the three-person board of managers as occurring in 2016.  (Rieck Decl. ¶9).  That board was not created until December 17, 2017 pursuant to Furie's third amended operating agreement.  (Igyarto Decl., Ex. 12, Section 7).  Rieck continued to control Furie's operations until April 2018 when he agreed with Furie's lenders to cede control to an outside management firm.  (Compl. ¶143).  Rieck similarly

4

misdescribes his role at Furie as being confined to his position as Chairman of the Board at Deutsche Oel und Gas, S.A. (Reick Decl. ¶¶ 3, 12). The Trustee is suing Rieck precisely because he functioned as the de facto control person of Furie, and not as the distant director of another company's board. (Compl. ¶8).

Rieck states that he "never had an office in the State of Texas." (Rieck Decl. ¶2). This is also wrong, as Rieck filed numerous documents with the Texas Secretary of State attesting to an office at 100 Enterprise Ave, League City, Texas. (*See* Response Exs. A-K). Rieck states that defendant Hord ran "the day-to-day operations of Furie." (Rieck Decl. ¶12). But as described in fuller detail below, Rieck made the principal decisions for the malfeasance described in the Complaint.

Rieck further states that he "has not conducted any other business in Texas or solicited any business in Texas." (*Id*. ¶14). This is demonstrably false as well. As the Complaint alleged, Rieck operated oil and gas mineral rights throughout Texas, purportedly owned by separate companies owned by Rieck, but overseen by Furie's executives and using Furie's personnel and infrastructure. (Compl. ¶¶67, 94, 184). Rieck used these corporate entities for the purpose of extracting funds from Furie and distributing them to Rieck and his insiders. (*Id*. ¶32). The Complaint mentions Helena, Furie Petroleum Company, LLC, Furie Drilling LLC, and five entities each named Furie Oil and Gas, LLC. (*Id*. ¶¶13, 23, 39). But as described in paragraph 32, Rieck created a panoply of these companies, each with only the loosest form and organization, to evade creditors and regulators. Just by way of example, those entities included: Black Gold Operating Co., LLC (Response Ex. L), Furie Fiduciary LLC (Response Ex. A, ), German Oil and Gas,

Inc. (Response Ex. J), Julius Oil and Gas LLC (Response Ex. K), Rattlesnake Oil and Gas LLC (Response Ex. M), Raw Energy Investment Company, LLC (Response Ex. N), and Furie Transportation Corp. (Response Ex. I), each of which conducts its principal business operations in Texas.

## II. Facts Relevant to Service of Process

The Trustee served the Citation and a copy of the Original Petition on the Texas Secretary of State to be certified mailed to Defendant Rieck at "Maurya Penthouse, Grandeur Residence, West Crescent, Palm Jumeirah, P.O. Box 29193 A 502, Dubai, 2772, United Arab Emirates" (ECF 66; the "Dubai Address").

Parsing words, Rieck asserts that as of August 6, 2021, "I was no longer a resident at the Jumeirah Palm Residences and did not have a post office box in Dubai.  I continue to not reside at the Jumeirah Palm Residences and do not have a post office box in Dubai." (Rieck Decl. ¶16).

However, on September 9, 2021, the Trustee's process server—after a prior unsuccessful attempt—obtained entry to the apartment and spoke with Rieck's housekeeper.  (*See* Decl. of Moataz Ismail dated September 30, 2021, ¶¶1-2 (ECF 66)). The housekeeper confirmed that Rieck resided in the apartment and that Rieck recently left Dubai on a business trip.  (*Id.* at ¶2).  That statement was consistent with Rieck's statement in his Motion to Extend Time to Answer (ECF 31, p.2) that he could not provide a live signature on September 7, 2021 "due to his current travels in the State of New York."

Finally, Rieck's counsel, Penderfgraft & Simon, LLP, also represents Rieck-owned Defendant Helena. (Compl. ¶28).

**STANDARDS ON THE MOTION**

While the Trustee bears the ultimate burden of establishing personal jurisdiction, it need only make a prima facie case if the district court rules without an evidentiary hearing. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *Id.* (internal citations omitted). Proof by a preponderance of the evidence is not necessary. *Id.*

Here, Rieck does not controvert the Complaint's allegations (i) that he travelled to Texas to meet with Furie's executives (although he claims, incorrectly, that he did so only once) (Compl. ¶9; Rieck Decl. ¶11); (ii) that Furie's corporate headquarters were in Texas until November 2016 (Compl. ¶5); (iii) that he directed Furie's officers and agents in Texas to engage in the insider transactions (*id*. ¶30 ("at the time the cause of action accrued, Defendants Nunes, Ganer, Hord and Elder resided in Harris County, Texas.")); or (iv) that he directed Furie's officers and agents in Texas to inflate Furie's gas reserves in their dealings with Furie's Texas reserve auditors (*id*. ¶¶106-34). Rieck claims to have no further business in Texas, which is contrary to the Complaint's allegations that he oversaw oil and gas mineral rights in Texas as well as other Texas companies through which he diverted Furie's assets to himself. (*Id*. ¶¶32-41; Rieck Decl. ¶14).

