UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CLINGMAN & HANGER | § | |
| MANAGEMENT ASSOCIATES, LLC, | § | CIVIL ACTION NO. |
| AS TRUSTEE OF THE FURIE | § | 4:21-cv-02698 |
| LITIGATION TRUST, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | JUDGE CHARLES ESKRIDGE |
| *v.* | § | |
| | § | |
| KAY RIECK, ET AL., | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANT STONE PIGMAN WALTHER WITTMANN L.L.C.'S RESPONSE OPPOSING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

George M. Kryder – *Attorney in Charge*
  State Bar No. 11742900
  S.D. Tex. Bar No. 14778
  gkryder@velaw.com
Matthew W. Moran
  State Bar No. 24002642
  S.D. Tex. Bar No. 24471
  mmoran@velaw.com
Jordan W. Leu
  State Bar No. 24070139
  S.D. Tex. Bar No. 1133712
  jleu@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3900
Dallas, Texas  75201
Telephone: (214) 220-7700
Fax: (214) 220-7716

Patrick W. Mizell
  State Bar No. 14233980
  S.D. Tex. Bar No. 36390
  pmizell@velaw.com
VINSON & ELKINS LLP
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760
Telephone: (713) 758-2222

*Attorneys for Defendant*
*Stone Pigman Walther Wittmann L.L.C.*

To The Honorable Charles R. Eskridge III, United States District Judge:

No Louisiana case imposes "successor liability" on a law firm based on lateral hiring. Because Plaintiff has not, and cannot in good faith, allege any – *let alone all three* – independent threshold requirements for successor liability under controlling Louisiana law, the Proposed Amendment (Dkt. 94-1) is futile and *Plaintiff's Motion for Leave to Amend its Complaint in Response to Motion to Dismiss of Defendant Stone Pigman Walther Wittmann L.L.C.* (Dkt. 94, the "Motion for Leave") should be denied.

Louisiana state court cases on successor liability – which Plaintiff fails to cite – require, among other things, that: (1) the buyer (Stone Pigman) be a newly-organized corporation; (2) the owners of the seller (Cogan Partners) must acquire an interest in the buyer almost identical to what they held in the seller, giving the buyer essentially the same ownership and control as the seller; and (3) the buyer must acquire *all* of the seller's assets, to the detriment of the seller's creditors. These requirements are absent here, so successor liability fails as a matter of Louisiana law no matter which label Plaintiff attempts to apply.

The Proposed Amendment also includes an ***entirely new***, time-barred state-law claim attempting to recover transfers allegedly made ***by Cogan Partners***, unlike the current bankruptcy claims attempting to recover transfers allegedly made ***by Furie***. This claim is time-barred because it was not filed before the August 9, 2021 deadline, and cannot relate back to the Petition's original filing date because it is asserted in a different capacity, based on different transfers, made by a different alleged transferor (Cogan Partners), at different times, for different purposes. The Court thus should deny the Motion for Leave.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. 4

NATURE AND STAGE OF PROCEEDINGS ........................................ 7

STATEMENT OF FACTS ................................................................. 8

STATEMENT OF ISSUES ................................................................ 8

STANDARD OF REVIEW ................................................................ 8

ARGUMENT ................................................................................. 8

I.   ANY LATERAL HIRING SUCCESSOR LIABILITY THEORY IS FUTILE AS A MATTER OF LOUISIANA LAW ................................................. 8

     A.   "Mere continuation" successor liability is futile because Plaintiff has not alleged, and cannot allege, three threshold requirements ...................... 8

          1.   Stone Pigman was not a "newly organized corporation" ................... 9

          2.   Cogan Partners' owners did not obtain a "substantial or almost identical interest" in Stone Pigman ................................................. 10

          3.   Stone Pigman did not obtain all of Cogan Partners' assets to the detriment of Cogan Partners' creditors ...................................... 12

     B.   "De facto merger" may not be a separate basis of successor liability under Louisiana law, and in any event is futile and inapplicable .............. 15

II.  EQUITABLE ESTOPPEL IS NOT A BASIS FOR RETROACTIVE SUCCESSOR LIABILITY AND IS FUTILE BECAUSE PLAINTIFF CANNOT SHOW RELIANCE ON ALLEGED STATEMENTS IN 2017 TO RECOVER FOR CONDUCT IN 2011-2016 ........ 18

III. THE NEW CONSTRUCTIVE FRAUDULENT TRANSFER CLAIM IS TIME-BARRED AND FUTILE ............................................................................ 20

IV.  PLAINTIFF'S BELATED ATTEMPT TO AMEND "AS A MATTER OF COURSE" UNDER RULE 15(A)(1)(B) SHOULD BE DENIED ...................................... 22

CONCLUSION ............................................................................. 23

CERTIFICATE OF COMPLIANCE ..................................................... 25

CERTIFICATE OF SERVICE ............................................................ 25

TABLE OF AUTHORITIES

## Cases

*Borque v. Lehmann Lathe, Inc.*,
  476 So.2d 1125 (La. App. 3 Cir. 1985) ................................................................. 12, 16

