United States District Court
Southern District of Texas
**ENTERED**
June 13, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CLINGMAN & | § | CIVIL ACTION NO. |
| HANGER | § | 4:21-cv-02698 |
| MANAGEMENT | § | |
| ASSOCIATES LLC, | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| KAY RIECK, *et al*, | § | |
| Defendants. | § | |

OPINION AND ORDER ON PERSONAL JURISDICTION

The motions by Defendants Kay Rieck, Helena Energy LLC, and David Hryck to dismiss for lack of personal jurisdiction are denied. Dkts 32, 46, & 64.

1. Background

This action arises out of the Chapter 11 bankruptcy of Cornucopia Oil and Gas LLC and its wholly owned subsidiary, Furie Operating Alaska LLC (together referred to as *Furie*). See *In re Furie Operating Alaska LLC*, Civil Action 19-cv-11781 (Bankr Del). Furie is a natural gas and oil company that operated in Alaska from 2011 to 2019. It was a Texas LLC from its inception until it converted into a Delaware LLC in January 2018. Dkt 155 at ¶ 6. Until November 2016, Furie also maintained its corporate headquarters in League City, Texas. Id at ¶ 5.

Plaintiff Clingman & Hanger Management Associates LLC is the trustee of a litigation trust established by the bankruptcy proceedings. Dkt 155 at ¶ 4. It brought this action against twelve persons and entities, seeking to recoup multimillion dollar losses sustained by Furie that

were allegedly caused by the malfeasance of Furie executives. See Dkt 155.

Defendants Kay Rieck, Helena Energy LLC, and David Hryck move to dismiss for lack of personal jurisdiction. Dkts 32, 46, & 64.

## 2. Legal Standard

The Fifth Circuit holds that the burden is on the plaintiff to establish "a district court's jurisdiction over a non-resident." *Johnston v Multidata Systems International Corp*, 523 F3d 602, 609 (5th Cir 2008). But proof by a preponderance of the evidence isn't required on a motion to dismiss for lack of personal jurisdiction. Ibid. The plaintiff instead meets its burden by presenting a *prima facie* case that personal jurisdiction is proper. *Quick Technologies Inc v Sage Group PLC*, 313 F3d 338, 343 (5th Cir 2002). The court must accept as true uncontroverted allegations in the plaintiff's complaint. *Johnston*, 523 F3d at 609. But the district court isn't required "to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp v Potomac Electric Power Co*, 253 F3d 865, 869 (5th Cir 2001). The court may also receive "'any combination of the recognized methods of discovery,' including affidavits, interrogatories, and depositions to assist in the jurisdictional analysis." *Little v SKF Sverige AB*, 2014 WL 710941, *2 (SD Tex), quoting *Walk Haydel & Associates Inc v Coastal Power Production Co*, 517 F3d 235, 241 (5th Cir 2008). Conflicts between any facts contained in affidavits or other evidence submitted by the parties must be resolved in favor of the plaintiff. *Johnston*, 523 F3d at 609.

A federal court may exercise jurisdiction over a non-resident defendant if the long-arm statute of the forum state confers personal jurisdiction over that defendant and exercising that jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *McFadin v Gerber*, 587 F3d 753, 759 (5th Cir 2009). The long-arm statute of Texas provides for jurisdiction over a non-resident who (i) contracts by mail or otherwise with a Texas resident and either party is to perform the contract

in whole or in part in Texas, (ii) commits a tort in whole or in part in Texas, or (iii) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state. Tex Civil Practice and Remedies Code § 17.042. The Fifth Circuit holds that this statue confers jurisdiction to the limits of due process. *Latshaw v Johnston*, 167 F3d 208, 211 (5th Cir 1999). This means that "the two-step inquiry collapses into one federal due process analysis." *Johnston*, 523 F3d at 609.

Federal due process permits personal jurisdiction over a non-resident defendant who has *minimum contacts* with the forum state, so long as the exercise of jurisdiction doesn't offend "traditional notions of fair play and substantial justice." Ibid. Such contacts may establish either general or specific jurisdiction.

