# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **CLINGMAN & HANGER MANAGEMENT ASSOCIATES, LLC, AS TRUSTEE OF THE FURIE LITIGATION TRUST,** | § § § | |
| *Plaintiff,* | § § | **NO. 4:21-CV-02698** |
| **v.** | § § | **Date:    May 17, 2023** |
| **KAY RIECK, et. al,** | § § § | |
| *Defendant.* | § § | |

## LUMMUS CONSULTANTS INTERNATIONAL LLC'S RESPONSE IN OPPOSITION TO DEFENDANT DAVID HRYCK'S MOTION TO COMPEL

C. Thomas Kruse
**Attorney-in-Charge**
State Bar No. 11742535
tom.kruse@arnoldporter.com
Tyler Sullivan
State Bar No. 24125860
tyler.sullivan@arnoldporter.com

Arnold & Porter Kaye Scholer
Telephone: 713.576.2400
Facsimile: 713.576.2499
700 Louisiana Street, Suite 4000
Houston, Texas 77002

*Attorneys for Lummus Consultants International LLC*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................ 1

   I.   Nature of the Dispute on the Motion to Compel: An Onerous Third-Party
Subpoena for Archived or Deleted Records with No Offer to Share Costs ................... 1

   II.   Nature of the Subpoena Issued Nine Months Ago to Lummus Consultants, A
Third-Party Consulting Firm ....................................................................................... 2

THE LEGAL STANDARD OF REVIEW ................................................................... 3

STATEMENT OF FACTS ........................................................................................... 4

   I.   The Factual Issues in Hryck's Unreasonable Demands for Lummus's Third Party
Documents ................................................................................................................... 4

SUMMARY OF ARGUMENT ..................................................................................... 8

ARGUMENT AND AUTHORITIES .......................................................................... 9

   I.   The Information Hryck's Subpoena Seeks Is Not Relevant. .................................... 9

   II.   Lummus Has Diligently Searched for Responsive Emails and Found None......... 12

      A.   Applicable Law and Lummus's Searches and Objections ................................ 12

      B.   Lummus Has Conducted a Diligent Search for Emails and Has No Obligation to
Search for Documents Outside Its Possession, Custody, or Control. ........................ 12

   III.   The Court Should Deny Hryck's Motion to Review the ECP Folder ............... 15

   IV.   The Court Should Not Overrule Lummus's Objections. .................................... 17

   V.   Hryck Should Be Required to Bear the Costs of the Undue Burden He Has
Imposed on Lummus. ................................................................................................. 18

CONCLUSION ........................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Dotson v. Edmonson*,
 No. 16-15371, 2017 WL 11535244 (E.D. La. Nov. 21, 2017) .....................................4

*In re Furie Operating Alaska, LLC, et al.*,
 No. 19-11781-LSS (Bankr. D. Del.) .................................................................. 1, 19

*Garza v. Universal Healthcare Servs., Inc.*,
 No. 2:16-CV-364, 2017 WL 11646817 (S.D. Tex. May 17, 2017)...........................18

*Leonard v. Martin*,
 38 F.4th 481 (5th Cir. 2022) ..........................................................................4

*In re Stewart Title Co.*,
 No. H-09-247, 2009 WL 1708079 (S.D. Tex. June 17, 2009) ..................................16

*In re Subpoenas to Plains All Am. Pipeline, L.P.*,
 No. 1:11-CV-03543-WHP, 2014 WL 204447 (S.D. Tex. Jan. 17, 2014) ...................3

*WesternGeco LLC v. Ion Geophysical Corp.*,
 No. CIV. A. H-09-1827, 2010 WL 2266524 (S.D. Tex. June 2, 2010).......................15

**Other Authorities**

Fed. R. Civ. P. 26.......................................................................................... 3, 16

Fed. R. Civ. P. 26(b)(1), b(3)(A-B), b(4)(C) ..................................................... 16

Fed. R. Civ. P. 45.........................................................................................*passim*

Fed. R. Civ. P. 45 (a)(1)(A)(iii)................................................................... 12, 17

Fed. R. Civ. P. 45(d)(1................................................................................4, 18, 19

ii

Pursuant to Federal Rules of Civil Procedure 26 and 45, Lummus Consultants International LLC ("Lummus") respectfully submits its response to Defendant David Hryck's ("Hryck") Motion to Compel ("Motion" or "Mot.") and would show as follows:

