**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CLINGMAN & HANGER** | § | |
| **MANAGEMENT ASSOCIATES,** | § | |
| **LLC, AS TRUSTEE OF THE FURIE** | § | |
| **LITIGATION TRUST,** | § | **Civil Action No. 4:21-cv-02698** |
| | § | |
| *Plaintiff,* | § | **Judge Charles Eskridge** |
| | § | |
| **v.** | § | |
| | § | |
| **KAY RIECK, ET AL.,** | § | |
| | § | |
| *Defendants.* | § | |

---

**DEFENDANTS HRYCK, VAN STEPHOUDT, REED SMITH, LLP,**
**AND NUNES'S OPPOSITION TO**
**PLAINTIFF'S MOTION FOR LEAVE TO FILE**
**SECOND AMENDED COMPLAINT**

---

# TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES**...............................................................................................ii

**INTRODUCTION** ............................................................................................................ 1

I.    BAD FAITH .............................................................................................................. 2

II.    FUTILITY ................................................................................................................. 5

    A.    Sixteenth and Seventeenth Causes of Action (Pled Against All Moving Defendants)........................................................................................................ 6

        1.    Plaintiff Does Not State A Claim for Fraudulent Transfer from the Cornucopia Estate. ..................................................................................... 7

            a.    The Proposed SAC Does Not Allege that Cornucopia Had a Legal or Equitable Interest in Furie Account 6064. ..................................... 8

            b.    The Bankruptcy Estates of Cornucopia and Furie Are Separate. ................. 9

            c.    The Proposed SAC Does Not Otherwise Sufficiently Plead that the Moving Defendants Received Funds Belonging to Cornucopia. ................ 11

        2.    The Claims Are Time-Barred........................................................................ 13

    B.    Thirteenth and Fourteen Causes of Action (Pled Against Nunes) ...................... 16

**CONCLUSION** ............................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Am. Hous. Found.*,
543 B.R. 245 (Bankr. N.D. Tex. 2015) ..................................................................... 16

*In re Am. Hous. Found.*,
785 F.3d 143 (5th Cir. 2015) ..................................................................................... 9

*In re Arturo Rodriguez*,
278 B.R. 749 (Bankr. N.D. Tex. 2002) ...................................................................... 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................. 12

*In re Bradley*,
501 F.3d 421 (5th Cir. 2007) ................................................................................... 11

*Briggs v. Mississippi*,
331 F.3d 499 (5th Cir. 2003), *cert. denied*,
540 U.S. 1108 (2004) ................................................................................................. 5

*Burnsed Oil Co. Inc. v. Grynberg*,
320 F. App'x 222 (5th Cir. 2009) .............................................................................. 4

*Butner v. United States*,
440 U.S. 48 (1979) ..................................................................................................... 9

*Coral Petroleum, Inc. v. Banque Paribas-London*,
797 F.2d 1351 (5th Cir. 1986) ................................................................................... 9

*Foman v. Davis*,
371 U.S. 178 (1962) ................................................................................................... 1

*In re Heartland Payment Sys., Inc.*,
No. H-10-171, 2012 WL 896256 (S.D. Tex. Mar. 14, 2012) ....................................... 3

*In re IFS Fin. Corp.*,
669 F.3d 255 (5th Cir. 2012) ..................................................................................... 9

*Janvey v. Proskauer Rose LLP*,
No. 3:13-CV-477-N-BG, 2017 WL 11499756 (N.D. Tex. June 19, 2017) ....................................................................................................................... 11

*In re Licking River Mining, LLC*,
  565 B.R. 794 (Bankr. E.D. Ky. 2017) ........................................................ 12

*Micron Tech., Inc. v. Rambus, Inc.*,
  645 F.3d 1311 (Fed. Cir. 2011) ................................................................... 5

*Nathan v. Whittington*,
  408 S.W.3d 870 (Tex. 2013) ...................................................................... 16

*New Orleans Ass'n of Cemetery Tour Guides & Cos. v. New Orleans*
  *Archdiocesan Cemeteries*,
  56 F.4th 1026 (5th Cir. 2023) ...................................................................... 1

*In re Opus E., LLC*,
  528 B.R. 30 (Bankr. D. Del. 2015), *aff'd*, No. 15-346-RGA,
  2016 WL 1298965 (D. Del. Mar. 31, 2016), *aff'd*,
  698 Fed. Appx. 711 (3d Cir. 2017) ............................................................ 11

*Quantlab Techs. Ltd. (BGI) v. Godlevsky*,
  No. 4:09-cv-4039, 2014 WL 651944 (S.D. Tex. Feb. 19, 2014) ................... 5

