UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CLINGMAN & HANGER MANAGEMENT ASSOCIATES, LLC, as Trustee of the Furie Litigation Trust, § § § § § § § § Plaintiff, § § § vs. § § § KAY RIECK § LARS DEGENHARDT § THEODOR VAN STEPHOUDT § DAVID HRYCK § REED SMITH LLP § THOMAS E. HORD § MICHAEL ANTHONY NUNES § STONE PIGMAN WALTHER WITTMANN § LLC, in its own capacity and as successor by § merger to Cogan & Partners LLP § DAVID ELDER § BRUCE GANER § SIERRA PINE RESOURCES § INTERNATIONAL, INC. and § HELENA ENERGY, LLC § Defendants. § | CIVIL ACTION NO. 4:21-cv-02698 |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF ITS MOTION FOR LEAVE
TO FILE THE SECOND AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ................................................................................................................................. 3

I.    THE PROPOSED SECOND AMENDED COMPLAINT DOES NOT REASSERT DISMISSED BREACH OF FIDUCIARY DUTY CLAIMS ............................................ 3

II.   THE PROPOSED SECOND AMENDED COMPLAINT STATES VALID FRAUDULENT TRANSFER CLAIMS ............................................................................ 4

    A.    The Trustee Can Avoid and Recover Fraudulent Transfers Made through Furie Operating Alaska Bank Accounts ........................................................................... 4

    B.    The Fraudulent Transfer Claims Relate Back .......................................................... 6

    C.    The Fraudulent Transfer Claims are Not Time-Barred ........................................... 8

    D.    Insofar as Rule 9(b) Applies the Proposed Second Amended Complaint Satisfies the Heightened Pleading Standard ........................................................................ 10

   III.  THE PARTIES CONFERRED IN A TIMELY MANNER AND THE COURT SHOULD NOT DENY LEAVE TO AMEND BASED ON THE LOCAL RULES . 12

CONCLUSION ............................................................................................................................ 13

# **TABLE OF AUTHORITIES**

**Cases**                                     **Page(s)**

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.*,
 128 F.3d 1074 (7th Cir. 1997) .................................................................................................. 11

*Hicks v. State*,
 419 S.W.3d 555 (Tex. App. 2013) .............................................................................................. 5

*In re Boyd*,
 2012 WL 5199141 (W.D. Tex. Oct. 22, 2012) ..................................................................... 10, 11

*In re Calpine Corp.*,
 2008 WL 3154763 (Bankr. S.D.N.Y. Aug. 4, 2008) ................................................................ 5, 6

In re Genter.,
 2020 WL 3129637 (N.D. Tex. June 12, 2020) .......................................................................... 8, 9

*In re Life Partners Holdings, Inc.*,
 926 F.3d 103 (actual fraudulent transfer) ........................................................................ 9, 10, 11

*Janvey v. Suarez*,
 978 F. Supp. 2d 685 (N.D. Tex. 2013) ...................................................................................... 11

*Kaye v. Lone Star Fund V (U.S.), L.P.*,
 453 B.R. 645 (N.D. Tex. 2011) ............................................................................................ 10, 11

*Life Partners Creditors' Trust v. Black Diamond Lifeplan Fund*,
 2017 WL 9934885 (N.D. Tex. Nov. 27, 2017) (denying motion) ............................................... 8

*Roland v. U.S.*,
 838 F.2d 1400 (5th Cir. 1988) ................................................................................................... 11

*SEC, et al. v. Resources Development Int'l LLC*,
 487 F.3d 295 (5th Cir. 2007) .................................................................................................. 9, 10

*Smith v. Am. Founders Fin., Corp.*,
 365 B.R. 647 (S.D. Tex. 2007) .................................................................................................... 8

*Stauffer v. Henderson*,
 801 S.W.2d 858 (Tex.1990) ......................................................................................................... 5

**Statutes**

11 U.S.C. § 101 .......................................................................................................... 4, 10

11 U.S.C. § 544 ............................................................................................................ 1, 8

11 U.S.C. § 546 ......................................................................................................... 7, 8, 9

11 U.S.C. § 548 ......................................................................................................... 1, 2, 8

11 U.S.C. § 550 ......................................................................................................... 1, 2, 5

11 U.S.C. § 1123 ............................................................................................................. 1

Tex. Bus. & Com. Code § 24.001 ................................................................................... 1

