United States District Court
Southern District of Texas
**ENTERED**
March 22, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CLINGMAN & HANGER MANAGEMENT ASSOCIATES LLC, Plaintiff, | § § § § § § § § § § § § | CIVIL ACTION NO 4:21-cv-02698 |
| vs. | | JUDGE CHARLES ESKRIDGE |
| KAY RIECK, *et al*, Defendants. | | |

## OPINION AND ORDER
## GRANTING LEAVE TO FILE AMENDED COMPLAINT

Pending is a motion by Plaintiff Clingman & Hanger Management Associates, LLC, for leave to file a second amended complaint. Dkt 229. Argument was heard on the motion, and the parties were permitted to submit supplemental letter briefs regarding potential time bars. See Dkt 279; see also Dkts 281 (letter brief of Defendant Stone Pigman Walther Wittmann), 282 (letter brief of Plaintiff) & 283 (letter brief of Defendant Thomas Hord).

Upon review of the briefs and relevant law, the motion for leave to amend is granted except as to attempts to replead claims previously dismissed in their entirety. See Dkts 213 (order on motions to dismiss) & 279 (minute entry for hearing on motion for leave to amend).

At the outset, it bears mention that, despite dismissal without prejudice, it does *not* appear that Plaintiff seeks leave to replead its claims and/or claims as to certain parties pertaining to (i) breach of fiduciary duty against Defendants Kay Rieck, Thomas Hord, Stone Pigman, Lars Degenhardt, David Elder, and Bruce Ganer, (ii) aiding and

abetting breach of fiduciary duty against Defendants Ganer and Sierra Pine Resources International, and (iii) civil conspiracy against Defendants Rieck, Hord, Degenhardt, Nunes, Elder, Ganer, and SPRI. See Dkts 213 at 44 & 229-1 at ¶¶173–304. As such, these can't be included in the second amended complaint.

Beyond that, as to claims of fraudulent transfer, a main point in contention is whether leave to amend would be futile because the claims as-proposed to be pleaded in the second amended complaint would be beyond the time-bar provided by 11 USC §546(a), which states:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of--
>
> (1) the later of--
>
> (A) 2 years after the entry of the order for relief; or
>
> (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
>
> (2) the time the case is closed or dismissed.

The Cornucopia bankruptcy proceeding is still open and active. See Dkt 213 at 21–23. The parties thus agree that §546(a)(1)(A) is the pertinent reference point here. See Dkts 244 at 15, 267 at 13, 282 at 2 & 283 at 2.

The pertinent date of entry of the order for relief is the date of filing of the Cornucopia bankruptcy petition, being August 9, 2019. See Dkt 258-5 at 5. Claims related to the Cornucopia bankruptcy estate thus must have been commenced by August 9, 2021. Plaintiff's original complaint was filed on August 6, 2021, and the claims in its proposed second amended complaint are dated to May 15, 2023. As such, the newly pleaded claims are time-barred unless they relate back to the original complaint.

Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure provides, "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."

Bankruptcy courts have frequently addressed Rule 15 in the fraudulent-transfer context. Additional transfer claims will relate back if (i) the amended complaint alleges that the additional transfers "were part of a course of conduct" as originally alleged, and (ii) the original complaint gave notice to the parties against whom the additional transfer claims are asserted that the trustee could pursue avoidance of the additional transfers "associated with the course of conduct" as originally alleged. *In re Uplift Rx, LLC*, 625 BR 364, 376 (Bankr SD Tex 2021). The "principal inquiry" is "whether adequate notice of the matters raised in the amended pleading has been given to the opposing party by the general fact situation alleged in the original pleading." *In re M Fabrikant & Sons, Inc*, 447 BR 170, 181 (Bankr SDNY 2011), affirmed 541 Fed Appx 55 (2d Cir 2013) (citations and internal quotation marks omitted).

In *Uplift Rx*, the bankruptcy court denied leave to amend where the plaintiff proposed adding thirteen newly discovered transfers. 625 BR at 370. There, the original complaint neither alleged an overarching fraudulent scheme or common course of conduct from which the new additional transfers arose, nor put the defendants on notice that the plaintiff was conducting an ongoing investigation that would potentially uncover additional transfers. Id at 377. As such, the claims didn't relate back because they didn't arise from the same "conduct, transaction, or occurrence" as required by Rule 15. Id at 370.

Citing *Uplift Rx*, another bankruptcy court held that an amended complaint alleging twenty-one newly identified transfers escaped the time bar of §546(a) upon finding that they *did* relate back to the original complaint. *Texas E&P Operating*, 2023 WL 3012268, *10 (Bankr ND

3

Tex). At first glance, the original and amended complaints appeared vastly different, if for no other reason than the former totaled ten pages and the latter totaled over sixty pages. Id at *1. Indeed, the plaintiff there sought to avoid and recover new transfers not previously listed in the original complaint and to add four new causes of action. Ibid. These new transfers also more than doubled the amount of liability alleged in the original complaint. Id at *3. Even so, the court found that the newly identified transfers referred to the same course of conduct—the same "scheme with a fraudulent purpose"—alleged in the original complaint, and the original complaint signaled an ongoing investigation by plaintiff to uncover additional transfers. Id at *10.