7

ARGUMENT

## I.    The Court Should Deny Rieck's Motion Pursuant to Rule 12(b)(2)

A federal court may exercise personal jurisdiction over a nonresident defendant if "the forum state's long-arm statute extends to the nonresident defendant and the exercise of jurisdiction comports with due process." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). "Because the Texas long-arm statute extends as far as constitutional due process permits, we need only consider if the exercise of jurisdiction comports with the Due Process Clause." *Fintech Fund, F.L.P. v. Horne*, 836 Fed. App'x 215, 220 (5th Cir. 2020) (citations omitted). The Supreme Court has recognized two kinds of personal jurisdiction: general jurisdiction and specific jurisdiction. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, ––– U.S. –––, 141 S. Ct. 1017, 1024, 209 L.Ed.2d 225 (2021). As alleged in the Complaint, Rieck is a German national residing in Dubai. Nevertheless, there is specific jurisdiction over him in Texas because Rieck directed the activities in Texas for which he is being.

### A.    <u>Rieck Is Subject to Specific Jurisdiction</u>

"Where the plaintiff alleges specific jurisdiction, as here, due process requires (1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable." *ITL Int'l Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012). "Once a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to make a

compelling case that "the assertion of jurisdiction is unfair and unreasonable." *Fintech*, 836 Fed. App'x at 220 (internal citations and quotation marks omitted).

> 1.   *Rieck's Purposeful Contacts With Texas*

"A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001); *see also Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332-33 (5th Cir. 1982) (single telephone call was sufficient to confer personal jurisdiction). "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). Moreover, a defendant need not know that his communications are specifically received in Texas, so long as he knows he is directing them to a representative of a Texas company. *Fintech*, 836 Fed. App'x at 220-21.

Here, the Complaint alleges multiple actions Rieck took and directed at Texas. First, the *Randolph Yost* transactions described in paragraphs 57-88 took place substantially in Texas: Rieck worked in concert with Furie's Texas-based officers Hord, Nunes and Edler "to charter the rig through a series of insider-controlled entities and then to sub-charter it to Furie at a substantially marked up rate." (Compl. ¶58). Rieck also agreed with Hord that Hord would receive 20% of the revenue (*id*. ¶59); Nunes, Rieck's and Furie's Texas lawyer, organized Advanced Drilling Solutions, LLC (one of the scheme's essential middleman-entities) with himself as manager, but Rieck directed Advanced Drilling's executives (*id.* ¶64-66); Furie agreed to pay Nordic $220,000 a day to charter the *Randolph Yost* rig, even though Rieck was the ultimate owner and made all

business decisions for Nordic (*id.* ¶¶70-71); Nordic cycled funds received from Furie back to Rieck through Rieck's *Texas* entity Furie Petroleum Company, LLC (*id.* ¶74; Response Ex. H).

Second, Rieck participated in the attempts to hide the disloyal transactions by directing further activities towards Texas:  Rieck via his attorney sent Furie (then based in League City), a false verification note claiming the structured entities "were all 'independent and unrelated companies' despite the fact that Rieck ultimately controlled all of them" (Compl. ¶82); Rieck collaborated with Nunes and Hord (among others) to draft a message for Elder so that Elder, based in Texas, could avoid reporting Advanced Drilling as related to Rieck (*id.* ¶83); Rieck executed a Memorandum of Agreement purporting to release Hord and Nunes from liability (*id.* ¶87) and agreed to be subject to the exclusive jurisdiction of courts in Harris County, Texas.  (Igyarto Decl., Ex. 11, at 2).

Third, Rieck caused Elder, then based in Furie's Texas headquarters, to sell Furie gas to Rieck-owned Aurora Gas, LLC, which in turn sold the gas to Rieck-owned Helena (Compl. ¶¶89-90), which shared executives and office staff with Furie (*id.* ¶94).