*Burmaster v. Gravity Drainage Dist. No. 2 of Par. of St. Charles*,
  602 So.2d 1045 (La. App. 5 Cir 1992) ........................................................................ 17

*Caro v. Weintraub*,
  No. 3:09-CV-1353, 2010 WL 4514273 (D. Conn. Nov. 2, 2010) ................................ 23

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) ...................................................................................... 13

*Eddie Tourelle's Northpark Hyundai, LLC v. Hyundai Motor Am. Corp.*,
  No. 18-11757, 2019 WL 6701305 (E.D. La. Dec. 9, 2019) ........................................ 14

*Ellis v. Jean*,
  No. 10 Civ. 8837, 2011 WL 6368555 (S.D.N.Y. Dec. 16, 2011) ................................ 23

*Estate of Salas v. City of Galena Park*,
  No. CV H-19-4479, 2021 WL 1238227 (S.D. Tex. Feb. 23, 2021) ............................. 22

*Goldberg v. Gray*,
  No. 5:15-CV-0538, 2015 WL 8492471 (N.D.N.Y. Dec. 9, 2015) ................................ 23

*Granite State Ins. Co. v. Delta Marine & Envtl. Services, LLC*,
  No. CV 18-9388, 2020 WL 256147 (E.D. La. Jan. 17, 2020) ....................................... 10

*Hadassa Investment Sec. Nigeria, Ltd. v. Swiftships Shipbuilders LLC*,
  2018 WL 6835384 (W.D. La. Dec. 28, 2018) ............................................................... 16

*Hadassa Investment Sec. Nigeria, Ltd. v. Swiftships Shipbuilders LLC*,
  No. 6:16-CV-1502, 2018 WL 1310104 (W.D. La. Mar. 12, 2018) ............................... 16

*Hollowell v. Orleans Reg'l Hosp. LLC*,
  217 F.3d 379 (5th Cir. 2000) ..................................................................................... 9, 10

*Ike v. United States Citizenship & Immigration Services*,
  No. 3:20-CV-3743, 2021 WL 2167054 (N.D. Tex. May 27, 2021) ............................... 23

*In re Uplift RX, LLC*,
  625 B.R. 364 (Bankr. S.D. Tex. 2021) ........................................................................ 22

*Indep. Fire Ins. Co. v. Able Moving & Storage Co, Inc.*,
  650 So.2d 750 (La. 1995) ............................................................................................ 19

*Indus. Equip. Sales & Serv. Co. v. Sec. Plumbing Inc.*,
  666 So.2d 1165 (La. App. 3 Cir. 1995) ..................................................................... 9, 10

*John Bailey Contractor v. State*,
    439 So.2d 1055 (La. 1983) ........................................................................ 18

*Lucio v. Fern at Tenth LLC*,
    No. 7:19-CV-189, 2019 WL 4993418 (S.D. Tex. Oct. 8, 2019) .................................. 22

*Monroe v. McDaniel*,
    207 So.3d 1172 (La. App. 5 Cir. 2016) ........................................................ 12, 14, 16

*Morris v. Friedman*,
    663 So.2d 19 (La. 1995) ....................................................................... 18, 19, 20

*Murray v. B & R Machine, Inc.*,
    No. 92-4030, 1995 WL 133346 (E.D. La. Mar. 24, 1995) ........................................ 11

*Nat'l Surety Corp. v. Pope Park, Inc.*,
    121 So.2d 240 (La. 1960) ........................................................................ 11

*Pichon v. Asbestos Defendants*,
    52 So.3d 240 (La. App. 4 Cir. 2010) ........................................................ 12, 13, 14, 16

*S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*,
    315 F.3d 533 (5th Cir. 2003) ..................................................................... 8

*Spears v. Mid-Am. Dairymen, Inc.*,
    824 So.2d 1269 (La. App. 1 Cir 2002) ........................................................... 17

*Spurgeon v. Leleux*,
    No. 6:11-CV-01807, 2019 WL 138388 (W.D. La. Jan. 8, 2019 ................................... 16

*Travis-Edwards, Inc. v. Texas-Edwards, Inc.*,
    299 So.2d 389 (La. App. 2 Cir. 1974) ........................................................... 17

*Wolff v. Shreveport Gas, Elec. Light & Power Co.*,
    70 So.2d 798 (La. 1916) ...................................................................... 10, 12, 14

**Statutes**

11 U.S.C. § 108(a) ............................................................................... 20, 21

11 U.S.C. § 301(b) ............................................................................... 20

11 U.S.C. § 544 ................................................................................. 21

11 U.S.C. § 548 ................................................................................. 7, 21

LA. C.C. art. 1967 .............................................................................. 18

TEX. BUS. & COM. CODE § 24.008(a) .............................................................. 21

TEX. BUS. & COM. CODE § 24.009(b) .............................................................. 21

TEX. BUS. & COM. CODE § 24.010(a)(2) ........................................................... 20

**Rules**

FED. R. CIV. P. 12(b) ........................................................................................ 22, 23

FED. R. CIV. P. 15(a)(1)(B) ................................................................................. 7, 22

FED. R. CIV. P. 15(a)(2) ......................................................................................... 8, 23

FED. R. CIV. P. 15(c)(1)(B) ................................................................................... 21

## NATURE AND STAGE OF PROCEEDINGS

In a state court petition filed August 6, 2021 (the "Petition"), Plaintiff sued Stone Pigman and others seeking to recover allegedly fraudulent transfers under 11 U.S.C. § 548 and asserting breach of fiduciary duty and other claims.  On August 18, 2021, Stone Pigman removed the case to this Court.  Dkt. 01 (Notice of Removal).