A federal court has *general jurisdiction* over a non-resident defendant "to hear any and all claims" if that defendant's contacts with the state are so "continuous and systematic" as to render it "essentially at home" in the forum state. *Daimler AG v Bauman*, 571 US 117, 127 (2014), quoting *Goodyear Dunlop Tires Operations SA v Brown*, 564 US 915, 919 (2011). This is a difficult showing to make, requiring "extensive contacts between a defendant and a forum." *Johnston*, 523 F3d at 609, quoting *Submersible Systems Inc v Perforadora Central SA*, 249 F3d 413, 419 (5th Cir 2001) (quotation marks omitted).

A federal court has *specific jurisdiction* over a non-resident defendant to adjudicate "issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 US at 919. It exists "when a non-resident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Walk Haydel*, 517 F3d at 243, quoting *Panda Brandywine*, 253 F3d at 868. The defendant's contacts with the forum "must be more than 'random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person.'" *ITL International Inc v Constenla SA*, 669 F3d 493, 498 (5th Cir 2012), quoting *Burger King*

*Corp v Rudzewicz*, 471 US 462, 475 (1985). But even "isolated or sporadic contacts" can support specific jurisdiction "so long as the plaintiff's claim relates to or arises out of those contacts." Id at 499.

Once the plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof then shifts to the defendant to show that the assertion of jurisdiction is "unfair and unreasonable." *Sangha v Navig8 ShipManagement Private Ltd*, 882 F3d 96, 102 (5th Cir 2018), citing *Wien Air Alaska Inc v Brandt*, 195 F3d 208, 215 (5th Cir 1999). The Fifth Circuit has established five factors that a reviewing court should consider when determining whether jurisdiction is fair and reasonable:

- o *First*, the burden on the non-resident defendant of having to defend itself in the forum;
- o *Second*, the interests of the forum state in the case;
- o *Third*, the interest of the plaintiff in obtaining convenient and effective relief;
- o *Fourth*, the interest of the interstate judicial system in the most efficient resolution of controversies; and,
- o *Fifth*, the shared interests of the states in furthering fundamental social policies.

*Sangha*, 882 F3d at 102.

    3.  Analysis

The above standards require an individualized assessment of each defendant's contacts with the forum state. *Calder v Jones*, 465 US 783, 790 (1984). As such, the jurisdictional contacts of Rieck, Helena, and Hryck will each be analyzed in turn.

    a.  Jurisdiction over Kay Rieck

Kay Rieck is a German national who allegedly controlled non-parties Deutsche Oel und Gas SA and Deutsche Oel und Gas AG. DOGSA putatively owned the

4

now-defunct DOGAG, which was the parent company of Brutus AG, which was the sole owner of Cornucopia. Dkt 155 at ¶ 7; Dkt 32 at 6; Dkt 32-1 at 1. The Trustee contends that Rieck acted as the *de facto* head of Furie; served as one of three managers on the board of Furie from late 2017 until he ceded control to creditors in 2018; and allegedly controlled or owned several other entities that siphoned money from Furie. Dkt 155 at ¶ 8; Dkt 70 at 9. The Trustee asserts claims against Rieck for breach of fiduciary duty, actual fraudulent transfer, constructive fraudulent transfer, insider fraudulent transfer, and civil conspiracy.

Rieck presents an evidentiary dispute and a technical objection, in addition to an argument on the merits.

*As to the evidentiary dispute,* Rieck objects to evidence presented by the Trustee and contends that "evidence offered by a plaintiff in opposition to a motion to dismiss for lack of personal jurisdiction should be competent evidence." Dkt 80 at 2, citing *Hansen v Neumueller GmbH,* 163 FRD 471, 474–75 (D Del 1995). He also argues that several exhibits presented by the Trustee contain inadmissible hearsay. Ibid; see also Dkt 69.