## INTRODUCTION

I. **Nature of the Dispute on the Motion to Compel: An Onerous Third-Party Subpoena for Archived or Deleted Records with No Offer to Share Costs**

Hryck's August 1, 2022, subpoena (the "Subpoena") seeks supporting documents from consulting work by Lummus Consultants International (a division of Lummus Technology) for Energy Capital Partners Management, L.P. ("ECP"). The majority of Lummus's consulting work for ECP was performed in 2014-16, which means the Subpoena targets records that are seven to nine years old. *Id.* The Subpoena also seeks any testimony/documents provided by Lummus in the 2019 Furie bankruptcy proceeding, at which Lummus was not a party. *Id.* at Request No. 6.

Lummus has been sold twice in the past seven to nine years, and as a result documents have been left behind at parent companies, deleted, or archived, making any recovery (if even possible) difficult and expensive. And Lummus had no involvement in the Furie bankruptcy proceeding: it was not a party and no one from Lummus testified or provided documents. The bankruptcy request appears to have been added on a pure hunch.

Lummus is not a party to the lawsuit; indeed, Lummus merely gave technical and environmental advice to a different third party (ECP). Hryck attempts to show that Lummus's *technical and environmental advice to ECP* somehow relates to his fiduciary duties as a lawyer at Reed Smith providing legal advice *to a different entity, Furie.* But the claim against Hryck is for breach of fiduciary duty, and Lummus's technical and

1

environmental work has no relevance—regarding causation or otherwise—to that claim. This Subpoena amounts to nothing more than a fishing expedition.

Nevertheless, Hryck now moves to compel, in a brief that exceeds this Court's word limit by more than 1,000 words.  C. ESKRIDGE COURT PROCEDURES 18(C) (motions limited to 5,000 words); Mot. at 24 (certifying that Motion contains 6,026 words).  The Court should deny Hryck's Motion.

## II.    Nature of the Subpoena Issued Nine Months Ago to Lummus Consultants, A Third-Party Consulting Firm

On August 1, 2022, Hryck served Lummus—a third party to this action—with a sweeping subpoena covering six broad categories of document requests.  From the start, Hryck has refused to negotiate in good faith.  Rather than abide by his obligation to minimize discovery burdens to third parties, Hryck has caused Lummus to incur substantial, unnecessary costs in responding to this Subpoena.  Hryck has never meaningfully narrowed his broad requests, and he has failed to explain, even now, what specific information he seeks from Lummus and how that information would be relevant to his defenses.

Nor has Hryck offered to cover any of Lummus's costs, despite Lummus's repeated requests, and even as Hryck made ever-increasing demands for documents and information, culminating in his latest unheard-of demand that Lummus turn over its entire project file and trust that Hryck will make fair and reasoned privileged determinations.

Meanwhile, Lummus has made good-faith inquiries to search for responsive information.  **Exhibit B** (Decl. of Oscar Sandoval) ¶¶ 7-9 (describing two rounds of

searches conducted at Hryck's counsel's request with no responsive documents found). Lummus acted in good faith, met all duties under Rule 45, and participated in multiple meet-and-confers with opposing counsel.  Lummus ran searches, located a project file and reported the size of the file to Hryck, and searched through bankruptcy proceedings to no avail.

Lummus has also offered to produce documents to ECP and requested information to help locate and produce responsive documents.  In response, Lummus has been met at every turn by a torrent of additional inquiries and demands.  Hryck's latest request for Lummus to simply hand over its project file is not a serious attempt at compromise, but it is indicative of Hryck's approach to this entire process: give Hryck everything or nothing (and, incidentally, pay for it all).