*Schirle v. Sokudo USA, L.L.C.*,
  484 F. App'x 893 (5th Cir. 2012) ............................................................... 17

*Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
  594 B.R. 167 (Bankr. S.D.N.Y. 2018) ....................................................... 15

*Matter of Steury*,
  94 BR 553 (Bankr. N.D. Ind. 1988) ........................................................... 10

*Sw. Bank & Tr. Co. v. Calmark Asset Mgmt., Inc.*,
  694 S.W.2d 199 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) ....................... 8

*In re Tex. E&P Operating, Inc.*,
  No. 17-34386-SGJ-7, 2023 WL 3012268 (Bankr. N.D. Tex. Apr. 19,
  2023) ......................................................................................................... 16

*In re Uplift RX, LLC*,
  625 B.R. 364 (Bankr. S.D. Tex. 2021) ................................................. 15, 17

*U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*,
  336 F.3d 375 (5th Cir. 2003) ....................................................................... 1

## Statutes

11 U.S.C. § 301(b) ...................................................................................... 13

11 U.S.C. § 541(a)(1) ............................................................................................. 8

11 U.S.C. § 544(b) .................................................................................................. 9

11 U.S.C. § 546(a)(1) ........................................................................................... 13

11 U.S.C. § 546(a)(2) ....................................................................................... 6, 13

11 U.S.C. § 548 ...................................................................................................... 7

11 U.S.C. § 548(a)(1) ........................................................................... 7, 13, 14, 16

TEX. BUS. & COM. CODE § 24.010 ..................................................................... 16

TEX. BUS. & COM. CODE § 24.010(a)(1) ...................................................... 15, 16

TEX. BUS. & COM. CODE § 24.010(a)(2) ...................................................... 15, 16

**Other Authorities**

FED. R. CIV. P. 15 ................................................................................................ 1, 5

FED. R. CIV. P. 15(c) ...................................................................................... 14, 15

COURT PROCEDURES FOR HON. CHARLES R. ESKRIDGE ¶ 17 ............................. 3

**INTRODUCTION**

This Opposition to Plaintiff's Motion for Leave to File the proposed Second Amended Complaint ("Motion for Leave") is filed jointly on behalf of the following defendants: David Hryck ("Hryck"), Theodor van Stephoudt ("van Stephoudt"), Reed Smith LLP ("Reed Smith"), and Michael Anthony Nunes ("Nunes") (collectively, the "Moving Defendants").

The Moving Defendants recognize that the standard for granting leave to amend is liberal. *See* FED. R. CIV. P. 15. But it is not limitless. Leave to amend may be denied in at least five circumstances: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also, e.g.*, *New Orleans Ass'n of Cemetery Tour Guides & Cos. v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026, 1034 (5th Cir. 2023) (similar); *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 386 (5th Cir. 2003) (same).

Here, the Moving Defendants focus on two elements: bad faith and futility. As for the former, the Trustee had a full 45 days to determine whether, and to what extent, it could in good faith replead its fraudulent transfer claims specific to transfers from Cornucopia Oil and Gas, LLC ("Cornucopia")—as opposed to Furie Operating Alaska, LLC ("Furie"). First, the Trustee waited until the eleventh hour to present its proposed Second Amended Complaint ("Proposed SAC") to Defendants and refused to provide a version showing the changes—prohibiting any meaningful, timely conference. Second, the version of the

proposed complaint the Trustee filed with the Court contains *more* claims and allegations than the one that had been circulated to counsel mere hours earlier—evidencing no good faith basis to assert them. Third, the Trustee did not even try to purge from its complaint any of the dismissed claims or their supporting allegations—deciding instead to simply sprinkle in new allegations to obfuscate the lines between two separate corporate entities, Cornucopia and Furie. The Motion for Leave should thus be denied as not having been brought in good faith.

Separately, the proposed amendment would be futile. The "new" causes of action against the Moving Defendants for receiving transfers out of a *Furie*-owned bank account—simply because Cornucopia, at unknown times, transferred unknown sums to that same account—cannot survive dismissal. This is because, first, on the facts pled by the Trustee, the alleged payments to the Moving Defendants do not qualify as fraudulent transfers from the *Cornucopia* estate, and, second, these claims are time-barred. Finally, the additional "new" causes of action asserted against Nunes are also time-barred.

## I.    BAD FAITH

Soon after the Motion for Leave was filed, Stone Pigman filed a certificate setting out the Trustee's failure to comply with this Court's rules regarding conferring before filing its Motion for Leave. Doc. 234. As Stone Pigman related, the Trustee's counsel sent an email to all Defendants at 4:35 p.m. on the very last day an amendment could be sought (May 15, 2023), attaching a Proposed SAC and asking all defendants whether they opposed leave to amend. Defendants immediately requested a redline against the First Amended Complaint, but the Trustee did not respond. The Motion for Leave with the proposed

2

amended complaint was filed at 11:57 p.m. that same day, hardly the "serious, timely, good faith efforts to seek agreement on all disputed matters" required by this Court's Rule 17. Little did we know that the eleventh-hour email disguised a bait and switch that precluded any real conference at all.