Tex. Bus. & Com. Code § 24.002 ................................................................................... 4

Tex. Bus. & Com. Code § 24.005 ................................................................................. 10

Tex. Bus. & Com. Code § 24.010 ................................................................................... 8

Plaintiff Clingman & Hanger Management Associates, LLC, as Trustee of the Furie Litigation trust (the "Trustee"), and representative of the estates of Cornucopia Oil & Gas, LLC ("Cornucopia") Furie Operating Alaska, LLC ("FOA") under their joint chapter 11 plan and 11 U.S.C. § 1123(b)(3)(B), respectfully submits this reply memorandum of law in further support of its motion for leave to file the proposed second amended complaint (Dkt. 229-1, the "Proposed SAC").

## PRELIMINARY STATEMENT

Defendants are misguided in objecting that the Proposed SAC fails to plead valid breach of fiduciary duty, aiding and abetting and/or civil conspiracy claims on behalf of the Cornucopia estate against the officer-defendants (e.g., Dkt. 247 at 10, Dkt. 261 at 4). The Trustee expressly stated in its opening brief "the proposed amendment is not seeking to replead the breach of fiduciary duty claims as they relate to Cornucopia" (Dkt. 229 at 4), except to preserve those against the attorney and law firm defendants that were not previously dismissed.

Rather, the Proposed SAC simply seeks to restate the fraudulent transfer claims to show which claims were fraudulent transfers from Cornucopia, that are avoidable under the Texas Uniform Fraudulent Transfer Act, Tex. Bus. & Com. Code § 24.001, et seq. ("TUFTA"), made applicable by 11 U.S.C. § 544, and the fraudulent transfer provisions of the Bankruptcy Code, 11 U.S.C. § 548, and recoverable from the defendants as subsequent transferees under 11 U.S.C. § 550(a)(2).

Specifically, the Proposed SAC alleges that Cornucopia and FOA shared multiple bank accounts (Proposed SAC ¶56); that said accounts were funded with loans from ECP

1

and ING on which they were co-borrowers (id. ¶5); that said accounts were also funded from gas sale proceeds, and that the majority of the gas sold was owned by Cornucopia in that it owned the majority of their "working interests" in the KLU leases (id. ¶43); and that said loan and gas sale proceeds were transferred to defendants through FOA bank accounts (id. ¶¶56-60). It also alleges that Cornucopia (not FOA) paid the $31 million to Nordic to charter the Randolph Yost drilling rig, that was the subject of fraudulent transfer claims in the First Amended Complaint (Dkt. 155, "FAC").

      Defendants' argument that the fraudulent transfer claims are somehow time-barred or do not relate back fail. These claims have been at the heart of this case since the beginning. The Proposed SAC simply adds detail to show that Cornucopia and FOA were often difficult to separate, in large part because the defendants treated the entities as one. The Proposed SAC clarifies that the transfers at issue originated from Cornucopia. Moreover, the Court has already found that claims to avoid Cornucopia transfers under the TUFTA and 11 U.S.C. § 548 are not time-barred. (Dkt. 213 at 25-26.)

      The Proposed SAC states valid fraudulent transfer claims, recoverable under 11 U.S.C. § 550(a)(2), and does not disturb the claims the Court previously upheld. Accordingly, the Court should grant Plaintiff's motion and permit the filing of the Second Amended Complaint.

**ARGUMENT**

I.  **THE PROPOSED SECOND AMENDED COMPLAINT DOES NOT REASSERT DISMISSED BREACH OF FIDUCIARY DUTY CLAIMS**

Several defendants argue that the Proposed SAC should not be allowed because it improperly attempts to reassert dismissed claims. David Elder states the "Trustee seeks to reassert breach of fiduciary duty and related civil conspiracy causes of action against Elder." (Dkt. 261 at 4.) Similarly, Kay Rieck and Helena Energy, LLC claim that the Proposed SAC "reassert[s] all of the original fiduciary duty and related claims verbatim." (Dkt. 247 at 10.)

This is not true. Rather, for each of the existing causes of action, the Trustee kept the allegations in the Proposed SAC but noted how the claim had been treated by the Court. The Trustee inserted a parenthetical before paragraph 173 noting that the First Cause of Action for Breach of Fiduciary Duty was "Dismissed in part by ECF 213." This reflects the fact that the Court dismissed this claim as it relates to the officer defendants, but upheld it against the attorney fiduciaries, Nunes, Hryck, and Reed Smith. The Trustee is not reasserting the dismissed portions of this claim now, but could not remove the allegations.