In ways similar to *Texas E&P Operating*, Plaintiff's proposed second amended complaint relates back to the original complaint—and so isn't time barred under §546(a)—because any new claims are all part of the same alleged scheme by Defendant officers of Cornucopia and Furie Operating Alaska. Assertedly "new transfers" that appear in the proposed second amended complaint include:

- o "Between August 2015 and October 2016, Hord received more than $3.9 million from FOA and Cornucopia with approximately $577,670 coming from Cornucopia's bank accounts and $3,383,232 coming from FOA's bank accounts." Dkt 229-1 at ¶41.
- o "Ganer and Sierra Pine received approximately $777,600 from Cornucopia between September 2015 and December 2016 and $678,618 from FOA between September 2015 and July 2019." Id at ¶42; see also id at ¶58.
- o "Stone Pigman was also paid out of Account 6064 in February 2017 after Cornucopia transferred $1.325 million into the account. FOA transferred $37,000 to Stone Pigman on February 6, 2017 and another $25,000 to Stone Pigman on February 24, 2017. Stone Pigman received $843,128.74 from Account 6064

- o "between January 2017 and June 2018." Id at ¶59.
- o "Nunes also appears to have been paid with money transferred from Cornucopia. Between August 2015 and January 2017, Nunes was paid $828,279.89 from Account 6064." Id at ¶60.
- o "Payments to Nordic were in fact from Account 9240, Cornucopia's bank account held separately from FOA. Between September 2015 and August 2016, Cornucopia paid Nordic $31,207,339.83, including $9,600,000 paid to Nordic on December 21, 2015. . . . [E]ach of the payments from Cornucopia to Nordic were made for the benefit of Rieck, Hord, and Nunes." Id at ¶77–78.
- o "The $1.5 million payment to Shelf II was transferred from a joint bank account for Cornucopia and FOA to FOA's bank account on August 28, 2017. FOA paid it to Shelf II on the same day. . . . This payment benefitted Rieck, Hord, and Nunes as the owners of Nordic, Kadmas, ODS, and Advanced Drilling." Id at ¶87.
- o Thirteenth and fourteenth causes of action allege fraudulent transfer related to the Randolph Yost charter. Id at ¶¶243–264.
- o A fifteenth cause of action alleges fraudulent transfer against Rieck for Cornucopia tax credits. Id at ¶¶265–270.
- o Sixteenth and seventeenth causes of action allege fraudulent transfer against various defendants. Id at ¶¶271–286.
- o An eighteenth cause of action alleges insider fraudulent transfer against Ganer and SPRI. Id at ¶¶302–304.
- o A list also identifies particular transfers to each Defendant. See Dkt 229-1 at 73–82.

5

That may seem like a lot. But properly understood, these transfers aren't actually *new* to the proposed second amended complaint. Rather, they are specification of transfers originally and more generally alleged.

The original complaint alleged fraudulent transfers by both Cornucopia and Furie Operating Alaska, under the collectively defined name of *Furie*. See Dkt 1-5 at ¶1 (defining both entities together as *Furie*). Of the transfers in the original complaint that were attributed to the as-defined *Furie*, the proposed second amended complaint now clarifies which transfers were by Cornucopia and which were by Furie Operating Alaska. See Dkt 229 at 5; see also Dkt 229-1 at ¶1 (now referring to Cornucopia and Furie Operating Alaska separately). As such, the proposed second amended complaint now clearly and specifically describes whether each transaction was made *directly* from Cornucopia, *vicariously* from Cornucopia to Furie Operating Alaska to Defendants, or *coterminously* from joint Cornucopia/Furie Operating Alaska bank accounts.

Further, while the original complaint states broadly that fraudulent transactions were made by each Defendant, the proposed amended complaint specifies the alleged dollar amounts, dates, and accounts from which the transfers were made. And regardless of whether it will be susceptible to ultimate proof, Plaintiff does still claim the same total liability of "over $100 million." Compare Dkt 1-5 at ¶3, with Dkt 229-1 at ¶3.

Viewed as mere specification of what was originally and more generally pleaded, the alleged transfers in the proposed second amended complaint plainly relate back. But even assuming that they should fairly be characterized as new transactions, the result is the same. In the words of Rule 15(c)(1)(B), these are transfers "that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."