Fourth, Rieck participated in the scheme to inflate Furie's gas reserves:  in September 2016, Rieck and Ganer instructed Furie's Texas-based reserve auditor to hide an inflated preliminary reserve report from Elder (then Texas-based) (*id.* ¶115); Rieck called Ganer (in Texas) and instructed him that they did not have time to replace NSAI and that his mission was to keep Furie's reserves at the 200 Bcf mark (*id.*, ¶¶123-124; Igyarto Decl., Ex. 9, at 1).  Rieck employed Ganer, and Ganer's Texas based company Sierra Pine, on over 30 projects.  (Compl. ¶41).

Fifth, Rieck approved Furie's March 2016 contract with Enstar to keep funds flowing to Furie, despite knowing that the sale requirements far exceeded Furie's production capabilities. (Compl. ¶¶136-38). Furie's executives were then based in League City, Texas and the contract was negotiated by Nunes (in Texas), with others. (*Id*. ¶¶30, 137).

Rieck does not specifically controvert any of the above-referenced allegations, and therefore they must be taken as true for purposes of this Motion. *Johnston*, 523 F.3d at 609. Instead, Rieck states that his only formal role at Furie was Chairman of a parent company and as a member of the three-member Board of Managers. (Rieck Decl. ¶¶ 3, 9, 12). But Rieck did not limit himself to that role. Instead, he took it upon himself to undertake the acts described in the Complaint, acting as the de facto controlling officer of Furie. In general, Rieck oversaw a loose enterprise of multiple corporate entities without observing corporate niceties. (Compl. ¶¶32-41).

Finally, these allegations should not be read in isolation but as part of a continuous scheme executed primarily in Texas to profit from Furie's chartering of the *Randolph Yost* and Furie's inflation of its reserve reporting. *See Pierce v. Aircraft Fin. Corp. LLC*, 512 F. Supp. 3d 753, 764 (S.D. Tex. 2021). Furie's attorneys and executives structured the transactions; Furie's financial team in Texas initiated the payments and Furie's Texas reserve auditor inflated the reserves. Although a single phone call would suffice, the uncontroverted allegations of the Complaint—as well as the evidence annexed hereto— demonstrates that Rieck purposely directed conduct towards Texas.

2.     *Exercising Jurisdiction over Rieck is Fair and Reasonable*

"Once a plaintiff establishes minimum contacts between the defendant and the forum State, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." *Central Freight Lines v. APA Transport Corp.*, 322 F.3d 376, 384 (5th Cir. 2003), citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).

In deciding whether it is fair and reasonable to require a nonresident defendant to litigate in Texas, a court must consider several factors: (1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 384 (5th Cir. 2003) (citing *Burger King Corp. v. John Rudzewicz*, 471 U.S. 462, 477-78, 105 S. Ct. 2174, 2185 (1985), and *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County*, 480 U.S. 102, 107 S. Ct. 1026, 1033, 94 L.Ed.2d 92 (1987)).

Rieck's Motion does not present any particular burden which would be imposed to him by litigating in Texas.  As discussed above, Rieck has extensive business dealings throughout the State of Texas.  Moreover, his wholly-owned entity Helena is already a defendant to this action and is represented by the same counsel.  Finally, when attempting to shield some of the very transactions under consideration in this suit, Rieck voluntarily agreed to subject himself to jurisdiction in Texas, thereby demonstrating Rieck did not consider personal jurisdiction over him in Texas to be unfair, unjust or unreasonable.

The other factors similarly favor exercising jurisdiction in this case.  As the District Court explained in the lower *Fintech* decision:

> While litigation in Texas may be inconvenient for Defendant, Plaintiff could be equally inconvenienced if required to litigate in the United Kingdom. Defendant has previously traveled to Texas [twice] on business and has offered no reason as to why litigating in Texas is especially burdensome to him. Texas has an interest in this case because it involves a Texas business whose trade secrets were allegedly misappropriated, and the effects of Defendant's alleged actions were felt in Texas.

*Fintech Fund, F.L.P. v. Horne*, 327 F. Supp. 3d 1007, 1021 (S.D. Tex. 2018).  As in *Fintech*, Rieck admits he has travelled to Texas for business (*see* Rieck Decl. ¶ 11 ("I was invited to and did attend one meeting that occurred at the League City, Texas, office of Cornucopia and its Subsidiaries in 2016.  I also traveled to Galveston, Texas in 2012 to attend a court hearing in a case involving Cornucopia and its Subsidiaries.")).

Also as in *Fintech*, Texas has an interest in this case because Furie was a limited liability company organized under the laws of Texas when the vast majority of the malfeasance occurred.  Rieck cites no support for his argument that Texas abandoned any interest in Furie when Furie converted to a Delaware LLC on January 25, 2018.  (Motion at 7 ("Delaware is now primarily concerned with the governance of these companies.")).  The Trustee is suing Rieck for acts he took when he acted as the de facto control person of a Texas company.  As a Texas Court of Appeals has observed:

> Excellent reasons exist for allowing a State to assert jurisdiction over non-resident directors of domestic corporations. A chartering State has a strong, even compelling interest in providing a forum for redressing harm done by corporate fiduciaries, harm endured principally by a resident of that State, the corporation.

13

*Rittenmeyer v. Grauer*, 104 S.W.3d 725, 732 (Tex. Ct. App. 2003) (internal citation omitted). In fact, "this suit charges misfeasance in the operation of the domestic corporation and injury to the remaining director and shareholder of the corporation, both residents of this state":

> Courts recognize that a corporate officer is not protected from the exercise of specific jurisdiction, even if all of his contacts were performed in a corporate capacity, if the officer engaged in tortious or fraudulent conduct, directed at the forum state, for which he may be held personally liable.

*TexVa, Inc. v. Boone*, 300 S.W.3d 879, 887, 890 (Tex. Ct. App. 2009), quoting *Gene Ennis v. Robert Loiseau, Special Deputy Receiver of Am. Benefit Plans*, 164 S.W.3d 698, 707 (Tex. Ct. App. 2005). Exercising specific jurisdiction over Rieck based on these allegations therefore does not offend traditional notions of fair play and substantial justice given Texas' interest in the case.

B.   The Court Should Resolve Any Remaining Disputes Over Jurisdiction at Trial

Rieck seeks an evidentiary hearing on any disputed factual issues regarding his Texas contacts and requests that any factual disputes be resolved in his favor. (Motion at 10). However, on this Motion, and even if the Court were to allow limited discovery, all factual disputes must be resolved in the Trustee's favor. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). At this stage, the Trustee need only present a prima facie case. *Id.* That is because:

> If the court determines that it will receive only affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie showing

> of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss. Any greater burden such as proof by a preponderance of the evidence would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavit and supporting materials.

*Id.* (internal citation omitted).  Because the jurisdictional issues are largely coterminous with the substantive allegations against Rieck, the Court should deny the Motion and allow the Trustee to resolve the issue at trial.  *Walk Haydel*, 517 F.3d at 241-42 (5th Cir. 2008).  The Fifth Circuit endorsed this procedure as appropriate "when the jurisdictional issue is intertwined with the merits and therefore can be determined based on jury fact findings.  In this situation it is often preferable that the jurisdictional determination be made at trial, where a plaintiff may present his case in a coherent, orderly fashion, and without the risk of prejudicing his case on the merits."  *Id.*

For example, the Trustee should be able to put on the relevant Texas Defendants who acted in concert with Rieck to testify as to Rieck's contact with them.  Moreover, the other eleven defendants are all counterparties, attorneys, subordinates or affiliates of Rieck and all had overlapping connections with Rieck.  The Trustee should be able to test Rieck's assertions on this Motion through cross-examination and document discovery from the other defendants.  The Trustee—a stranger to these events—should not be limited to Rieck's say-so on this Motion.

However, even if the Court determines an evidentiary hearing is necessary, the Trustee respectfully requests discovery in advance of that hearing concerning:  (i) Rieck's contacts with the Furie executives and employees in Texas; (ii) Rieck's travel to and

business relationships in Texas; and (iii) Rieck's assertions that he acted only as chairman of the board of Deutsche Oel und Gas.

## II.   The Court Should Deny Rieck's Motion Under Rule 12(b)(5)

### A.   Defendant Rieck can be—and has been—lawfully served process

Rieck argues that the Court should dismiss the case or require the Trustee to re-serve process on Rieck.  (Motion at 10).  Rieck argues there is nothing in the file indicating the papers were mailed to Rieck.  This contention is premature, as the Texas Secretary of State's certificate of service has not been received by the Trustee and is not yet available for filing with the Court.  He also argues that he no longer lives at the address.

However, on September 9, 2021, after Rieck submitted his Motion, the Trustee served him at his Dubai Address by hand delivery of the complaint and citation to a member of his household (a live-in caretaker named Tamour), as described in the Declaration of Service.  (ECF 66, at 1-2).  Such service complies with Rule 4(f)(2)(A) because it comports with United Arab Emirates Federal Law No. 10 (amending Certain Provisions of the Civil Procedures Law issued by virtue of Federal Law No. 11 of 1992), which expressly allows service via a member of household, "including spouses, relatives, in-laws or servants." Federal Law No. 10, Article 8, Section 2 (Igyarto Decl, Ex 13).  Because service has therefore been effected under Rule 4(f)(2)(A), Rieck's final point is moot.

To the extent the Motion seeks dismissal of the Claims against Defendant Rieck due to improper service of process, however, it is premature.  Rule 4(m)'s 90-day limit does not apply to service in a foreign country under Rule 4(f), and the Complaint was filed less than 60 days ago.  Fed. R. Civ. P. 4(m).  *See also Mosley v. Bexar County*, Civ. Act. No.

SA–17–CV–583–XR, 2017 WL 3326968, at *2 (W.D. Tex. 2017) (denying motion to dismiss due to improper service because, *inter alia*, "[t]his case is barely a month old; Plaintiffs still have ample time to serve Bexar County without running afoul of Rule 4(m)'s time limits.").

    B.    <u>In the Alternative, the Court Should Authorize Service on Rieck's Counsel</u>

Rieck obviously has knowledge of this suit and is actively litigating his defenses. The Trustee has diligently attempted to serve Rieck multiple times. No good purpose would be served by requiring Rieck to make a second motion to quash or the Trustee to spend additional funds notifying Rieck of the suit. The Court should authorize alternate service on Rieck's counsel in this action under Federal Rule of Civil Procedure 4(f)(3). *See Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018) (affirming application of Court-ordered email service under Rule 4(f)(3) on international defendant). *See also U.S. Fire Pump Co. LLC. v. Alert Disaster Control (Middle East) Ltd.*, Civ. Act. 19-335-SDD-EWD, 2021 WL 296073, at *14 (M.D. La. Jan. 28, 2021) (authorizing service on international defendant's U.S. counsel where the defendant's entities had been served, shared one legal team with those defendants, and submitted an affidavit indicating that he had knowledge of the action and the opportunity to present his objections); *Document Ops., LLC v. AOS Legal Techs, Inc.*, Civ. Act. No. 4:20-CV-1532, 2021 WL 3089258, at *3 (S.D. Tex. July 22, 2021) (authorizing service on international defendant's U.S. counsel where defendant had knowledge of complaint, and was a sophisticated party operating in multiple countries).

17

Alternative service under Rule 4(f)(3) "is neither a 'last resort' nor 'extraordinary relief.'  It is merely one means that enables service of process on an international defendant."  *Document Ops*. 2021 WL 3089258, at *3, quoting *Rio Props. Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014-15 (9th Cir. 2002) (analyzing text of rule and advisory notes).  Thus, the Court "has considerable discretion to authorize an alternative means of service as long as the method of service is not prohibited by international agreement."  *Document Ops*. 2021 WL 3089258, at *3 (collecting numerous cases authorizing service on U.S. counsel).  There is no such prohibitory international agreement with the United Arab Emirates.  *Spencer v. Caracal Int'l, LLC*, Case No. 2:21-cv-00005, 2021 WL 3172312, at *4 (M.D. Tenn. July 27, 2021); *Kuhlman v. McDonnel*, Case No. 1:20-cv-00510, 2021 WL 306468, at *2 (S.D. Ohio Jan. 29, 2021).  Therefore, the Court should authorize service on Rieck via his counsel in this action.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully submits that the Court should deny the Motion, or in the alternative, grant discovery on the jurisdictional issues.  Should the Court determine service ineffective, the Court should authorize service on Rieck's counsel in this action.

Respectfully Submitted,

*/s/ Robert M. Corn*

Robert M. Corn
State Bar No. 0482600
3131 Eastside St., Suite 440
Houston, Texas 77098-1947
Telephone: 713-229-0055

Facsimile; 713-229-0057
Email: rcorn@corn-law.com

OF COUNSEL:

AMINI LLC
Bijan Amini
Avery Samet
Michael Igyarto
131 West 35th Street, 12th Floor
New York, New York 10001
Telephone: (212) 490-4700
bamini@aminillc.com
asamet@aminillc.com
migyarto@aminillc.com

ATTORNEYS FOR PLAINTIFF CLINGMAN
HANGER MANAGEMENT ASSOCIATES,
LLC, as Trustees of the Furie Litigation Trust

## CERTIFICATE OF COMPLIANCE

Under the COURT PROCEDURES FOR HON. CHARLES R. ESKRIDGE III, ¶ 18(c),I certify that this response contains 4,968 words, except the excluded case caption, table of contents, table of authorities, signature block, and certificates.  It was prepared in Microsoft Word using 13-point typeface.  In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

*/s/ Robert M. Corn*
Robert M. Corn

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument was served upon all counsel of record on October 1, 2021, using the Court's electronic filing system.

*/s/ Robert M. Corn*
Robert M. Corn