The Petition conclusorily refers to Stone Pigman as a "successor by merger" to Cogan & Partners LLP ("Cogan Partners").  *See* Petition, ¶¶ 20, 22, and 33. But indisputable public records show that there was no merger and that Cogan Partners continued to exist for approximately 4.5 years after *some* of its attorneys joined Stone Pigman.  Before filing its Motion to Dismiss (Dkt. 45), under the Court's procedures and Local Rules, Stone Pigman sent Plaintiff's counsel a detailed letter identifying the defects in the Petition, including the absence of any "merger."  Instead of dismissing its claims or amending at that time "as a matter of course" under FED. R. CIV. P. 15(a)(1)(B), Plaintiff raised several unpled arguments in a response letter, forcing Stone Pigman to move to dismiss the original Petition.  *See* Dkt. 45, p. 25 (Conference Certificate).

Now, after Stone Pigman spent considerable resources moving to dismiss Plaintiff's original Petition, Plaintiff seeks leave to file a futile amendment asserting three new purported bases for successor liability under Louisiana law – "mere continuation," "*de facto* merger," and equitable estoppel – and a new time-barred Texas constructive fraudulent transfer claim.  Dkt. 94.  The Court should deny leave as shown below.

## STATEMENT OF FACTS

Stone Pigman incorporates by reference the "Nature and Stage of Proceedings" for purposes of its statement of facts.

## STATEMENT OF ISSUES

1.      Should the Proposed Amendment be denied as futile?

2.      Should the Proposed Amendment be denied for "undue delay" when Plaintiff failed to amend in response to Stone Pigman's meet-and-confer letter and the deadline for amendment "as a matter of course" expired on October 5, 2021, two weeks before Plaintiff filed its Motion for Leave?

## STANDARD OF REVIEW

A district court's denial of leave to amend is reviewed for abuse of discretion.  *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003).

## ARGUMENT

## I.      ANY LATERAL HIRING SUCCESSOR LIABILITY THEORY IS FUTILE AS A MATTER OF LOUISIANA LAW

Even the liberal standard for amendment under Rule 15(a)(2) does not authorize a *futile* amendment.  *See* Motion for Leave, at 5-6.  An amendment is futile if it would not survive a motion to dismiss.  *Id*.  Successor liability is futile under any label, so amendment should be denied.

### A.      "Mere continuation" successor liability is futile because Plaintiff has not alleged, and cannot allege, three threshold requirements

Plaintiff fails to cite any Louisiana state-court cases addressing successor liability. This is problematic because some of Plaintiff's cited federal cases only mention in passing or ignore crucial threshold requirements that are absent and dispositive against successor liability here.

Louisiana recognizes a "mere continuation" exception to the rule that an asset purchase does not subject the purchaser to successor liability.  But it requires proof of three threshold requirements that are absent here: (1) the "continuation" entity must be newly-formed; (2) the seller's owners must obtain a "substantial" or "almost identical interest" in the newly-formed continuation entity; and (3) the "continuation" entity must acquire "all" of the seller's assets, to the detriment of its creditors.  Successor liability thus is futile here.

### 1.    Stone Pigman was not a "newly organized corporation"

Absent fraud on the creditors (discussed below), successor liability requires "circumstances attending the ***creation of the new corporation*** and its succession to the business and property . . . of such a character as to warrant a finding that the ***new corporation*** was merely a continuation of the old." *Indus. Equip. Sales & Serv. Co. v. Sec. Plumbing Inc.*, 666 So.2d 1165, 1166–67 (La. App. 3 Cir. 1995) (emphasis added) (reversing judgment against alleged successor but affirming it against alleged predecessor).

Plaintiff has not pled – and cannot plead – this requirement for a simple reason: Stone Pigman was not a "new corporation."  Indeed, Plaintiff admits that Stone Pigman has existed for over 85 years – long before Cogan Partners was founded in 2010.  *See* Proposed Amendment, ¶ 11(b)-(c).  Thus, Plaintiff's attempt to impose successor liability on Stone Pigman under the "mere continuation" doctrine is futile.

Several of Plaintiff's federal cases recognize that successor liability requires proof that a "new corporation" was formed.  *See, e.g., Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 382, 390-91 (5th Cir. 2000) (affirming successor liability where newly-organized company was formed in 1996, the same year old company was dissolved; citing

*Indus. Equip.*, 666 So.2d at 1166-67, and other cases for the requirement to consider "the circumstances attending the creation of the new" corporation); *Granite State Ins. Co. v. Delta Marine & Envtl. Services, LLC*, No. CV 18-9388, 2020 WL 256147, at *2, 4-7 (E.D. La. Jan. 17, 2020) (enforcing judgment against defendant's successor – a newly organized company that received the defendant's assets within approximately one month after being organized).

Because Plaintiff has not pled the threshold requirement that Stone Pigman was "newly organized," the Court need not reach the eight "mere continuation" factors listed as dicta in *Hollowell* and other federal cases upon which Plaintiff relies.  Indeed, nothing in *Hollowell* suggests that the Fifth Circuit would have upheld successor liability without proof – present there, absent here – that a "newly organized corporation" was formed amid "'circumstances . . . of such a character as to warrant the finding that the new, is merely a continuation of the old . . . corporation'"  *See Hollowell*, 217 F.3d at 390-91 (quoting *Wolff v. Shreveport Gas, Elec. Light & Power Co.*, 70 So.2d 798, 794 (La. 1916)); *see also Hollowell*, 217 F.3d at 391 n.14 (noting defendants' failure to object to the jury instructions on the successor liability theory).

Because Plaintiff has not pled and cannot meet this first threshold requirement of successor liability under Louisiana law, the Proposed Amendment is futile.

2.   <u>Cogan Partners' owners did not obtain a "substantial or almost identical interest" in Stone Pigman</u>

The Louisiana Supreme Court has held that "the 'continuation' doctrine . . . can be invoked only when it is shown that the major stockholders of the selling corporation also

have a *substantial or almost identical interest* in the purchasing corporation, for, otherwise, there would be no premise for concluding that the new corporation is a reincarnation of the old." *Nat'l Surety Corp. v. Pope Park, Inc*., 121 So.2d 240, 243 (La. 1960) (emphasis added) (refusing to find successor liability absent evidence of same ownership); *see also Murray v. B & R Machine, Inc.*, No. 92-4030, 1995 WL 133346, at *5 (E.D. La. Mar. 24, 1995) ("The mere continuation exception is designed to impose liability on the successor when it is, in fact although not in law, the *same* corporation, with the *same ownership and control*, as its predecessor.") (emphasis added) (refusing to find successor liability where two corporations had no common shareholders, even though the second corporation continued the business of the first).

Plaintiff does not – because it cannot – allege that former Cogan Partners acquired the same ownership, with a comparable degree of control, in Stone Pigman.  Instead, Plaintiff merely proposes to plead that *two of three* former *partners* of Cogan Partners (a Texas limited liability *partnership*) joined Stone Pigman (a Louisiana limited liability *company*) as *members* – without alleging anything to support a finding that they obtained "a substantial or almost identical interest" in Stone Pigman.  Proposed Amendment, ¶ 3(a)-(b).  This fails as a matter of Louisiana law.

Unlike Cogan Partners, which according to Plaintiff was a Texas LLP with seven lawyers, Stone Pigman was a much larger firm (and a Louisiana LLC) with "about 70 lawyers."  *See id*. at ¶¶ 3 & 11(b); *see also* Stone Pigman's Declaration Establishing Citizenship of its Members (Dkt. 58-2) (identifying 39 Stone Pigman members, including both individuals and professional corporations).  The Court can take judicial notice that

partnership in a seven-lawyer Texas law firm is much different than membership in a seventy-lawyer Louisiana law firm – but need not do so, because Plaintiff does not even allege that the minority membership interests the Cogan attorneys obtained in Stone Pigman were anything like – let alone identical to – the controlling partnership interests they had at Cogan Partners.

Moreover, Plaintiff does not allege that any of the Cogan Partners attorneys had an interest in Stone Pigman before the 2017 agreement between the firms, or that Stone Pigman ever owned an interest in Cogan Partners, or anything else to suggest any pre-existing overlap of ownership or control between the two separate firms. *Cf. Wolff*, 70 So. at 790-91, 795 (successor liability may exist "where the purchaser is ***a new corporation, composed of the same shareholders as the old***") (emphasis added). Without such allegations, Plaintiff cannot show that Cogan Partners' owners obtained a "substantial or almost identical interest" in Stone Pigman. Successor liability thus is futile because Plaintiff cannot meet this second threshold requirement.

### 3. Stone Pigman did not obtain all of Cogan Partners' assets to the detriment of Cogan Partners' creditors

A third "threshold requirement to trigger successor liability under the 'continuation' exception is that one corporation must have purchased *all* the assets of the other." *Monroe v. McDaniel*, 207 So.3d 1172, 1181 (La. App. 5 Cir. 2016) (emphasis in original) (citing *Pichon v. Asbestos Defendants*, 52 So.3d 240, 244 (La. App. 4 Cir. 2010)); *see also Borque v. Lehmann Lathe, Inc.*, 476 So.2d 1125, 1129 (La. App. 3 Cir. 1985) ("[A] *sine qua non*

is that the predecessor firm *voluntarily* transferred *all* of its assets to the successor.")
(emphasis in original).

Plaintiff's Proposed Amendment conclusorily alleges that Stone Pigman received
"[a]ll or substantially all of Cogan Partners' physical assets and goodwill." Proposed
Amendment, ¶ 22.  Even if true, this would be inadequate because it omits reference to the
intangible (and other) assets Cogan Partners retained, including accounts receivable, cash,
trade names, and service marks.  It also ignores the actual terms of the January 1, 2017
Agreement between the firms (the "Agreement"), which is before the Court as Exhibit 3 to
Stone Pigman's Motion to Dismiss and is "considered part of the pleadings" because it is
"referred to in . . . and . . . central to" the Petition and Proposed Amendment.  *Collins v.
Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

Cogan Partners retained several types of assets.  For example, "[a]ll accounts
receivable of Cogan Partners on account of services performed before the Effective Date
remain[ed] the property of Cogan Partners."  Agreement, § 6.1.  Likewise, "[a]ll revenues
from work-in-progress of Cogan Partners before the Effective Date [remained] the property
of Cogan Partners."  *Id.*  Although Stone Pigman received Cogan Partners' interest in the
files of clients who consented to moving to Stone Pigman, Cogan Partners retained its
interest in the files of clients who did not move.  *Id.* at § 6.6.  To the extent not in conflict
with any clients' rights, Cogan Partners also retained a "royalty-free license to use, publish
and license all [related] intellectual property."  *Id.*

Cogan Partners' retention of these assets negates successor liability.  *See Pichon*, 52
So.3d at 244 (affirming summary judgment against successor liability because the alleged

successor received only *some* of the alleged predecessor's assets); *see also Eddie Tourelle's Northpark Hyundai, LLC v. Hyundai Motor Am. Corp.*, No. 18-11757, 2019 WL 6701305, at *6 (E.D. La. Dec. 9, 2019) (cited by Plaintiff) (acknowledging the threshold requirement "that one corporation must have purchased all the assets of the other" and dismissing successor liability theories based on the absence of such allegations).

Importantly, Stone Pigman ***expressly declined to assume liability*** for Cogan Partners' prior work. *See* Agreement, § 6.2(b). As the court stated in *Pichon*, "the facts showing one corporation to be merely a continuation of the other would have to be especially compelling to impose liability upon a corporation that has expressly contracted out of such liability." 52 So.3d at 244. Plaintiff fails this test, and has not cited any cases imposing "successor liability" on a law firm based on lateral hiring.

Moreover, not every "all asset" sale generates successor liability. Louisiana courts also examine whether the sale was for less than a fair price, because so long as the buyer pays a fair price, the seller's creditors are not harmed. *See Wolff*, 70 So. at 795 (distinguishing "a sale, in good faith, of the property and business . . . to a third person, for an adequate consideration," where "the [seller's] creditors would be relegated to the proceeds"); *Monroe*, 207 So.3d at 1181 (rejecting successor liability where the alleged predecessor company was left with "enough assets through accounts receivable and fixed assets . . . to cover its liabilities").

Here, the Agreement was not detrimental to Cogan Partners' creditors. Stone Pigman paid $50,000 – fair market value – for some (not all) of Cogan Partners' office furniture and other personal property. *See* Agreement, §§ 6.3, 7.5, and 9.3. Cogan Partners

also agreed to "purchase a 'tail' on its professional liability insurance policy, with the same or greater limits, to cover any claims made with respect to legal services rendered by its attorneys prior to [January 1, 2017] . . . ." *Id*. at § 7.7; *see also id*. at § 9.7 (requiring Cogan Partners to keep the tail insurance in effect for a period at least "equal to the Texas statute of limitations on claims of legal malpractice"); *id*. at 9.11 (requiring Cogan Partners to remain in existence for at least three years). This tail insurance, in addition to being another Cogan Partners asset that Stone Pigman did not receive, shows that the Agreement did not leave Cogan Partners' creditors without recourse. Nevertheless, Plaintiff failed to seek the benefits of these creditor-protective provisions by failing to timely sue Cogan Partners.

Plaintiff fails to allege any of the three threshold requirements for successor liability and fails to cite a single Louisiana state court successor liability case. Plaintiff thus cannot plausibly allege successor liability, and the Proposed Amendment is futile.

### B.    "De facto merger" may not be a separate basis of successor liability under Louisiana law, and in any event is futile and inapplicable

Plaintiff superficially argues that "Louisiana recognizes the doctrine[] of *de facto* merger," but does not cite any Louisiana state court cases for the applicable standard. *See* Motion for Leave, at 6. This probably is because many Louisiana cases do not separate "*de facto* merger" from the "mere continuation" doctrine which fails for the reasons shown above, and the few Louisiana cases reaching the merits of an alleged "*de facto* merger" do not suggest that a "*de facto* merger" theory is viable here.

Many Louisiana cases acknowledge the "mere continuation" doctrine without separately listing a "*de facto* merger" exception to the general rule that a purchaser of assets

does not become liable for the seller's liabilities.  *See Monroe*, 207 So.3d at 1180; *Pichon*, 52 So.3d at 243; *Borque*, 476 So.2d at 1127.

Although Plaintiff cites three federal cases involving "Swiftships" that listed "*de facto* merger" as a separate potential basis for successor liability under Louisiana law, they are dicta.  *See Hadassa Investment Sec. Nigeria, Ltd. v. Swiftships Shipbuilders LLC*, No. 6:16-CV-1502, 2018 WL 1310104, at *3 (W.D. La. Mar. 12, 2018); *Hadassa Investment Sec. Nigeria, Ltd. v. Swiftships Shipbuilders LLC*, 2018 WL 6835384, at *3 (W.D. La. Dec. 28, 2018), and *Spurgeon v. Leleux*, No. 6:11-CV-01807, 2019 WL 138388, at *5 (W.D. La. Jan. 8, 2019). The two *Hadassa* decisions do not reach the merits of "mere continuation" *or* "*de facto* merger."  The third case, *Spurgeon*, found successor liability based on "mere continuation" and fraud, under circumstances vastly different than anything alleged here: a newly formed company, ultimately owned by the same families as the old company, had acquired all of the assets of the old company, to the indisputable detriment of its creditors.  Importantly, *Spurgeon* did not reach the merits of "*de facto* merger."  *See* 2019 WL 138388, at *3-6.

If the Court treats "*de facto* merger" as subject to the same threshold requirements as "mere continuation," then it fails for the reasons shown above: Stone Pigman was not a new corporation, the Cogan Partners owners did not obtain a substantial or almost identical interest in Stone Pigman, and Stone Pigman did not acquire all of Cogan Partners' assets to the detriment of its creditors.

But even if the Court treats "*de facto* merger" as a separate doctrine, Louisiana law would not support successor liability here.  Louisiana state court cases reaching the merits

of alleged "*de facto* mergers" are sparse, and those that exist involved transactions completely unlike what Plaintiff alleges in the Proposed Amendment.

For example, in *Travis-Edwards, Inc. v. Texas-Edwards, Inc.*, 299 So.2d 389 (La. App. 2 Cir. 1974), Company A and its shareholders entered into an agreement under which Company B acquired all of the shares in Company A in exchange for Company B shares. 299 So.2d at 391. After being acquired by Company B, Company A sold its principal asset (a building, subject to a mortgage) to Company B, then dissolved. *Id*. The lender foreclosed, and the court found Company B liable for the deficiency (*i.e.*, the remaining debt), explaining that the "procedure followed when [Company A] was absorbed by [Company B] was in fact a merger." *Id*. at 391, 393.

The allegations in the Proposed Amendment are nothing like *Travis-Edwards*. Instead, Plaintiff alleges that some Cogan Partners attorneys (and only two of its partners) moved laterally to Stone Pigman and brought office furniture and other personal property with them, while others went elsewhere or retired. Stone Pigman did not acquire any equity in Cogan Partners, and Cogan Partners continued to exist for 4.5 more years.

Only two other Louisiana state court opinions use the phrase "*de facto* merger." *Spears v. Mid-Am. Dairymen, Inc.*, 824 So.2d 1269, 1271-72 (La. App. 1 Cir 2002), addressed a consolidation of two farmers' cooperative associations following a majority vote of the predecessor's members. The successor expressly had assumed the predecessor's obligations to its members, so *Spears* is uninformative. *Id*. *Burmaster v. Gravity Drainage Dist. No. 2 of Par. of St. Charles*, 602 So.2d 1045 (La. App. 5 Cir 1992), addressed a "*de facto* merger" of governmental subdivisions, which the court found did not result in

successor liability. Any "*de facto* merger" theory thus is futile, and the Proposed Amendment should be denied.

## II. EQUITABLE ESTOPPEL IS NOT A BASIS FOR RETROACTIVE SUCCESSOR LIABILITY AND IS FUTILE BECAUSE PLAINTIFF CANNOT SHOW RELIANCE ON ALLEGED STATEMENTS IN 2017 TO RECOVER FOR CONDUCT IN 2011-2016

Equitable estoppel, which Louisiana **replaced decades ago** with its detrimental reliance statute (LA. C.C. art. 1967), is "'the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct **and changed his position** so that he will suffer injury if the former is allowed to repudiate the conduct.'" *Morris v. Friedman*, 663 So.2d 19, 25 (La. 1995) (emphasis added) (quoting *John Bailey Contractor v. State*, 439 So.2d 1055, 1059 (La. 1983)). Equitable estoppel requires pleading and proof of both justifiable and **detrimental reliance**, *i.e.*, a detrimental change in position. *Id.* Plaintiff's equitable estoppel claim is not a viable basis for successor liability because Plaintiff cannot plausibly plead reliance on alleged statements **in 2017** as a basis to impose retroactive successor liability for alleged **past conduct** by Nunes in 2011-2016.

Plaintiff seeks leave to allege that, in 2017, Stone Pigman stated that it had merged with Cogan Partners for purposes of obtaining Furie as its client. *See* Proposed Amendment, ¶¶ 30-31. But Plaintiff cannot plausibly allege that Furie acted in justifiable reliance on statements made in 2017 when engaging Cogan Partners as its counsel from 2011-2016. Indeed, any conduct for which Plaintiff seeks to impose *successor liability* had to occur while Nunes was at Cogan Partners – **before** any alleged representations about a

merger in 2017.  Equitable estoppel thus cannot be a basis for successor liability, and using Stone Pigman's alleged statements in 2017 to make it liable for things that supposedly happened in 2011-2016 would result in a windfall to Plaintiff.  *Cf. Indep. Fire Ins. Co. v. Able Moving & Storage Co, Inc*., 650 So.2d 750, 752-53 (La. 1995) (cited by Plaintiff) (finding Company A liable for Company B's negligence based on apparent authority and detrimental reliance where the plaintiff had relied on Company A's advertisement ***before*** believing she had hired Company A).

Likewise, Plaintiff cannot plausibly allege that Furie relied on alleged statements concerning a merger in continuing to use Stone Pigman as its counsel in 2017, because the Proposed Amendment never alleges that Furie would have terminated Nunes – its longtime counsel – "but for" such alleged statements.  In any event, such statements would not form a basis for ***retroactive*** successor liability, because the only alleged impact would be ***prospective*** (Nunes's future service as Furie's counsel).

Moreover, equitable estoppel is "not favored" under Louisiana law.  *Morris*, 663 So.2d at 25-26 (quotations omitted).  Importantly, "a party having the means readily and conveniently available to determine the true facts, but who fails to do so, cannot claim estoppel." *Id*. at 25.  In *Morris*, for example, plaintiff proved that defendant had promised to repurchase certain stock, and also proved both justifiable and detrimental reliance – but still could not prove equitable estoppel because Louisiana law, equally accessible to both parties, required any such promise to be in writing to be enforceable.  *Id*. at 26.  Similarly here, Furie easily could have accessed online public records showing that Cogan Partners

continued to exist and had not merged, which prevents Plaintiff from invoking equitable estoppel based on any alleged contrary statements. *See id*.

## III. THE NEW CONSTRUCTIVE FRAUDULENT TRANSFER CLAIM IS TIME-BARRED AND FUTILE

Unlike many plaintiffs in the successor-liability cases cited above, Plaintiff elected ***not*** to sue Cogan Partners (the purported "predecessor") when it sued Stone Pigman on August 6, 2021. Plaintiff also failed to join Cogan Partners as a defendant by the October 29, 2021 deadline, and declined to respond to Stone Pigman's motion to designate Cogan Partners as a responsible third party by the November 8, 2021 deadline.

Instead of suing Cogan Partners or explaining why Cogan Partners should not be named as a responsible third party, Plaintiff belatedly seeks leave to add an entirely new claim that Cogan Partners fraudulently transferred its assets to Stone Pigman. *See* Proposed Amendment ¶¶ 33-37. But any such claim is time-barred because, under Texas law, a constructive fraudulent transfer claim is "extinguished" four years after the date of the transfer. *See* TEX. BUS. & COM. CODE § 24.010(a)(2). The agreement by which Stone Pigman received ***some*** of Cogan Partners' assets was effective on January 1, 2017. Thus, any constructive fraudulent transfer claim based on the Agreement expired under Texas law on January 1, 2021 – over ten months ago.

Furie's chapter 11 bankruptcy extended Plaintiff's deadline to sue, but not long enough to make Plaintiff's new claim timely. Furie filed its voluntary chapter 11 petition on August 9, 2019, and the commencement of its bankruptcy case "constitute[d] an order for relief" under the Bankruptcy Code. *See* 11 U.S.C. § 301(b). Under 11 U.S.C. § 108(a),

Plaintiff thus had until "the later of—(1) the end of [the state law limitations] period [*i.e.*, January 1, 2021]; or (2) two years after the order for relief [*i.e.*, August 9, 2021]" to assert causes of action belonging to Furie. *See* 11 U.S.C. § 108(a). Because Plaintiff waited until October 19, 2021 to seek leave to bring this new claim, it is time-barred.

Importantly, Plaintiff's new fraudulent transfer claim does not "relate back" to August 6, 2021, the date Plaintiff filed its state-court Petition, because it arises out of completely different "conduct, transaction[s], or occurrence[s]" than those in the Petition. *See* FED. R. CIV. P. 15(c)(1)(B). Plaintiff's Petition asserted fraudulent transfer claims based on ***Furie's*** alleged payments to Stone Pigman. *See* Petition, ¶ 172. These existing claims are asserted under § 548 of the Bankruptcy Code, which creates a federal fraudulent-transfer claim assertable by the trustee on account of transfers ***made by Furie***, and also under Plaintiff's "strong-arm" powers under § 544 of the Bankruptcy Code, which allows a trustee to step into the shoes of a creditor of Furie to recover transfers ***made by Furie*** that such creditors could recover under state law. In contrast, the newly proposed claim would be asserted under the Texas fraudulent transfer statute, using Furie's alleged status as a creditor ***of Cogan Partners***, based on alleged transfers ***made by Cogan Partners*** to Stone Pigman. *See* Proposed Amendment, ¶ 37; *see also* TEX. BUS. & COM. CODE § 24.008(a) & 24.009(b) (providing remedies to "creditor[s]").

Plaintiff thus asserts this new claim in a different capacity (creditor instead of trustee), and raises entirely different issues than its current Petition. For example, Plaintiff's existing constructive fraudulent transfer claim requires proof that ***Furie*** was insolvent and received less than reasonably equivalent value from Stone Pigman for the ***fees*** Furie

allegedly paid.  *See* Petition, ¶¶ 172, 177-78.  But on the newly proposed claim, Plaintiff must prove that ***Cogan Partners*** was insolvent and received less than reasonably equivalent value for the ***assets it sold*** to Stone Pigman.  *See* Proposed Amendment, ¶¶ 35-36.  The new claim thus involves different transfers and does not relate back.  *See In re Uplift RX, LLC*, 625 B.R. 364, 376-77 (Bankr. S.D. Tex. 2021) (additional transfers in proposed amendment did not relate back to the original complaint because the additional transfers were not part of the same course of conduct and the original complaint did not notify the parties that the trustee could pursue avoidance of the additional transfers).

The Court should deny Plaintiff leave to assert a time-barred constructive fraudulent transfer claim based on Cogan Partners' alleged transfer of assets to Stone Pigman.

## IV.   PLAINTIFF'S BELATED ATTEMPT TO AMEND "AS A MATTER OF COURSE" UNDER RULE 15(A)(1)(B) SHOULD BE DENIED

Plaintiff's 21-day deadline to amend "once as a matter of course" following "service of a motion under Rule 12(b)" expired on October 5, 2021 – two weeks before Plaintiff filed its Motion for Leave on October 19, 2021.  *See* FED. R. CIV. P. 15(a)(1)(B).  Contrary to the Motion for Leave, this District has addressed ***and rejected*** Plaintiff's position that an extended response deadline also extends the deadline for amendments as a matter of course.  *Estate of Salas v. City of Galena Park*, No. CV H-19-4479, 2021 WL 1238227, at *1 (S.D. Tex. Feb. 23, 2021) ("The court extended the Plaintiffs' response deadline to the motion to dismiss twice.  Extending a response deadline does not extend the 21-day period to amend the complaint as a matter of right as Plaintiffs contend . . . ."); *Lucio v. Fern at Tenth LLC*, No. 7:19-CV-189, 2019 WL 4993418, at *13 (S.D. Tex. Oct. 8, 2019)

(characterizing as "unreasonable" the assertion "that Defendants' extension of Plaintiff's motion to dismiss deadline would extend [the] deadline to amend as a matter of course").

Most other courts have reached the same conclusion. *See Goldberg v. Gray*, No. 5:15-CV-0538, 2015 WL 8492471, at *2 (N.D.N.Y. Dec. 9, 2015) ("[M]ost courts . . . have found that an extension of time to respond to a Rule 12(b) motion does not extend the 21 day time period within which a plaintiff may file an amendment as a matter of course.") (citing *Ellis v. Jean*, No. 10 Civ. 8837, 2011 WL 6368555, at *7 (S.D.N.Y. Dec. 16, 2011), and *Caro v. Weintraub*, No. 3:09-CV-1353, 2010 WL 4514273, at *8 (D. Conn. Nov. 2, 2010)); *Ike v. United States Citizenship & Immigration Services*, No. 3:20-CV-3743, 2021 WL 2167054, at *3 (N.D. Tex. May 27, 2021) (refusing to treat extension of deadline for responding to motion to dismiss as extension of deadline for filing amended complaint "as a matter of course").

Amendment thus is discretionary under Rule 15(a)(2), and should be denied for the reasons shown in Sections I-III above. Alternatively, if the Court allows the Proposed Amendment, Plaintiff should be limited to filing it exactly as Dkt. 94-1 and should not be allowed any further amendments as to Stone Pigman.

## CONCLUSION

The Court should deny the Motion for Leave and grant Stone Pigman such other and further relief to which it is entitled.

Respectfully submitted,

/s/  George M. Kryder

George M. Kryder – *Attorney in Charge*
  State Bar No. 11742900
  Southern District of Texas Bar No. 14778
  gkryder@velaw.com
Matthew W. Moran
  State Bar No. 24002642
  Southern District of Texas Bar No. 24471
  mmoran@velaw.com
Jordan W. Leu
  State Bar No. 24070139
  Southern District of Texas Bar No. 1133712
  jleu@velaw.com
  VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3900
Dallas, Texas  75201
Telephone: (214) 220-7700
Fax: (214) 220-7716

Patrick W. Mizell
  State Bar No. 14233980
  Southern District of Texas Bar No. 36390
  pmizell@velaw.com
VINSON & ELKINS LLP
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760
Telephone: (713) 758-2222

*Attorneys for Defendant Stone Pigman Walther Wittmann L.L.C.*

## CERTIFICATE OF COMPLIANCE

Under the COURT PROCEDURES FOR HON. CHARLES R. ESKRIDGE III, ¶ 18(c), I certify that this response contains 5000 words, except the excluded case caption, table of contents, table of authorities, signature block, and certificates.  It was prepared in Microsoft Word using 13-point typeface.  In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

*/s/  George M. Kryder*
George M. Kryder

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument was served upon all counsel of record on November 9, 2021, using the Court's electronic filing system.

*/s/  George M. Kryder*
George M. Kryder

US 8410543