As to the former argument, and as already noted above, a court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery when addressing a Rule 12(b)(2) motion. *SKF Sverige*, 2014 WL 710941 at *2, quoting *Walk Haydel*, 517 F3d at 241 (quotation marks omitted). Any evidence capable of being presented in admissible form may thus be considered. And here, Rieck admits that the Trustee's evidence "is capable of being presented in admissible form." Dkt 80 at 2.

As to the latter argument, the Fifth Circuit holds that hearsay directly contradicted by an affidavit "will not defeat a motion for dismissal under Rule 12(b)(2)." *Cooper v McDermott International Inc*, 62 F3d 395, 395 (5th Cir 1995). But here, the affidavit submitted by Rieck doesn't contradict any supposed hearsay evidence

5

pertinent to the decision here. See *Head v Las Vegas Sands LLC*, 298 F Supp 3d 963, 968 (SD Tex 2018) (holding hearsay evidence not contradicted by affidavit may be considered); compare Dkt 69, with Dkt 32-1.

The objections by Rieck to evidence presented by the Trustee will be overruled. Dkt 80 at 2. That said, the Trustee must still ultimately present admissible evidence to satisfy its burden of establishing personal jurisdiction by a preponderance of the evidence at trial. See *Head*, 298 F Supp 3d at 968.

*As to the technical objection,* Rieck contends that the claims against him should be dismissed under Rule 12(b)(5) because the Trustee failed to properly serve him. Dkt 32 at 8–10. The Trustee responds that it complied with Rule 4(f)(2)(A) when it served the complaint and citation to a member of his household as expressly allowed by United Arab Emirates Federal Law Number 10. Dkt 70 at 21; see also Dkt 66. Rieck didn't counter this argument in his reply brief—in fact, he didn't even address his Rule 12(b)(5) motion. Dkt 80. But nearly seven months later, he once again contends that service was insufficient. Dkt 161. The motion to dismiss will be denied in this respect at present without prejudice. Rieck may reassert it, if desired, at hearing on June 15, 2022. See Dkt 154.

*As to the merits,* Rieck is a citizen of Germany currently residing in the United Arab Emirates. Dkt 32 at 4. The Trustee makes no assertion that general personal jurisdiction exists over him. And Rieck argues that he also isn't subject to specific jurisdiction because (i) he didn't "purposefully direct his activities to Texas," and (ii) the claims by the Trustee didn't "arise from or relate to Rieck's contacts with Texas." Dkt 32 at 6. He notes that Furie didn't have a physical office in Texas after November 2016, and that it became a Delaware LLC in January 2018. He also asserts that he was never involved in the day-to-day operations of Furie. And he contends that nearly all meetings of the Board of Managers for Furie occurred telephonically. Id at 6–7.

6

The Trustee claims to the contrary that Rieck was the *de facto* head of Furie. Dkt 155 at ¶ 8. It alleges multiple instances in which Rieck worked in concert with Texas-based Furie officers to direct the company's operations. For instance, Rieck in 2015 and 2016 worked with Furie officers to charter an oil rig "through a series of insider-controlled entities and then to sub-charter it to Furie at a substantially marked up rate." Id at ¶ 58. This alleged scheme included a verification note sent by Rieck's attorney to Furie falsely claiming that the entities involved were all "independent and unrelated companies." Id at ¶ 82. In conjunction with other Texas-based Furie executives, Rieck also "caused Furie to enter into gas 'sales' transactions with" Aurora in March 2016. Id at ¶ 89. Aurora in turn sold the gas to Helena. Id at ¶ 90. Rieck encouraged (or demanded) that these sales continue after Aurora was forced into bankruptcy in May 2016, resulting in a $900,000 loss for Furie. Id at ¶¶ 91–93. And he later directed Texas-based Furie officers to sell gas directly to Helena—sales for which Furie was allegedly never compensated. Id at ¶¶ 94–95.

These uncontroverted allegations must be accepted as true for the purpose of this motion. *Johnston*, 523 F3d at 609. They demonstrate that in 2016 Rieck in effect reached into Texas to direct the actions of Furie executives and Furie itself—a Texas LLC headquartered in Texas. Rieck in fact admits that he traveled to Texas in March 2016 to meet with Furie executives. Dkt 32-1 at 3. And it's these intentional contacts that allegedly resulted in an injury to Furie, out of which the claims against Rieck arise.

Such jurisdictional contacts surpass those found to be sufficient in cases such as *Trois v Apple Tree Auction Center Inc*, 882 F3d 485 (5th Cir 2018). An Ohio resident there made allegedly fraudulent misrepresentations on a conference call with a Texas resident. The Fifth Circuit found that this "intentional conduct" on the part of the Ohio resident led to the litigation—and so he wasn't being "haled into Texas court based on his random, fortuitous, or attenuated contacts." Id at 491–92. Rieck likewise "should

have reasonably anticipated being haled into Texas court as a result of reaching out to Texas" via phone and email—and at least once in person—in order to direct the decisions of Furie and its officers. Id at 491; see also *Walk Haydel*, 517 F3d at 243; *Clemens v McNamee*, 615 F3d 374, 378 (5th Cir 2010); *Pierce v Aircraft Finance Corporation LLC*, 512 F Supp 3d 753, 762–63 (SD Tex 2021); *Duke Energy International LLC v Napoli*, 748 F Supp 2d 656, 679–81 (SD Tex 2010).

The Trustee has thus established minimum contacts between Rieck and Texas for the purpose of specific personal jurisdiction. Beyond this, Rieck can't establish that asserting jurisdiction over him is unfair or unreasonable. *Sangha*, 882 F3d at 102. *First,* the burden upon him to defend himself in Texas is minimal, as he has extensive business dealings throughout Texas and has traveled to Texas for business purposes at least once. Dkt 70 at 8 & 17. *Second,* Texas maintains an interest in this action because Furie was a Texas LLC when much of the alleged malfeasance took place, and many of the supposed misdeeds also occurred in Texas. *Third,* the Trustee has an interest in pursuing action against all Defendants in a single forum, especially since it brings claims for civil conspiracy. *Fourth,* a single action against all Defendants will promote the efficient resolution of this controversy. And *fifth,* states share an interest in protecting the companies organized under their laws.

The motion by Rieck to dismiss for lack of personal jurisdiction over him and for insufficient service of process will be denied. Dkt 32.

### b.  Jurisdiction over Helena Energy LLC

Helena Energy LLC is a Delaware LLC owned by Rieck. It was purportedly "founded as a natural gas marketing arm to Furie," but it has been "engaged in oil production in Southwest Texas" since 2016. Dkt 155 at ¶ 28. The Trustee contends that Helena shared executives, office staff, and office space with Furie. And it allegedly received gas from Furie, first through the now-defunct Rieck-controlled Aurora Gas LLC in 2016, and

then directly in 2017. Id at ¶¶ 94–95. The Trustee asserts a claim against Helena for unjust enrichment.

The Trustee argues that both general and specific jurisdiction exist over Helena. Dkt 86.

*As to general jurisdiction,* Helena contends that it doesn't exist because it was an Alaska LLC from its inception in March 2016 until it converted into a Delaware LLC in July 2020. Dkt 46-1 at 1. Helena doesn't indicate the location of its headquarters, but it does contend that it doesn't have any offices or employees in Texas. Dkt 46-1 at 2; see also Dkt 46 at 7.

Those facts would typically be enough to find general personal jurisdiction lacking over a corporate defendant. Indeed, the Supreme Court has explained that a "corporation's place of incorporation and its principal place of business" are the "'paradigm' forums in which a corporate defendant is 'at home.'" *BNSF Railway Co v Tyrrell*, 137 SCt 1549, 1558 (2017), citing *Daimler*, 571 US at 137 and *Goodyear*, 564 US at 924. But "in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" Ibid, citing *Daimler*, 571 US at 139 n 19. The "inquiry 'calls for an appraisal of a corporation's activities in their entirety.'" *BNSF*, 137 SCt at 1559, quoting *Daimler*, 571 US at 139 n 20.

The Trustee contends that the overwhelming majority—if not all—of Helena's business occurs in Texas. Dkt 86 at 12–15. Specifically, it asserts that Helena ended all operations in Alaska in 2020, and that its "website, promotional materials and representatives all tout Helena's connections to and its operations in Texas." Id at 13. As these allegations remain uncontroverted, they must be accepted as true. *Johnston*, 523 F3d at 609. Indeed, the absence of any reply brief by Helena as to this characterization is quite glaring.

Regardless of whether Texas is best characterized as Helena's principal place of business or as the place in which Helena's activities are "so substantial and of such a nature

9

as to render" it essentially "at home," the Trustee has established a *prima facie* case of general personal jurisdiction over Helena in Texas. See *BNSF*, 137 SCt at 1558.

*As to specific jurisdiction,* Helena contends that it also doesn't exist because the natural gas sold by Furie to Aurora and later directly to Helena was extracted and delivered in Alaska. And it notes that any obligation to pay Furie isn't enough to confer minimum contacts. Dkt 46 at 10, citing *Hydrokinetics Inc v Alaska Mechanical Inc*, 700 F2d 1026, 1029 (5th Cir 1983) (finding mere agreement to send payments to in-state individual doesn't confer personal jurisdiction).

But the Trustee brings a claim against Helena for unjust enrichment, *not* breach of contract. And regardless of whether that claim is better characterized as an independent cause of action for unjust enrichment (as argued by the Trustee) or as a quasi-contract claim (as urged by Helena), at least some of Helena's actions that give rise to the claim took place in Texas. Compare Dkt 46 at 11–18 with Dkt 86 at 18–20. For instance, Helena purportedly used Furie's League City office space and office staff without compensating Furie. Dkt 155 at ¶¶ 5 & 94. The companies also allegedly "shared multiple executives, including Bruce Webb and Mark Slaughter, who upon information and belief were principally compensated by Furie." Id at ¶¶ 90, 92, 203. Another shared officer, Bruce Ganer, resided and worked in Texas. Id at ¶¶ 25, 28, 94, 184. And these shared executives "knowingly coordinated" with Texas-based Furie executives "to unjustly take Furie's gas." Dkt 86 at 15; Dkt 155 at ¶¶ 90–95 & 204–05. Helena should therefore "have reasonably anticipated being haled into Texas court." *Trois*, 882 F3d at 490–91.

The Trustee has thus established minimum contacts between Helena and Texas. Helena for its part doesn't attempt to argue that asserting jurisdiction over it is unfair or unreasonable. See Dkt 46 at 10–11; *Sangha*, 882 F3d at 102. And it's not. The second through fifth factors discussed above as to Rieck pertain equally to Helena. And

10

as to the first, the burden on Helena to defend itself in Texas is minimal, as it has extensive business dealings throughout Texas. See Dkt 85 & accompanying exhibits.

The Trustee additionally contends that Helena is subject to "alter-ego jurisdiction" because Helena is functionally the alter ego of Rieck and other Defendants. Dkt 86 at 16. Such argument needn't be addressed, given that Helena is already determined to be subject to both general and specific jurisdiction in Texas.

The motion by Helena to dismiss for lack of personal jurisdiction over it will be denied. Dkt 46.

c.   Jurisdiction over David Hryck

David Hryck is a former engagement partner at Reed Smith LLP and a current resident of New York. Dkt 155 at ¶ 16. He was given power of attorney for Furie in early March 2016 to respond to IRS document requests. Dkt 118 at 12. He also served as trustee of a trust that owned a majority stake in Offshore Management Holdings LLC beginning in early 2016. Id at ¶ 84. That entity acted as the sole member and manager of Advanced Drilling Solutions LLC, a company purportedly established to siphon funds from Furie. Dkt 155 at ¶¶ 81 & 83–85. And Hryck allegedly "represented and performed work for" numerous other entities "owned and controlled by Rieck." Id at ¶¶ 35, 76, 81, 83–85. The Trustee asserts four claims against Hryck, including breach of fiduciary duty, actual fraudulent transfer, constructive fraudulent transfer, and civil conspiracy.

The Trustee makes no assertion that general personal jurisdiction exists over Hryck. And Hryck argues that specific personal jurisdiction doesn't exist because claims against him "arose in the absence of" his "contacts with Texas." Dkt 64 at 16. Specifically, he contends that "all alleged wrongdoing occurred electronically and outside of Texas; with no requirement for performance in Texas; and solely for the purpose of Furie's drilling operations outside of Texas." Ibid.

To the contrary, the Trustee alleges that Hryck began personally representing Furie in early 2016, further contending that during that time he helped Texas-based Furie executives hide disloyal transactions. For instance, Hryck served as the trustee of a trust that owned the majority of Offshore Management (whose principal place of business was League City), which Hryck knew was established solely to screen disloyal transactions between Advanced Drilling and Furie. Dkt 155 at ¶¶ 76, 81, 83–84. There's also an allegation that in May 2016 Hryck authorized Theodor van Stephoudt (an economist employed by Reed Smith and supervised by Hryck) to email a draft letter to the president and chief financial officer of Furie, both of whom worked at Furie's headquarters in League City; that the draft letter verified the independence of Advanced Drilling from Furie; and that Hryck knew that verification to be false. Id at ¶¶ 10–13, 23, 58, 85.

These presently uncontroverted allegations must be accepted as true for the purpose of this motion. *Johnston*, 523 F3d at 609. And they resemble those found to be sufficient by the Fifth Circuit in *Walk Haydel & Associates Inc v Coastal Power Production Company*, 517 F3d 235 (5th Cir 2008). A New York-based attorney there arranged a meeting in Louisiana between his Louisiana-based client and a third-party whom he also represented. The attorney failed to disclose that he represented the third-party. The Fifth Circuit found this omission in communications sent to the Louisiana client sufficient to subject the attorney to personal jurisdiction in Louisiana. Id at 245; see also *Streber v Hunter*, 221 F3d 701 (5th Cir 2000). Likewise, the Fifth Circuit in *Trois* held that a fraudulent statement given over the phone to an individual in Texas was enough to establish personal jurisdiction. 882 F3d at 487–88; see also *Lewis v Fresne*, 252 F3d 352 (5th Cir 2002).

Hryck similarly reached into Texas when he (allegedly) helped Texas-based Furie executives hide disloyal transactions related to the Texas LLC that Hryck purportedly represented. He also knowingly made at least one misrepresentation to Furie executives—sent by

12

electronic mail into Texas via van Stephoudt—in order to hide those transactions. And these actions form the basis of the claims against him.

The Trustee has thus established minimum contacts between Hryck and Texas for the purpose of specific personal jurisdiction. Beyond this, he can't establish that asserting jurisdiction over him is unfair or unreasonable. *Sangha*, 882 F3d at 102. Again, the second through fifth factors discussed above as to Rieck pertain equally to Hryck. And as to the first, the burden on Hryck to defend himself in Texas is minimal. He maintains numerous clients in Texas and traveled to Texas at least once during the acts in question. He also admits that he has "sporadically traveled to the State of Texas" to "meet with current or prospective clients." Dkt 118 at 32.

The motion by Hryck to dismiss for lack of personal jurisdiction over him will be denied. Dkt 64.

4.   Conclusion

The objections by Defendant Kay Rieck to evidence presented by Plaintiff Clingman & Hanger Management Associates LLC are OVERRULED, and his motion to dismiss for lack of personal jurisdiction and for insufficient service of process is DENIED. Dkts 32 & 80. He may re-urge his motion to dismiss for insufficient service of process at hearing on June 15, 2022, at 1:30 PM. See Dkt 154.

The motion by Defendant Helena energy to dismiss for lack of personal jurisdiction is DENIED. Dkt 46.

The motion by Defendant David Hryck to dismiss for lack of personal jurisdiction is DENIED. Dkt 64.

SO ORDERED.

Signed on June 13, 2022, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge

13