## THE LEGAL STANDARD OF REVIEW

Rule 45 provides third parties with several protections against costly and overbroad subpoenas.  Hryck's description of the applicable law governing third-party subpoenas omits critical distinctions between Rule 26 and Rule 45.  *See* Mot. at 11.  Though the breadth of third-party discovery incorporates Rule 26's notion of relevance, it "is mitigated by certain protections against disclosure found in Rule 45 governing the scope of subpoenas issued to litigation non-parties." *In re Subpoenas to Plains All Am. Pipeline, L.P.*, No. 1:11-CV-03543-WHP, 2014 WL 204447, at *3 (S.D. Tex. Jan. 17, 2014).  Indeed, Rule 45 affords third parties several meaningful protections against subpoenas.  On penalty of sanction, including lost earnings and attorney's fees, the party or attorney issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a

person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1.)  And courts "must be sensitive to the nonparty's compliance costs," *Leonard v. Martin*, 38 F.4th 481, 489 (5th Cir. 2022) by modifying or quashing a subpoena that subjects a person to undue burden.  *Id.* (citing Rule 45(d)(3)).  If costs are significant, "Rule 45 *requires* a district court to shift a nonparty's cost."  *Id.* at 490 n.8 (emphasis added).

Hryck's attempts to offload its burden onto Lummus therefore run squarely contrary to the decisions of this court and the straightforward requirements of Rule 45.  *See* Mot. at 11.  The authority Hryck cites, an Eastern District of Louisiana case, fails to reckon with Rule 45's requirements, and itself relies on authority *that did not involve Rule 45 whatsoever.  See Dotson v. Edmonson*, No. 16-15371, 2017 WL 11535244, at *2 (E.D. La. Nov. 21, 2017) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 469 (N.D. Tex. 2005), involving a discovery dispute between the parties).

The Court must therefore evaluate this Motion, the underlying Subpoena and Hryck's and his counsel's conduct in pursuing it, in light of the protections to third parties that Rule 45 mandates and Lummus's multiple searches resulting in no responsive documents.

## STATEMENT OF FACTS

### I.  The Factual Issues in Hryck's Unreasonable Demands for Lummus's Third Party Documents

On August 1, 2022, Defendants David Hryck and Theodore van Stephoudt served Lummus with a subpoena.  The Subpoena sought a wide variety of documents and

communications related to this lawsuit, including all documents and communications relating to Furie. **Ex. A** at Request No. 3.

After receiving the Subpoena, counsel for Lummus spoke with counsel for Hryck, who was unable to provide any clarification regarding which specific documents Hryck sought through the Subpoena. **Exhibit C** (Aug. 9, 2022-Sept. 26, 2022 Emails between Counsel for Lummus and Hryck) at 1. Counsel for Lummus met and conferred with Hryck's counsel, several times. Lummus conducted an initial round of searches for responsive documents, but found 4,331 documents, including irrelevant documents and potentially sensitive employee information such as W-9s. **Exhibit B ¶** 7. Lummus reported to Hryck's counsel that it was finding numerous irrelevant documents and requested additional information to narrow its searches. **Ex. C** at 2, 5. At Hryck's counsel's request, Lummus also ran searches in the Furie bankruptcy proceeding, because Hryck's counsel had stated that they believed Lummus had participated in the proceeding by providing documents or expert testimony. Lummus found no such documents.

Hryck's counsel then suggested that Lummus narrow its search to two custodians, Keith Darby ("Darby") and Kraisak Suaysompol ("Suaysompol"), and suggested a set of search terms. Lummus conducted this second round of searches, using Hryck's custodians and the following search terms: "Furie," "Cornucopia," "Randolph Yost," "Kitchen," and "ECP." **Ex. B ¶** 8. Lummus found zero responsive documents for Suaysompol, and found 12 irrelevant documents (some of which were personal, such as Darby's COVID test result) for Darby. *Id.* ¶ 9.

On September 23, Hryck's counsel requested information regarding the results of the second search, and noted that "we cannot, at this time, commit to cover any search/review costs." *Id.* at 4. Lummus responded describing the results of the search, and noted that Rule 45's cost-sharing provision applies where a nonparty is subject to undue burden and expense. *Id.* at 3-4.

Lummus's correspondence was met with a hostile and uncooperative response, in which Hryck's counsel claimed that they had already explained "what we were looking for, why, and its relevance to the claims against our clients," and falsely asserted that Hryck had already specifically requested a June 2014 report, a 2015 analysis regarding Randolph Yost, and any documents pertaining to "operational and budgetary issues." *Id.* at 2-3. Counsel also asserted numerous antagonistic challenges and questions regarding the email search results Lummus had reported. *Id.*

In response, Lummus noted that counsel for Hryck initially were unable to describe specific documents, and objected that the specific requests list had ever been mentioned before. *Id.* at 1. Lummus once again noted that it was incurring substantial costs in trying to comply with this Subpoena, and that Hryck had still not offered to bear *any* costs. *Id.* Counsel for Hryck stated that she would call Lummus's counsel (but did not), and Lummus served its Objections and Reponses to the Subpoena on October 5, 2022. *Id.*; **Exhibit D** (Lummus's Objections and Responses to Subpoena (Oct. 5, 2022)). The parties then conferred again, and Hryck requested the same three documents or categories of documents from the September 26, 2022 email, and again asked an extensive series of questions

regarding Lummus's collections, systems, document preservation, and archive and storage procedures.  **Exhibit E** (2022-10-14 Letter from A. Najam to T. Sullivan).

On October 31, counsel for Lummus responded to Hryck's letter, noting that Hryck had failed to reckon with Lummus's objections based on cost, burdens, or scope.  Lummus also reiterated that the multiple changes in ownership would make locating legacy documents highly costly.  **Exhibit F** (2022-10-31 T. Sullivan Letter to A. Najam). Nevertheless, Lummus offered a June 2014 document that Hryck had requested.  *Id.* Additionally, Lummus sought clarification on Hryck's two other specific requests. In response to the second request, it reported that "We are having difficulty locating a 2015 analysis.  Please clarify what we should be looking for—are you aware of any particular analysis or type of analysis you believe we did?"  *Id.*  In response to Hryck's third request, Lummus requested that Hryck narrow his request beyond "analysis or discussion of Furie's operational and budgetary issues."  *Id.*

Counsel for Hryck did not respond and did not resume negotiations for more than three months.  On February 10, counsel for Hryck and Lummus met and conferred, and counsel for Lummus agreed to discuss a potential cost estimate for reviewing the project folder it had located with documents from its work with ECP (the "ECP folder").  Hryck's counsel once again asked about email searches, and Lummus repeated that it had run the searches requested. **Exhibit G** (Feb. 10, 2023-Feb. 20, 2023 Emails between Counsel for Lummus and Hryck) at 2-3.  Hryck's counsel continued to reject any request to share costs. *Id.*

After discussions with Lummus, Lummus's counsel reported that the Subpoena imposed high costs of compliance on Lummus.  **Exhibit H** (Feb. 2, 2023-April 10, 2023 Emails between Counsel for Lummus and Hryck), at 1-2.  Counsel noted that Lummus had "consulted in detail with the IT department," and that locating responsive documents would difficult if not impossible due to changes in ownership in recent years.  Lummus concluded by saying that "we think that any ECP documents would be (1) on Lummus' servers/email system, OR (2) in the ECP Project Folder; OR (3) at a previous parent company."  *Id.*  Lummus expressed that any documents at previous parent companies would fall outside Lummus's possession, custody or control.  *Id.*

Counsel for Hryck responded by requesting that Lummus turn over the entire ECP folder.  *Id.* at 1.  Lummus rejected this request, and Hryck moved to compel.

## SUMMARY OF ARGUMENT

The Court should reject Hryck's Motion to Compel because the Subpoena seeks documents that are not relevant to the claims against Hryck in this case.  The technical/environmental advice that Lummus provided ECP has nothing to do with the legal, fiduciary duties that Defendant Hryck owed to Furie.  The services that Lummus provided were technical/environmental consulting services, not legal services, and such services were provided to ECP, not Furie.  Moreover, evidence in Hryck's Motion demonstrates that Lummus's relationship with ECP is not relevant to his defenses in this case.

Even supposing Lummus's advice to ECP were relevant, Lummus has conducted a diligent search for responsive emails and found none.  Moreover, Lummus has provided a

meaningful explanation to Hryck as to why responsive emails, if they exist, are likely found elsewhere, at Lummus's previous parent companies.  Given that Lummus is now an independent entity from those companies, it has no obligation to search for or produce documents its previous owners possess, as those fall outside its possession, custody, or control.

Further, the Court should deny Hryck's Motion to compel the ECP folder.  Hryck has steadfastly refused to share any costs in Lummus's review of the folder, and Lummus has provided more than adequate detail to inform Hryck of the time and expense required to review the folder.

The Court should also not overrule Lummus's formal objections to Hryck's Subpoena, which are tailored to Hryck's requests, and which cannot be overcome by mere reference to the existence of a protective order.

Finally, the Court should hold require Hryck to cover the costs associated with this Subpoena.  Hryck and his counsel have been uncooperative, overaggressive, and unreasonable, and they have refused to share in what has become a costly litigation endeavor.  Rule 45 expressly envisions cost-shifting in situation such as these.

## ARGUMENT AND AUTHORITIES

### I.    The Information Hryck's Subpoena Seeks Is Not Relevant.

Though Lummus has inquired several times, Hryck has repeatedly failed to explain how or why the information sought in his Subpoena is relevant.  Even now, Hryck's explanation falls well short.  The reason for this is clear: the technical and environmental advice Lummus gave *to ECP* is not relevant to Hryck's breach of the *legal* fiduciary

obligations it owed *to Furie*.  ECP hired Lummus, not Furie.  Any technical/environmental, advice Lummus gave ECP regarding, for example, the Randolph Yost rig or a draft contract with Nordic, has nothing to do with any legal counsel Hryck gave a different entity, Furie, on those same topics.

Hryck's attempt to connect his defenses to Lummus's work relies on a tenuous and speculative theory of duty and causation that should be rejected.  Hryck contends that documents in Lummus's possession are relevant to his defense that he had no duty to advise Furie to make "certain disclosures" to ECP because those documents might reveal that ECP already had the information at issue.  Mot. at 13-14.  Putting aside whether this defense accurately states Hryck's fiduciary duty, the argument remains entirely speculative. Hryck's Motion provides no basis for his apparent certainty that "missing communications with Lummus" contain the precise information that Furie should have disclosed to ECP. *See* Mot. at 13.  Hryck does not even clarify whether his claim is that ECP independently (without being informed by Furie) had knowledge of the missing information that it then communicated to Lummus, or that Lummus somehow acquired and communicated the missing information to ECP through its occasional reports to ECP.  *Id.* at 13-14.  Without even an attempted explanation for Hryck's assertion, the Court should reject his requests to Lummus as irrelevant.

Additionally, the evidence suggests that Lummus would *not* have the information that Furie failed to disclose to ECP because Lummus received its information from ECP. By all appearances, ECP and Lummus's communications involved ECP providing Lummus with relevant documentation from its dealings with Furie that Lummus would

then evaluate.  *See id.* at 13 (describing Lummus's review of a draft contract between Furie and Nordic and Lummus's "sign-off" on Furie-related AFE's).  Indeed, Hryck's own evidence reveals that Lummus was not familiar with Nordic, one of the entities about which Hryck and Furie failed to make "certain disclosures." *Id.* at Ex. 7.  Given Lummus's lack of familiarity with the Furie-related entities, even speculation that Lummus provided critical missing information is improper because Hryck's theory is contradicted by his own evidence.

Hryck's second argument regarding causation fares no better, as it relies on the exact same theory, and merely asserts with no justification whatsoever that "[t]he documents being withheld by Lummus are likely to disprove this causation" by showing that ECP had the precise information Furie withheld.  *Id.* at 14.

Finally, even assuming that this category of documents is relevant, the far-reaching scope of his document requests extends well beyond this notion of relevance.  The requests do not simply seek documents showing that ECP already had information that Furie failed to disclose to it on certain topics, but instead seek "ALL DOCUMENTS AND COMMUNICATIONS" on a variety of ultrabroad topics.  For example, Request 2 seeks documents related to Lummus's fees paid by Furie, and Request 5 requests communications with ECP along with Plaintiff, Kososki, Pinsonnault, Ankura, or PRA, none of which pertain to ECP's knowledge.

Because Hryck's requests seek irrelevant information, the Court should deny his Motion.

## II.     Lummus Has Diligently Searched for Responsive Emails and Found None.

### A.     Applicable Law and Lummus's Searches and Objections

Hryck asserts that "It is unclear whether Lummus's position is (a) that responsive emails are outside of its possession, custody, and control, or (b) not reasonably accessible without undue burden." Mot. at 15.  To remove any doubt, Lummus states once again that it has searched all emails within its possession, custody, or control using custodians and search terms previously described and has found no responsive documents.  **Ex. B** ¶¶ 8, 9; **Ex. G** at 2-3.  In its discussions with Hryck's counsel, Lummus has explained that this result may be due to Lummus having been sold multiple times since the events of this lawsuit.  If responsive documents exist but reside with a previous parent entity, Lummus has no obligations whatsoever with respect to those documents because they would be outside Lummus's possession, custody, or control.  Fed. R. Civ. P. 45 (a)(1)(A)(iii).

Lummus does not argue that responsive emails exist within its possession, custody, or control but are not reasonably accessible.  *See* Mot. § II.2 (arguing that if Lummus's claim is that responsive emails exist but are not reasonably accessible "good cause" exists to require production—Lummus does not make this claim).  For that reason, Lummus need not address Hryck's argument regarding reasonable accessibility, and Hryck's analysis regarding "good cause" does not apply.

### B.     Lummus Has Conducted a Diligent Search for Emails and Has No Obligation to Search for Documents Outside Its Possession, Custody, or Control.

Using search terms and custodians suggested by Hryck, Lummus located no responsive emails.  Dissatisfied with that result, Hryck offers an argument riddled with

12

contradictions to argue that Lummus has not shown that responsive emails are outside its possession, custody, or control.  Mot. at 17.  Hryck claims that Lummus "has not explained whose servers" it searched, despite quoting Lummus's report that it had searched "our servers" in the previous sentence.  Hryck claims that Lummus has not explained "where" responsive emails might be, despite quoting from Lummus's correspondence identifying locations for the universe of responsive documents.  *Id.* at 17-18.  Hryck complains that Hryck "finally clarified—after seven months—that responsive emails must be on a different (un-named) company's server," despite the fact that after Lummus's October 31 letter, Hryck's counsel went silent for more than three months, and despite the fact that the correspondence Hryck cites contains the names of Lummus's previous ownership (CB&I and McDermott) who may have responsive documents.  *Id.* Hryck even appears to be dissatisfied that Lummus offered additional clarity to its previous responses, a position in tension with its unceasing demands for additional detail.  *Id.* at 18.

Somehow, from all this, Hryck concludes that "Lummus has yet to report *exactly where* the responsive documents are."  *Id.*  To be clear, Hryck does not cite—because no such authority exists—any authority requiring Lummus to identify the precise location of documents outside its possession, custody, or control.  Through extensive consultation with its IT Department, Lummus has identified all locations where it believes responsive documents could be.  Its obligations end there.

Moreover, Hryck's argument about Lummus's ownership history is a red herring that misstates Lummus's objection and the significance of Lummus's changes in ownership.   The relevant relationship is not the one between Lummus and Lummus

Technology (Lummus Consultants Inc. is a service offered by Lummus Technology, not a subsidiary), but the relationships between Lummus and CB&I/McDermott.  Hryck claims that "It remains unclear how this acquisition by McDermott of Lummus's ultimate parent (CB&I)—several tiers up—would have removed responsive documents from Lummus's possession, custody, or control …." Mot. at 18.  But this is not unclear, as Lummus has already explained this result: "Lummus has previously been a part of other companies and was sold twice.  Both times the information/documents/etc. were transferred, though the two parent companies had different protocols for retention of documents and what they would permit to be transferred to a subsidiary or to a company becoming an independent entity.  When Lummus became a separate entity, we collected and brought with us what we could." **Ex. H** at 1-2.

And beyond the parent company protocols for transferring documents, technological changes over the years prevented 100% retention of emails.  For example, Lummus used Lotus Notes as its email program until 2020, when it switched to Outlook in connection with its purchase by McDermott, and emails from Lotus Notes were not retained in the transition.  Ex. B ¶¶ 5, 6.

The changes in ownership and email protocols accounts for why Lummus would not have the emails Hryck seeks.  These changes occurred after or at the tail end of the Subpoena's timeframe.  CB&I purchased Lummus in 2007, but McDermott purchased Lummus in 2018, and Lummus was then sold again to Rhone Capital and the Chatterjee Group in 2020. Mot. at 18-19.

If CB&I or McDermott possess responsive emails, those exist outside of Lummus's possession, custody, or control.  Hryck's own authority recognizes this fact.  *See* Mot. at 15 ("Particular concerns arise when an entity responding to discovery is related to another entity that actually possesses the responding materials.") (quoting WRIGHT & MILLER). This court has been even less equivocal—even when a nonparty has "access to documents in the possession of its *affiliates*" (a closer relationship than Lummus has to CB&I/ McDermott), "this is insufficient to establish possession, custody, or control as required under the Federal Rules." *WesternGeco LLC v. Ion Geophysical Corp.*, No. CIV. A. H-09-1827, 2010 WL 2266524, at *2 (S.D. Tex. June 2, 2010) (emphasis added).

## III.    The Court Should Deny Hryck's Motion to Review the ECP Folder

Lummus should not be compelled to review the ECP folder.  Hryck has refused to cover any of Lummus's costs throughout this entire process. At this point, Lummus has already incurred extraordinary costs in responding to a third-party subpoena, and Hryck has taken no steps to minimize Lummus's burden, let alone cover any costs.  Lummus therefore reasonably resists providing a detailed catalogue of documents, contained in a large folder from a previous project, whose organization is not clear, all for a party who has shown no willingness to assist with costs.  Regardless, Lummus *has* provided information regarding the ECP folder's size: the folder contains 163 documents or zip files totaling 490 Gigabytes of data.  By standard measures, 490 Gigabytes of data could consist of 31,743,180 pages in Microsoft Word, 49,004,410 pages in Microsoft Outlook, 81,237,590 pages in Microsoft Excel, 145,685,330 pages in Lotus Files, 8,600,480 pages in Microsoft PowerPoint, 332,201,870 pages in text files, or 7,583,730 pages in images.

15

*See* LEXISNEXIS, DISCOVERY SERIES FACT SHEET, HOW MANY PAGES IN A GIGABYTE?
(2007) https://www.lexisnexis.com/applieddiscovery/lawlibrary/whitepapers/adi_fs_page
sinagigabyte.pdf.  This information should more than suffice for Hryck to grasp Lummus's
burden in reviewing the folder and to determine whether he can share the costs of review.

Hryck attempts to dismiss this concern by commenting that "Lummus should be
compelled to review this belatedly discovered folder for responsive documents, at its own
cost" because "Hryck should not have to bear the cost of Lummus's corporate document-
preservation choices." Mot. at 21.  (Nothing about this discovery is "belated," as Lummus
has diligently searched for this folder and provided Hryck's counsel with updates).  And
Hryck cites zero legal authority for the proposition (or for any proposition in this section)
that his duty to minimize costs does not apply when it is difficult to discern the organization
of a large project file. After having refused to minimize costs on Lummus and having
received information regarding the scope and burden of review, Hryck can decide whether
he wants to finally offer to share costs.

Moreover, Hryck's "compromise" position is hardly that.  Hryck's alternative
suggestion that Lummus be compelled to produce the folder in its entirety to Hryck,
without review, is unprecedented and unwarranted.  It would require Lummus's counsel to
defect on their obligation to ensure their client's privileged, trade-secret, and other
proprietary information is not disclosed, information which Rules 26 and 45 expressly
protect.  Fed. R. Civ. P. 26(b)(1), b(3)(A-B), b(4)(C); 45(d)(3)(B)(1).  This Court has
rejected suggestions such as these previously. *In re Stewart Title Co.*, No. H-09-247, 2009
WL 1708079, at *2 (S.D. Tex. June 17, 2009) ("[T]he Court is concerned that Stewart Title

is a non-party who would be entrusting the confidentiality of its documents to parties who do not represent its interests. Such concern, although perhaps not dispositive on its own, lend weight to the arguments for quashing discovery."). !

Moreover, Hryck had numerous other less onerous options available. He could have offered to pay for three hours of review by Lummus to summarize the folder's contents, to see how much progress could be made. But he did not, and the Court should deny Hryck's alternative suggestion.

## IV.     The Court Should Not Overrule Lummus's Objections.

Hryck mischaracterizes Lummus's objections as boilerplate, and the Court should sustain these objections. Mot. at 21-22. Hryck's requests contained remarkably broad language, and Hryck's objections were specifically tailored to the language of each request. **Ex. D.** By way of example, Lummus objected that Hryck's Request No. 1 for "ALL DOCUMENTS AND COMMUNICATIONS RELATING TO YOUR retention by FURIE, CORNUCOPIA, OR ECP" failed to specifically designate documents as required by seeking "ALL" documents and communications (broadly defined), rather than specific documents and communications. Fed. R. Civ. P. 45(a)(1)(A)(iii).

Additionally, Hryck's argument constitutes yet another instance where he has failed to articulate what documents he seeks. In other words, it is again unclear whether Hryck stands by the broad language of the Subpoena (except for the date range), or whether Hryck only seeks documents related to his search terms and his narrowly defined account of relevance espoused in his Motion. Hryck appears to defend the scope of his requests, arguing that "each document request is clear and unambiguous," even though he has

17

simultaneously defended the reasonableness of his negotiations by pointing to narrowed custodians and search terms.  Mot. at 21.

Lastly, Hryck's reliance on the protective order is misplaced.  Rule 45 "provides that a court must quash or modify a subpoena, including a subpoena duces tecum, if it 'requires disclosure of privileged or other protected matter, if no exception or waiver applies.'" *Garza v. Universal Healthcare Servs., Inc.*, No. 2:16-CV-364, 2017 WL 11646817, at *4 (S.D. Tex. May 17, 2017).  The proper remedy, therefore, is to quash or modify the Subpoena, not require production subject to the protective order.

The Court should not overrule Lummus's objections.  !

## V.    Hryck Should Be Required to Bear the Costs of the Undue Burden He Has Imposed on Lummus.

Rather than take reasonable steps to avoid imposing undue burden or expense on Lummus, Hryck has done the opposite.  Fed. R. Civ. P. 45(d)(1).  As demonstrated, Hryck has persistently pursued an irrelevant Subpoena, has refused Lummus's good-faith efforts at cooperation, has adopted an unyielding approach to a third party, and—despite all the time and resources Lummus has expended—has refused to bear any of the costs.

Hryck has rejected numerous attempts at cooperation, a fact which goes unaddressed in Hryck's Motion.  First, even though it believed it had no role in the underlying bankruptcy proceedings giving rise to this litigation, Lummus conducted a search of the bankruptcy docket because counsel for Hryck believed that Lummus may have provided documents or expert testimony.  That belief was wrong.  Lummus found only one document mentioning its name in the bankruptcy proceedings: a "creditor matrix,"

submitted by Debtors. *In re Furie Operating Alaska, LLC, et al.*, No. 19-11781-LSS (Bankr. D. Del.) (Doc 1-1). Lummus's near total absence from the bankruptcy docket provides even further reason to believe Lummus has no role in this lawsuit. Second, Lummus offered to produce the final version of a June 2014 report for ECP regarding Furie, a report that Hryck's counsel specifically requested. **Exs. E, F**. Third, Lummus also sought additional clarification regarding the "2015 analysis regarding the Randolph Yost Rig," after not locating any documents matching that description, clarification which Hryck's counsel never provided. **Ex. F** Fourth, Lummus asked for additional clarification regarding Hryck's request for "analysis or discussion of Furie's operational and budgetary issues." *Id.* Lummus received no clarification. . Lummus has made every reasonable effort to comply with Hryck's Subpoena but has been consistently rebuffed.

In situations such as these, where Hryck has breached his obligations to minimize cost on Lummus, the Court "must enforce this duty and impose an appropriate sanction." Fed. R. Civ. P. 45(d)(1).

## CONCLUSION

Lummus respectfully requests that this Court deny Hryck's Motion, uphold Lummus's objections to the Subpoena, compel Hryck to cover Lummus's costs, and any such relief to which it is justly entitled.

Dated: May 17, 2023

Respectfully submitted,

By: */s/ C. Thomas Kruse*
C. Thomas Kruse
**Attorney-in-Charge**
State Bar No. 11742535
tom.kruse@arnoldporter.com
Tyler Sullivan
State Bar No. 24125860
tyler.sullivan@arnoldporter.com
Telephone: 713.576.2400
Facsimile: 713.576.2499
700 Louisiana Street, Suite 4000
Houston, Texas 77002

*Attorneys for Lummus Consultants*
*International LLC*

**CERTIFICATE OF WORD COUNT**

Under paragraph 18(c) of this Court's procedures, I hereby certify that this Motion contains 4,931 words according to the word count provided by the software used to prepare the document, excluding the case caption, table of contents, table of authorities, signature block, and certificates.

*/s/ C. Thomas Kruse*
C. Thomas Kruse


**CERTIFICATE OF SERVICE**

I certify that on May 17, 2023, a true and correct copy of the foregoing document was served on all counsel of record by using the Court's electronic filing system and was served on Hryck's counsel.

*/s/ C. Thomas Kruse*
C. Thomas Kruse