The Trustee did not make it easy to see any changes in the proposed new complaint. For one thing, the Trustee refused to provide a redlined version of the 70-page new complaint. For another, the Trustee insisted on repeating *all* of the original allegations and causes of action—even the ones dismissed with prejudice by this Court. Not one cause of action, factual allegation, or legal allegation was deleted. Repleading the dismissed claims served no purpose other than obfuscation. *Cf. In re Heartland Payment Sys., Inc*., No. H-10-171, 2012 WL 896256, at *3–4 (S.D. Tex. Mar. 14, 2012) (repleading dismissed claims not required to preserve right to appeal).

The Moving Defendants therefore assumed the as-filed Proposed SAC was identical to the one sent "earlier" (at 4:35 p.m.) by the Trustee's counsel for our review. Not so. The first version sought to add new claims for fraudulent transfers allegedly involving Cornucopia—including the so-called Sixteenth Cause of Action and Seventeenth Cause of Action—against six defendants (Hord, Elder, Nunes, Ganer, Sierra Pine Resources, and Stone Pigman). At some time between 4:35 p.m. and 11:57 p.m., the allegations in those two new causes of action changed substantially, and three additional defendants were added to the as-filed version (namely, Reed Smith, Hryck, and van Stephoudt (collectively, the "Reed Smith Defendants")). *Compare* Ex. 1 (Proposed SAC transmitted with 4:35 p.m.

3

email) ¶¶ 271–86, *with* Doc. 229-1 (Proposed SAC) ¶¶ 271–301.[1]  As to Defendant van Stephoudt, in particular, the Proposed SAC sent at 4:35 pm did not purport to bring ***any*** claims against him (including solely those claims against him that had been dismissed); in contrast, the version filed with the Court at almost midnight named him as a defendant on the (new) Sixteenth and Seventeenth Causes of Action asserting fraudulent transfer.  *See id.*

The Trustee drew no attention to these substantive changes when the real proposed complaint was filed, three minutes before the deadline.  How were the defendants to evaluate—much less confer with the Trustee about—proposed new allegations and claims, naming new defendants, when they were smuggled under the wire three minutes before the door closes on any right to amend?

Not surprisingly, there is little law on what constitutes bad faith in the filing of a motion for leave to amend.  It should be a rare occurrence.  In other contexts, the Fifth Circuit has defined bad faith as "a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive and implies the conscious doing of a wrong because of dishonest purpose or moral obliquity."  *Burnsed Oil Co. Inc. v. Grynberg*, 320 F. App'x 222, 230 (5th Cir. 2009) (internal quotations omitted).  This Court has defined it as "advantage-seeking behavior by the party with superior access to information necessary

---

[1] The as-filed version (Doc. 229-1) also contains an entirely new Eighteenth Cause of Action, but it is pled against only Ganer and SPRI, not any of the Moving Defendants.

4

for the proper administration of justice." *Quantlab Techs. Ltd. (BGI) v. Godlevsky*, No. 4:09-cv-4039, 2014 WL 651944, at \*10 (S.D. Tex. Feb. 19, 2014) (quoting *Micron Tech., Inc. v. Rambus, Inc*., 645 F.3d 1311, 1326 (Fed. Cir. 2011)).

However bad faith is defined, the circumstances here ought to fit.  In seeking leave to amend, a party should not be permitted to wait until the last possible moment, seek agreement on a set of new claims that are inexplicably mixed in with dismissed claims, and then, hours later, file without notice a fattened pleading.  The Trustee had 45 days to determine whether, and to what extent, it could in good faith replead its fraudulent transfer claims specific to transfers from Cornucopia (as opposed to Furie).  That the Trustee suddenly decided—in the hours before its deadline—to include the Reed Smith Defendants in this net of new fraudulent transfer claims is indicative of bad faith.  To paraphrase Rule 15, justice does not require leave to be freely given for such legerdemain.  The Motion for Leave should be denied.

## II.    FUTILITY

Leave to amend also may be denied if the amendment could not survive a motion to dismiss.  *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003), *cert. denied*, 540 U.S. 1108 (2004).  The Proposed SAC filed with the Court ("Proposed SAC")—and more specifically, the only "new" causes of action pled by the Trustee against the Moving Defendants—cannot survive dismissal.

In its Order on the prior Motions to Dismiss, this Court dismissed with prejudice the Trustee's fraudulent transfer claims arising out of the Furie bankruptcy estate as barred by limitations.  Doc. 213 at 25.  Specifically, the Court ruled that because the Furie

5

bankruptcy case closed on July 1, 2020, the Trustee had to have brought any fraudulent transfer claims relating to Furie by that date, pursuant to 11 U.S.C. § 546(a)(2).  *Id.* at 16–17, 25.  The Court permitted the Trustee to seek leave to replead if it could make out viable claims for fraudulent transfers from the ***Cornucopia*** estate (as the Cornucopia bankruptcy proceeding—unlike the Furie bankruptcy proceeding—is still open, rendering 11 U.S.C. § 546(a)(2) inapplicable).  *Id.* at 25–26.  However, most of the "repleaded" and/or new claims the Trustee seeks to assert will suffer the same fate as its original claims, albeit for slightly different reasons.

The Trustee takes two approaches to plead around the Furie claims' limitations bar, which the Moving Defendants address in turn.

### A.    Sixteenth and Seventeenth Causes of Action (Pled Against All Moving Defendants)

First, the Trustee takes the very same allegations previously made as transfers out of the Furie estate and simply slaps a new label on them as having been made out of the Cornucopia estate instead.[2]  These, of course, are the same claims dismissed with prejudice by the Court.  The only difference is that the Trustee alleges that the payments to the Moving Defendants—from a ***Furie*** bank account (ending in 6064) ("Furie Account 6064")—were effectively "from" Cornucopia because Cornucopia deposited some unknown amount of funds into such account on unspecified dates.  *See* Doc. 229-1 (Proposed SAC) ¶ 56 (alleging deposits into Furie Account 6064), ¶¶ 281–82 & ¶¶ 297–

---

[2] Compare the dismissed Third Cause of Action with the "new" Sixteenth Cause of Action, and the dismissed Fourth Cause of Action with the "new" Seventeenth Cause of Action, in the Proposed SAC.  Doc. 229-2 (Trustee's Redline of Proposed SAC to FAC).

98 (in 16th and 17th Causes of Action, alleging Reed Smith and Nunes each received payments from Furie Account 6064 and are thus liable for fraudulent transfers from Cornucopia).

The "new" Sixteenth and Seventeenth Causes of Action (asserted against all of the Moving Defendants) are thus not new at all and instead hinge on the proposition that payments out of Furie Account 6064 can—on the facts as pled in the Proposed SAC—give rise to a fraudulent transfer claim arising out of the ***Cornucopia*** estate.  But this is not so. A transfer out of a debtor's <u>affiliate's</u> bank account simply does not qualify as a transfer out of the ***<u>debtor's</u>*** estate unless either (a) the debtor controlled the account (which the Trustee does not plead), (b) the estates were consolidated (which they were not), or (c) the ***specific funds*** in question originally belonged to the debtor and simply passed through the affiliate to the defendant (which the Trustee has not pled, and instead pleads facts tending to show the opposite).

In any event, the Trustee's fraudulent transfer claims based on payments made from Furie Account 6064 are still time-barred, albeit for different reasons than the Trustee's original claims.

### 1.    Plaintiff Does Not State A Claim for Fraudulent Transfer from the Cornucopia Estate.

The Proposed SAC simply does not plead a cause of action for fraudulent transfer under 11 U.S.C. § 548 based on payments from Furie Account 6064.  Section 548(a)(1) only serves to void transfers of "an interest of the debtor in property, or any obligation . . . incurred by the debtor," which includes, as relevant to this action, only

"legal or equitable interests of the debtor in property as of the commencement of the case."
11 U.S.C. § 541(a)(1).  Plaintiff's Proposed SAC does not allege that Cornucopia had a
"legal or equitable interest" in the funds allegedly paid to the Moving Defendants from
Furie Account 6064 Account.  The Trustee alleges merely that (i) Cornucopia and Furie
were "integrated" in various ways (e.g., shared officers); (ii) Cornucopia held *other*
accounts jointly with Furie, and (iii) at unspecified times, Cornucopia deposited
unspecified funds into the Furie Account 6064.  *See* Doc. 229-1 (Proposed SAC) ¶ 56.  This
is insufficient.

### a. The Proposed SAC Does Not Allege that Cornucopia Had a Legal or Equitable Interest in Furie Account 6064.

Nowhere does the Trustee allege that Cornucopia had a legal or equitable interest in
Furie Account 6064 or the funds in it.  Plaintiff summarily alleges in its Proposed SAC that
payments made to the Moving Defendants from this Furie bank account "were also
transfers of Cornucopia's property" because monies from Cornucopia's gas customers
and/or from loans on which Cornucopia was a joint borrower were at unspecified times
deposited into Furie Account 6064.  Doc. 229-1 (Proposed SAC) ¶ 272.

But a Debtor's mere transfer of funds into a bank account is insufficient to allege
the Debtor's legal or equitable interest in that account.  Traditionally, "[l]egal title or
equitable title to funds on deposit with a bank belong to the person named on the account."
*In re Arturo Rodriguez*, 278 B.R. 749, 753 (Bankr. N.D. Tex. 2002) (citing *Sw. Bank & Tr.
Co. v. Calmark Asset Mgmt., Inc.,* 694 S.W.2d 199, 200 (Tex. App.—Dallas 1985, writ

ref'd n.r.e.)).[3]  Plaintiff does not allege in its Proposed SAC that Cornucopia was named on Furie Account 6064; to the contrary, Plaintiff alleges that it was a *Furie*-owned account with Wells Fargo bank.  Doc. 229-1 (Proposed SAC) ¶ 56.

The Moving Defendants recognize that the Fifth Circuit has held in the fraudulent transfer context (applying Texas law) that the legal titleholder of a bank account may not be the true owner when another entity exercised sufficient control of the account to render it the "de facto" owner, and when that entity exercised that control to fraudulently divert funds or perpetuate a sham.  *In re Am. Hous. Found.*, 785 F.3d 143, 158 (5th Cir. 2015); *In re IFS Fin. Corp.*, 669 F.3d at 262–64.  However, the Trustee has not alleged—even summarily—that Cornucopia controlled Furie Account 6064, such that this account could be properly considered part of the Cornucopia bankruptcy estate.  *See generally Coral Petroleum, Inc. v. Banque Paribas-London*, 797 F.2d 1351, 1356–62 (5th Cir. 1986) (finding no fraudulent transfer when evidence established that debtor lacked control over the funds transferred).

### b.    The Bankruptcy Estates of Cornucopia and Furie Are Separate.

Furthermore, the Trustee cannot *now* suggest that this Court disregard the corporate separateness of Furie and its parent company to blur the lines between their respective

---

[3] The determination of whether funds held in an account constitute the property of a particular entity is determined by state law.  *In re IFS Fin. Corp.,* 669 F.3d 255, 261–62 (5th Cir. 2012) (applying Texas law to determine whether, under Section 544(b) of the Bankruptcy Code, bank accounts constituted "an interest of the debtor in property"); *see also Butner v. United States,* 440 U.S. 48, 54 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

9

bankruptcy estates, as the proper mechanism for that would have been consolidation of the two bankruptcies *by the bankruptcy court*.  As this Court recognized in dismissing the Trustee's original fraudulent transfer claims as time-barred, each of Furie and Cornucopia initiated its own, separate bankruptcy proceeding, and the two were never substantively consolidated.  Doc. 213 (Opinion & Order on Motions to Dismiss) at 21–23.  While the two cases were ultimately jointly *administered*, as a procedural matter, the "estates of each debtor . . . remain[ed] separate."  *Id*. at 22 (quoting *Matter of Steury*, 94 BR 553, 554 (Bankr. N.D. Ind. 1988)).  Only if Furie's and Cornucopia's proceedings had been *substantively consolidated* would "the debtors lose their separateness" and be "treated as one entity."  *Id.* (quoting same).

Accordingly, the Trustee cannot assert claims for fraudulent transfers from the Cornucopia estate by pointing to payments made from a bank account that was part of a separate debtor's estate; and Furie Account 6064 was in fact identified on the asset schedule of *Furie*, and not Cornucopia.  *Compare* Ex. 2 (Furie Am. Sched. of Assets & Liabs., Doc. 328 in *In re Furie Operating Alaska, LLC, et al.*, No. 19-11781-LSS in the U.S. Bankr. Ct. for Dist. of Del. ("Furie Bankruptcy Case")) at 3 (Sched. A/B), *with* Ex. 3 (Cornucopia 2d. Am. Sched. of Assets & Liabs., Doc. 7 in *In re Furie Operating Alaska, LLC, et al.*, No. 19-11782-LSS in the U.S. Bankr. Ct. for Dist. of Del.) at 3–4 (Sched. A/B).[4]

---

[4] *See also* Ex. 4 (Final Bankruptcy Plan, Doc. No. 835-1 in Bankruptcy Case) at 48 of 234 (Section N: "*Vesting of Assets in the Reorganized Debtors*": "on the Effective Date, all property in each Debtor's Estate (unless such property constitutes Litigation Trust

### c. The Proposed SAC Does Not Otherwise Sufficiently Plead that the Moving Defendants Received Funds Belonging to Cornucopia.

The Proposed SAC simply alleges that a Cornucopia account was generally used to collect the corporate family's revenues and loans; that Cornucopia would sometimes transfer funds to Furie's operating account (Furie Account 6064); and that Furie Account 6064 was used to pay Reed Smith and Nunes.  Doc. 229-1 (Proposed SAC) ¶¶ 56, 272, 281–82.  The Trustee does not even try to allege that the funds used to pay Reed Smith and/or Nunes from Furie Account 6064 were originally Cornucopia's—as opposed to *Furie's*—funds.  *Cf. In re Opus E., LLC*, 528 B.R. 30, 108 (Bankr. D. Del. 2015), *aff'd*, No. 15-346-RGA, 2016 WL 1298965 (D. Del. Mar. 31, 2016), *aff'd*, 698 Fed. Appx. 711 (3d Cir. 2017) (funds in question did not belong to debtor but instead to its subsidiary, which had earned management fees for services rendered).   And for a plaintiff to sufficiently plead that a defendant is a subsequent transferee of a fraudulent transfer, the plaintiff must plead that those specific payments trace back to the debtor in question.  *Janvey v. Proskauer Rose LLP*, No. 3:13-CV-477-N-BG, 2017 WL 11499756, at *5 (N.D. Tex. June 19, 2017) (one "attempting to recover fraudulently transferred proceeds must trace those funds in the hands of the transferee"); *cf. In re* Bradley, 501 F.3d 421, 429–30 (5th Cir. 2007) ("In general, the initial burden of tracing and identifying property is upon the claimant who seeks to follow it into the hands of another. . . . It is simply not enough that the property claimed may have been the product of trust funds at

---

Assets) . . . shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, encumbrances, and other interests").

one time."). The Trustee does not plead that the payments made to Reed Smith or Nunes from Furie Account 6064 are traceable to Cornucopia.[5]

At most, Plaintiff has pled a mere possibility that Cornucopia's funds ended up being spent by Furie to pay two of the Moving Defendants. This is insufficient. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557–58 (2007) ("[S]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value." (internal quotations and citation omitted)).

Accordingly, adding the Sixteenth and Seventeenth Causes of Action against the Moving Defendants—premised wholly on payments from a ***Furie***-owned bank account—would be futile. Leave to amend should be denied.

---

[5] The litigation trustee in *In re Licking River Mining, LLC*, unsuccessfully tried to do what the Trustee does here (albeit a mirror image). There, the plaintiff alleged fraudulent transfers from certain ***subsidiaries'*** estates, where the parent (also a debtor) paid a law firm for services rendered (to the parent) using ***the parent company's*** bank account. 565 B.R. 794, 803 (Bankr. E.D. Ky. 2017). The plaintiff asserted these payments to the law firm were effectively transfers from the ***subsidiaries*** because the parent company employed a cash management system, whereby it would regularly sweep the subsidiaries' cash into a centralized account owned by the parent. *Id.* The bankruptcy court held that the complaint failed to sufficient plead a fraudulent transfer from the subsidiaries because it failed to describe specific transfers from the subsidiaries to the parent (i.e., specific dates and amounts), which was necessary to plead subsequent transferee liability against the defendant law firm. *Id.* at 803–05.

## 2.      The Claims Are Time-Barred.

Furthermore, while the time-bar in 11 U.S.C. § 546(a)*(2)* would not apply to claims for fraudulent transfers out of the Cornucopia estate (given that the case is still open), the Trustee's Sixteenth and Seventeenth Causes of Action are still time barred.  First, 11 U.S.C. § 548(a)(1) provides that claims for fraudulent transfer brought thereunder (for actual or constructive fraudulent transfer) can encompass solely those transfers made "within 2 years before the date of the filing of the petition" for bankruptcy.  Cornucopia filed its petition on <u>August 9, 2019</u>.  Ex. 5 (Cornucopia Voluntary Pet. for Ch. 11 Bankruptcy)**.**  Second, 11 U.S.C. § 546(a)(1) provides that a trustee's deadline to file such claims—when the bankruptcy case is still open (rendering § 546(a)(2) inapplicable)—is "the later of--"

(A) "2 years after the entry of the order for relief" (with the relevant "order for relief" being Cornucopia's voluntary petition for bankruptcy on <u>August 9, 2019</u>[6]); or

(B) 1 year after the trustee was appointed (with the appointment here on <u>June 12, 2020</u>[7]).

In sum, the alleged ***transfers*** to the Moving Defendants must postdate August 9, 2017, and the Trustee's ***claims*** had to have been brought by August 9, 2021.

<u>**As to Nunes**</u>:  The new Sixteenth and Seventeenth Causes of Action are premised on alleged transfers to Nunes from Furie Account 6064 that took place between August

---

[6] *See* 11 U.S.C. § 301(b) ("The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.").

[7] Doc. 229-1 (Proposed SAC) ¶ 4.

2015 and January 2017.  Doc. 229-1 (Proposed SAC) ¶¶ 60, 282, 298, & Ex. C (schedule of alleged payments to Nunes).  Because *all* of these payments predate August 2017, they are outside of 11 U.S.C. § 548(a)(1)'s two-year reach-back period and cannot serve as the basis for the Trustee's new claims.  Leave to add the Sixteenth and Seventeenth Causes of Action would be futile.

**As to the Reed Smith Defendants:** The new Sixteenth and Seventeenth Causes of Action are premised on alleged transfers from Furie Account 6064 to Reed Smith (only), totaling $1.1 million, between January 2017 and November 2018.  Doc. 229-1 (Proposed SAC) ¶¶ 281, 297, & Ex. F (schedule of alleged payments to Reed Smith from Furie Account 6064).  While some of these alleged transfers fall within the two-year reach-back period, the Trustee had until August 9, 2021 to bring them.  While the original state court petition in this matter was filed before that time, the new claims the Trustee seeks to assert here do not "relate back" because they do not arise "out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading."  FED. R. CIV. P. 15(c)(1)(B).

To be clear, the Reed Smith Defendants were originally sued for unspecified payments to Reed Smith (for legal invoices) *from Furie*, allegedly from 2016 to 2018.  *See* Doc. 155 (First Amended Complaint, "FAC") ¶ 176.  If the "new" claims on behalf of Cornucopia are for these same payments, then they have been dismissed with prejudice.  If the "new" claims are based on different transfers (from Furie Account 6064) of what was truly Cornucopia's property, then they do not arise out of the same conduct, transactions, or occurrences the Trustee originally pled.  "New avoidance claims are generally treated

14

as separate, distinct transactions that do not relate back under Rule 15(c)." *In re Uplift RX, LLC*, 625 B.R. 364, 376 (Bankr. S.D. Tex. 2021). The only alleged "course of conduct" about which the Reed Smith Defendants were on notice, prior to the Proposed SAC, was the alleged scheme to loot **Furie**, the company with drilling operations in Alaska—not its parent, Cornucopia, which played no more than a nominal role in prior pleadings. *Id*. at 376 ("[T]he 'mere allegation' that the previously identified transfers and the newly added transfers are 'all . . . fraudulent transfers does not make them part of the same conduct.'" (brackets and ellipses in original) (quoting *Securities Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC,* 594 B.R. 167, 210 (Bankr. S.D.N.Y. 2018))). Again, these two affiliates' respective estates were separate and not consolidated. The Reed Smith Defendants had no way to anticipate in 2021, when this suit was filed, that the payments that Plaintiffs alleged were made to Reed Smith **by Furie** allegedly for van Stephoudt's time in serving as **Furie**'s president were somehow subject to fraudulent transfer clawbacks by the **Cornucopia** bankruptcy estate. *See, e.g.*, Doc. 155 (FAC) ¶ 176 (alleging van Stephoudt served as Furie President while acting as Reed Smith employee, for which Reed Smith invoiced Furie and was paid over $1.1M); Doc. 155 (FAC) ¶ 191.

**As to all Moving Defendants:** The Trustee's state law bases for the Sixteen and Seventeenth Causes of Action share the same fate. The Texas Uniform Fraudulent Transfer Act ("TUFTA") provides that the cause of action is "extinguished" if not brought within four years of the alleged fraudulent transfer. TEX. BUS. & COM. CODE §§ 24.010(a)(1), (a)(2). The last alleged transfer to Nunes was in January 2017, and to Reed Smith was in November 2018 (*see* Doc. 229-1 (Proposed SAC) Exs. C & F, respectively), creating

15

deadlines of January 2021 and November 2022, respectively, to file such claims.  Because TUFTA § 24.010 is a statute of repose—not limitations—no "relation back" doctrine can apply to render the Trustee's new proposed claims timely.  *Nathan v. Whittington*, 408 S.W.3d 870, 874 (Tex. 2013); *In re Am. Hous. Found.*, 543 B.R. 245, 262–63 (Bankr. N.D. Tex. 2015); *In re Tex. E&P Operating, Inc.*, No. 17-34386-SGJ-7, 2023 WL 3012268, at *12 (Bankr. N.D. Tex. Apr. 19, 2023).

### B.   Thirteenth and Fourteen Causes of Action (Pled Against Nunes)

As to Nunes, the Trustee's second attempt to plead around the Furie limitations' bar (by identifying transfer from Cornucopia) comes in the form of new allegations and claims about payments that Cornucopia allegedly made to (a) Nordic Overseas Drilling & Services, GmbH ("Nordic") and/or (b) Shelf Drilling Offshore Resources Limited II ("Shelf II") ***through*** Furie.  Specifically, the Trustee alleges that when Cornucopia made certain payments to Nordic and Furie (which then allegedly paid Shelf II), for use of the Randolph Yost drilling rig, these payments were "for the benefit of" (among others) Nunes.  Doc. 229-2 (Trustee's Redline of Proposed SAC to FAC) ¶¶ 78, 251; *see also* Doc. 229-2 at 13th & 14th Causes of Action.

As for Cornucopia's alleged payments to *Nordic*, the proposed complaint alleges they took place between September 2015 and August 2016.  Doc. 229-1 (Proposed SAC) ¶¶ 77–78.  Again, these alleged transfer fall outside the two-year reach-back of 11 U.S.C. § 548(a)(1), ***and*** TUFTA's statute of repose requires that any claims have been brought by August 2020.  *See* Tex. Bus. & Com. Code §§ 24.010(a)(1), (a)(2).

16

As for Cornucopia's alleged payment to *Shelf II* (by initially paying Furie), the Proposed SAC alleges it took place on August 28, 2017.  Doc. 229-1 (Proposed SAC) ¶ 251.  But again, the Trustee places itself on the horns of a dilemma.  If the claims are not new, they have already been dismissed.  And if they are new—that is, if they do not arise out of the same conduct, transaction, or occurrence as the original pleading—then they do not relate back to the original complaint.  *Schirle v. Sokudo USA, L.L.C.*, 484 F. App'x 893, 901 (5th Cir. 2012).  The Trustee needs the newly asserted claims to relate back, else it has the same limitations problem with the new claims that it had with the old.  But, alas, the allegation that Nunes should be liable under fraudulent transfer law for the $1.5 million payment made by Cornucopia ***and/or*** Furie is nowhere to be found, even in the First Amended Complaint.  *See* Doc. 229-2 (Trustee's Redline of Proposed SAC to FAC) ¶¶ 5, 87, 243–64 (adding 13th and 14th Causes of Action based on Cornucopia payments to Nordic and Shelf II).  This is a new alleged transfer about which Nunes was not on notice— until now—that the Trustee sought to hold him liable.  It does not relate back.  *See In re Uplift RX*, 625 B.R. at 376.

Accordingly, granting the Trustee leave to plead the Thirteenth and Fourteenth Causes of Action against Nunes would be futile.

## CONCLUSION

For the above reasons, the Moving Defendants ask the Court to deny the Trustee's Motion for Leave to file its Second Amended Complaint, and for further relief to which they may be justly entitled.

Respectfully submitted,

/s/ Murray Fogler
Murray Fogler
State Bar No. 07207300
S.D. Tex. Bar No. 2003
mfogler@foglerbrar.com
Fogler, Brar, O'Neil & Gray LLP
2 Houston Center
909 Fannin, Suite 1640
Houston, Texas 77010
Telephone No. (713) 481-1010
Facsimile No. (713) 574-3224

Attorney for Defendant
Michael Anthony Nunes

/s/ Collin J. Cox
Collin J. Cox
State Bar of Texas No. 24031977
ccox@gibsondunn.com
Gibson, Dunn & Crutcher LLP
811 Main St., Suite 3000
Houston, Texas 77002
Telephone: (346) 718-6604

Attorney for Defendant
Reed Smith LLP

/s/ Barrett H. Reasoner
Barrett H. Reasoner
State Bar No. 16641980
Federal ID No. 14922
breasoner@gibbsbruns.com

Ayesha Najam
State Bar No. 24046507
Federal ID No. 605948
anajam@gibbsbruns.com
Caitlyn Cowan
State Bar No. 24120778
Federal ID No. 3699270
ccowan@gibbsbruns.com
1100 Louisiana Street, Suite 5300
Houston, Texas 77002
Telephone: (713) 650-8805
Facsimile: (713) 750-0903

*Attorneys for Defendants*
*David Hryck and*
*Theodor van Stephoudt*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument was served upon all counsel of record on June 20, 2023, using the Court's electronic filing system.

*/s/ Barrett H. Reasoner*
Barrett H. Reasoner

## CERTIFICATE OF WORD COUNT

Under paragraph 18(c) of this Court's procedures, I hereby certify that this Opposition contains 4,858 words according to the word count provided by the software used to prepare the document, excluding the case caption, table of contents, table of authorities, signature block, and certificates.

*/s/ Barrett H. Reasoner*
Barrett H. Reasoner