The Trustee inserted similar parentheticals describing how each cause of action was treated by the Court's Decision and Order. These parentheticals make clear what the Proposed SAC does: it retains allegations supporting claims that had not been dismissed,

preserves allegations that might be subject to an appeal, and then repleads the Cornucopia fraudulent transfer claims in new counts.[1]

## II. THE PROPOSED SECOND AMENDED COMPLAINT STATES VALID FRAUDULENT TRANSFER CLAIMS

Defendants challenge the sufficiency of the new causes of action in the Proposed SAC on several grounds, all of which fail as set forth below.

### A. The Trustee Can Avoid and Recover Fraudulent Transfers Made through Furie Operating Alaska Bank Accounts

Several defendants argue that Cornucopia transfers made through FOA bank accounts are not avoidable. For example, Hryck, Van Stephoudt and Reed Smith argue (Dkt. 258 at 10) that a Cornucopia fraudulent transfer claim cannot be based on transfers from FOA account 6064 because the account was included in FOA's Schedule A/B filed in the bankruptcy case and the Proposed SAC does not sufficiently allege that Cornucopia had a "legal or equitable" interest in funds transferred to the account. Other defendants joined this objection.

This argument misses the mark. As noted above, the Proposed SAC alleges that loan proceeds and gas sale proceeds belonging to Cornucopia were initially deposited in a joint account before they were transferred to FOA account 6064 and then transferred to or

---

[1] The Trustee may appeal the dismissal of the fiduciary duty claims at the conclusion of this litigation and, in part, retained the allegations in order to preserve the right to appeal. Defendants rely on *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 2012 WL 896256, at *3 (S.D. Tex. Mar. 14, 2012) to argue that this is unnecessary. The Court in *Heartland Payments* relied on Second Circuit and Fourth Circuit case law. The Fifth Circuit does not appear to have addressed this issue, and, in any case, *Heartland* stands for the proposition that it is *unnecessary*, not that it is impermissible.

4

for the benefit of defendants. The transfers from the joint account to FOA account 6064 were plainly "transfers" under 11 U.S.C. § 101(54) and TUFTA § 24.002(12).

Moreover, the accounts described as joint accounts in the Proposed SAC are in fact Cornucopia accounts. The title of the account, listed in the address block, is "Cornucopia Oil and Gas LLC," and does not list FOA. The depositary agreement with Wells Fargo also describes the account as established only in the name of Cornucopia, not FOA. Further, Texas law recognizes that a joint account holder may not in fact own the funds on deposit in the account. *Stauffer v. Henderson*, 801 S.W.2d 858, 861 (Tex.1990) (joint account does not create right of survivorship; it "is not at all unusual for a person to deposit his or her funds into an account upon which another person is authorized to draw merely for the convenience of the depositor"); *Hicks v. State*, 419 S.W.3d 555, 558–59 (Tex. App. 2013) ("a party to a joint account is entitled to lawfully draw monies from the account. That authority alone, however, does not establish the party's ownership of the funds. Nor does it alone divest title to the funds from the actual owner").

In any event, the transfers to FOA account 6064 were "transfers" under the statutes because they resulted in the "disposing of or parting with" of funds in which Cornucopia had an interest. Said transfers were plainly fraudulent as to Cornucopia and its creditors given the way defendants operated Cornucopia and FOA, the absence of reasonably equivalent value therefor and Cornucopia's insolvency.

Notwithstanding the moving brief having invoked 11 U.S.C. § 550, defendants ignore the consequence of 11 U.S.C. § 550(a)(2). Defendants cite no authority for their proposition that the initial transferee's bankruptcy cuts off Cornucopia's right to recover

5

subsequent transfers made to an "immediate or mediate transferee of such initial transferee" (defendants).[2]

### B. The Fraudulent Transfer Claims Relate Back

The Court dismissed the third, fourth and fifth causes of action without prejudice, because "as currently pleaded, such claims [referring to those asserted on behalf of the Cornucopia estate]—to the extent pleaded—are impossible to separate from those arising out of the Furie bankruptcy estate." (Dkt. 213 at 25.)

The new thirteenth through eighteenth causes of action replead these claims to recover transfers originating from Cornucopia, all of which plainly relate back to the date of the original pleading. Under Rule 15, an amendment relates back when it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or

---

[2]  Hryck, Van Stephoudt and Reed Smith also challenge the fraudulent transfer claims on the ground that there are no allegations that Cornucopia controlled FOA account 6064. However, control of the immediate transferee's bank accounts is not required to assert a fraudulent transfer claim against subsequent transferees. The characterization is also wrong. As alleged in the Proposed SAC, Cornucopia and FOA were highly integrated. Cornucopia was the sole member of FOA; Cornucopia officers held the same roles at FOA, including Lars Degenhardt (president of both companies), Thomas Hord (COO of both), Tony Nunes (general counsel of both) and David Elder (CFO of both); Elder's employment agreement refers to Cornucopia, FOA, and Corsair as the "Company." (Proposed SAC ¶ 24.) These and other defendants very often did not distinguish between FOA and Cornucopia, referring to both simply as "Furie." (Id.) As the parent and sole member, it is reasonable to infer that Cornucopia controlled FOA and its bank accounts, particularly because the companies shared officers and the officers did not distinguish between them.

Insofar as defendants are making a preclusion argument based on Schedule A/B, the bankruptcy schedules do not have preclusive effect. *In re Calpine Corp.*, No. 05-60200, 2008 WL 3154763, at *7 (Bankr. S.D.N.Y. Aug. 4, 2008) (denying request to invoke judicial estoppel based on schedules where, as here, the schedules included a disclaimer and the party seeking preclusion had not relied upon the schedules).

6

attempted to be set out—in the original pleading." The new claims in the Proposed SAC are the same claims asserted in the original pleading and arise out of the same "course of conduct, transaction, or occurrence" set out in the original pleadings here.

The FAC alleged that "[b]etween late 2015 and 2016, Furie recorded expenses paid to Nordic of $82 million." (FAC ¶ 78). This transfer was then identified as one of the "Challenged Transfers" in FAC ¶ 191. The Proposed SAC clarifies that "Payments to Nordic were in fact from Account 9240, Cornucopia's bank account held separately from FOA. Between September 2015 and August 2016, Cornucopia paid Nordic $31,207,339.83, including $9,600,000 paid to Nordic on December 21, 2015." (Proposed SAC ¶ 77). The Proposed SAC then restates the claims in the Thirteenth Cause of Action (¶¶ 243-256) and the Fourteenth Cause of Action (¶¶ 257-264).

Similarly, FAC ¶ 191 included Defendants' compensation from "Furie" among the "Challenged Transfers." The Proposed SAC describes these transfers in detail in ¶¶ 56-60 and the Exhibits. The Proposed SAC then restates the fraudulent transfer claims in the Sixteenth Cause of Action (¶¶ 271-286) and the Seventeenth Cause of Action (¶¶ 287-301). Finally, the transfers of Cornucopia's tax credits, also a Challenged Transfer in FAC ¶ 191, were clarified in the Proposed SAC (¶¶ 104-106) and restated the claim in the Fifteenth Cause of Action (¶¶ 265-270).

In short, each of the transfers the Trustee seeks to avoid in the new causes of action are the same transfers stated in the FAC. These claims relate back.

### C. The Fraudulent Transfer Claims are Not Time-Barred

The Defendants that argue the Cornucopia fraudulent transfer claims are time-barred misapprehend the applicable provisions of the Bankruptcy Code. The Bankruptcy Code permits avoidance of transfers made within two years prior to the petition date under 11 U.S.C. § 548(a)(1), so long as the claims are asserted prior to expiration of the 11 U.S.C. § 546(a) deadline.

The Proposed SAC's federal fraudulent transfer claims only seek to recover transfers made during the two-year period preceding August 9, 2019, the date Cornucopia's bankruptcy case was filed. (Dkt. 213 at 12). They are accordingly not time-barred.[3]

For TUFTA claims brought under 11 U.S.C. § 544, the law is clear that "if at the beginning of the bankruptcy proceeding, a state fraudulent-transfer claim is viable—because the state statute of limitations has not yet expired—then section 546(a) provides the trustee an additional two years . . . to file a fraudulent-transfer action" and "it is immaterial if the limitations period accrues during the pendency of the bankruptcy case" (or thereafter), so long as the claims are asserted prior to expiration of the 11 U.S.C. § 546(a) deadline. *Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647, 679 (S.D. Tex. 2007) (citations omitted). *See also Life Partners Creditors' Trust v. Black Diamond Lifeplan Fund*, No. 17-cv-225, 2017 WL 9934885, at *8 (N.D. Tex. Nov. 27, 2017) (denying

---

[3] The Exhibits to the Proposed SAC identify the dates of the fraudulent transfers.

motion to dismiss fraudulent transfer claims "to avoid transfers made . . . within the statutory time-frame of four years before the bankruptcy filing").

Defendants' argument that TUFTA § 24.010(a) as a statute of repose bars state law fraudulent transfer claims has been repeatedly rejected. As noted in *In re Genter*:

> Although circuit courts have not directly addressed the interplay between a state uniform fraudulent transfer act statute of repose like section 24.010 and section 546(a), a number of lower courts have. In doing so, those courts have determined section 546(a) applies; to wit, if fraudulent transfer claims are viable as of the beginning of a bankruptcy proceeding under a state statute of repose, a trustee has two years from that date to bring the claims under section 546(a).

No. 19-cv-1951, 2020 WL 3129637, at *2 (N.D. Tex. June 12, 2020) (collecting cases and affirming bankruptcy decision concluding that the Bankruptcy Code preempts the TUFTA's statute of repose).

The TUFTA claims were timely asserted. As noted above, Cornucopia's bankruptcy case commenced August 9, 2019. (Dkt. 213 at 12.) This case was filed in state court on August 6, 2021 (Dkt. 1-4), prior to expiration of the 11 U.S.C. § 546(a) deadline. Accordingly, the lookback period is four years prior to the commencement of Cornucopia's bankruptcy case, *i.e.*, the four-year period beginning August 9, 2015. The Proposed SAC states valid TUFTA claims in that it only seeks to avoid and recover transfers made after that date. For similar reasons, the federal fraudulent transfer claims, as to which the look-back period is the two-year period beginning August 9, 2017, are also not time-barred.

9

**D. Insofar as Rule 9(b) Applies the Proposed Second Amended Complaint Satisfies the Heightened Pleading Standard**

Hord's argument that the Proposed SAC does not satisfy Rule 9(b)'s heightened pleading standards (Dkt. 259 at 15-17) fails.

At the outset, the Fifth Circuit has specifically avoided deciding whether Rule 9(b) applies to fraudulent transfer claims. *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 118 (actual fraudulent transfer), 120 (constructive fraudulent transfer) (5th Cir. 2019).[4]

As to the actual fraudulent transfer claims, multiple badges of fraud are pleaded, specifically:

- Insider Transfers (TUFTA § 24.005(b)(1)). All of the officer-defendants are insiders. Indeed, the definition of "insider" in 11 U.S.C. § 101(31) includes an "officer of the debtor."

- Concealment (TUFTA § 24.005(b)(3)). The Proposed SAC alleges (at ¶¶ 90-91) that the Randolph Yost transfers were concealed by Hord, Nunes, Hryck and others who created dummy companies and trusts to hide the true ownership of Advanced Drilling. Additionally, the Proposed SAC alleges (at ¶¶ 112-140) Cornucopia worked to give its lenders a false picture of the company's value through inflated reserve reports. This concealed the nature of the transfers to the defendants.

- Lack of Reasonably Equivalent Value (TUFTA § 24.005(b)(8)). The value of the consideration received for the Randolph Yost charter was not reasonably equivalent to the value of the asset transferred. The Proposed SAC (at ¶ 83), like the FAC (at ¶ 76), alleges that Cornucopia paid Nordic $220,000/day and received only $75,000/day in value. In addition, no value was given to Cornucopia for its Alaska state tax credits. (Proposed SAC ¶ 106.)

---

[4] The issue is that actual fraudulent transfer claims focus "on the debtor's intent in making the transfer, not the recipient's *scienter*." See *SEC, et al. v. Resources Development Int'l LLC, et al.*, 487 F.3d 295, 301 (5th Cir. 2007). The intentions of the transferee are irrelevant. *Id*." E.g. *In re Boyd*, No. 12-ap-5107, 2012 WL 5199141, at *9 (W.D. Tex. Oct. 22, 2012)

- Insolvency at the Time or Shortly After the Transfer (TUFTA § 24.005(b)(9)). The Proposed SAC alleges (at ¶ 255) that Cornucopia was insolvent or became insolvent shortly after the transfers were made, because it had taken out $195 million in loans while its primary assets—oil and gas—were valued at $121 million. (Proposed SAC ¶¶ 52-54, 115). Furthermore, Furie had been advised by its lenders that it was in default on its loans before most of the transfers were made. (Proposed SAC ¶¶ 199, 255. Additionally, the Proposed SAC explains (at ¶¶ 149-153) that Cornucopia was forced to file bankruptcy soon after the inflated reserve reports were exposed and the true value of its assets revealed.

- Transfers Coincided with Incurring Substantial Debt (TUFTA § 24.005(b)(10)). The Proposed SAC alleges (at ¶¶ 54-56) that the transfers at issue included ECP and ING loans that were drawn shortly before the transfers were made; and also (¶ 128) that Cornucopia continued to try to secure new loans based on the inflated reserve reports.

That is sufficient to satisfy Rule 9(b). *E.g. Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 672 (N.D. Tex. 2011) (pleading just three badges of fraud—insider status, lack of reasonably equivalent value and insolvency—was "sufficient to support an inference that Bruno's had the actual intent to defraud, hinder or delay its creditors"); *In re Boyd*, No. 12-ap-5107, 2012 WL 5199141, at *9 (W.D. Tex. Oct. 22, 2012) (pleading multiple badges of fraud sufficient to defeat motion to dismiss); *see also Roland v. U.S.*, 838 F.2d 1400, 1403 (5th Cir. 1988) ("[w]hen several of these indicia of fraud [referring to badges of fraud] are found, they can be a proper basis for an inference of fraud"). Particularly as the transfers at issue are plainly identified in the exhibits. *Life Partners*, 926 F.3d at 119 (Rule 9(b) satisfied through inclusion of exhibit that "detail[ed] the allegedly fraudulent transfers—including the transferor, transferees, amounts, and time period" and because the "complaint itself contains pages of allegations detailing the underlying fraudulent scheme").

11

Insofar as the Court concludes Rule 9(b) applies to constructive fraudulent transfer claims, the heightened pleading standard is met because the Proposed SAC alleges that Cornucopia did not receive reasonably equivalent value for the respective transfers and made them while insolvent. *Life Partners*, 926 F.3d at 121 (citing *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) and *Janvey v. Suarez*, 978 F. Supp. 2d 685, 701 (N.D. Tex. 2013)). The lack of reasonably equivalent value for the transfers is also sufficiently alleged. The Randolph Yost rig was chartered for $220,000 per day and Furie only received $75,000 in value from it. (Proposed SAC ¶ 83, 276; FAC ¶ 76). The Alaska state tax credits were transferred without consideration to Cornucopia. (Proposed SAC ¶ 106; FAC ¶ 100). Cornucopia did not receive reasonable equivalent value and was insolvent for the reasons described above.

### III. THE PARTIES CONFERRED IN A TIMELY MANNER AND THE COURT SHOULD NOT DENY LEAVE TO AMEND BASED ON THE LOCAL RULES

Defendants' arguments that the Trustee failed to confer are incorrect. The Trustee provided drafts of its motion for leave and Proposed SAC and asked for Defendants' consent before filing, and were immediately rebuffed. The Trustee then finalized its motion and the Proposed SAC and filed them. Each of the Defendants have now opposed the filing of the Proposed SAC. Under Rule 15, the court should freely give leave when justice requires. Since the Trustee has stated viable claims for fraudulent transfer in the Proposed SAC, the Court should now give leave to file the Proposed SAC.

## CONCLUSION

For the foregoing reasons, the objections should be overruled, and the motion should be granted.

Dated: June 30, 2023

                                Respectfully Submitted,

                                */s/Robert M. Corn*
                                  Robert M. Corn
                                  State Bar No. 0482600
                              3131 Eastside St., Suite 440
                              Houston, Texas 77098-1947
                              Telephone: 713-229-0055
                              Facsimile; 713-229-0057
                              Email: rcorn@corn-law.com

OF COUNSEL:

AMINI LLC
Bijan Amini
Avery Samet
131 West 35th Street, 12th Floor
New York, New York 10001
Telephone: (212) 490-4700
bamini@aminillc.com
asamet@aminillc.com

                              ATTORNEYS FOR PLAINTIFF CLINGMAN &
                              HANGER MANAGEMENT ASSOCIATES,
                              LLC, as Trustees of the Furie Litigation Trust

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument was served upon all counsel of record on June 30, 2023, via ECF.

*/s/Robert M. Corn*
Robert M. Corn