In this regard, both complaints allege the exact same scheme, being "a brazen scheme to divert . . . cash (provided by its outside lenders) to entities . . . secretly owned" by certain Defendants. Dkts 1-5 at ¶2 & Dkt 229-1

at ¶2. The complaints also allege the same general fact situation. Indeed, the facts described in both complaints are almost identical, with the proposed second amended complaint merely adding some specifics about Cornucopia and the extent to which it was intertwined with Furie Operating Alaska. For example, see Dkt 229-1 at ¶¶5, 11, 19, 24, 43, 52–60.

In short, the claims in the proposed second amended complaint relate back to the original complaint, which was timely filed. To a certainty, the reference at the outset of the original complaint to *Furie* as comprising both Furie and Cornucopia was sufficient to put Defendants on notice that Plaintiff was conducting an investigation that would potentially uncover transfers related to both entities and the implicated Defendants. See *Uplift Rx*, 625 BR at 376–77; *Texas E&P Operating*, 2023 WL 3012268 at *10.

As such, the claims aren't barred by §546(a). But as noted at hearing on the motion for leave to amend, causes of action from the prior complaint that were dismissed with prejudice by previous order are still present in the text of the proposed second amended complaint. See Dkt 279. Those causes of action may not be repleaded.

To be clear, then, this means that only the following causes of action may be repleaded:

- o The first cause of action (breach of fiduciary duty) against Nunes, but only in his capacity as attorney. See Dkt 279 at 2 & 213 at 44.
- o The sixth cause of action (unjust enrichment) against Helena, but excluding references to gas sold through Aurora Gas. See Dkt 279 at 2 & 213 at 15.
- o The thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, and eighteenth causes of action (actual, constructive, and insider fraudulent transfer) against Rieck, Hord, Elder, Nunes, Ganer, SPRI, and Stone Pigman, since they arise out of the *Cornucopia Oil & Gas* bankruptcy proceedings and, as

determined above, aren't time-barred by §546(a). See Dkts 279 at 2 & 213 at 25–26, 44.

The following causes of action may *not* be repleaded.

- The first cause of action (breach of fiduciary duty) against Rieck, Hord, Stone Pigman, Degenhardt, Elder, and Ganer, which was previously dismissed without prejudice but for which leave isn't sought. See Dkts 229-1, 279 at 2 & 213 at 44.
- The second cause of action (aiding and abetting fiduciary duty) against Ganer and SPRI, which was previously dismissed without prejudice but for which leave isn't sought. See Dkts 279 at 2 & 213 at 44.
- The third, fourth, and fifth causes of action (actual, constructive, and insider fraudulent transfer) against Rieck, Hord, Elder, Nunes, Stone Pigman, Ganer, and SPRI. See Dkts 279 at 2 & 213 at 25–26, 44. These causes of action in the proposed second amended complaint are superseded by the new claims also pleaded in causes of action thirteen through eighteen.
- The seventh cause of action (civil conspiracy) against Rieck, Hord, Degenhardt, Nunes, Elder, Ganer, and SPRI, which was previously dismissed without prejudice but for which leave isn't sought. See Dkts 279 at 2 & 213 at 44.
- The eighth and ninth causes of action (exemplary damages and attorney fees), which instead may be included in the prayer for relief. See Dkts 279 at 2 & 213 at 44.
- The tenth and eleventh causes of action (successor liability and successor liability by equitable estoppel) against Stone Pigman. See Dkts 279 at 2 & 213 at 37–38.

- - The twelfth cause of action (fraudulent transfer of Cogan Partners' assets) against Stone Pigman. See Dkts 279 at 2 & 213 at 38–40.
  - Claims against van Stephoudt, Hyrck, and Reed Smith, against whom claims have been dismissed with prejudice per settlement agreement. See Dkt 269.

The amended complaint should specify dates of transfers to each of the remaining Defendants to the extent possible. It should also follow the directions of the Court in the previous minute entry. See Dkt 279. It may not replead claims previously dismissed, as noted above. See Dkt 213.

\* \* \* \* \*

The motion by Plaintiff Clingman & Hanger Management Associates, LLC for leave to file a second amended complaint is GRANTED IN PART. Dkt 229.

Plaintiff must file the second amended complaint by April 19, 2024, absent request for reasonable extension. Before filing, Plaintiff should provide a revised draft to Defendants and confer in good faith to determine agreement that it conforms to this Order.

The tangle of claims and parties is admittedly complex. If the parties, or any of them, see the need for better or more precise specification of what may allowably be repleaded in the second amended complaint, a status conference may be requested and will be promptly heard. No motion for reconsideration or clarification is necessary.

It is noted that some Defendants have asserted time-bar defenses under §548(a)(1) and under state law. For example, see Dkts 258, 259 & 283. For the avoidance of doubt, such defenses may be reasserted on the merits as appropriate in this litigation, including any later motions for summary judgment.

9

SO ORDERED.

Signed on March 22, 2024, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge