UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CLINGMAN & HANGER | § | |
| MANAGEMENT ASSOCIATES, LLC, | § | CIVIL ACTION NO. |
| AS TRUSTEE OF THE FURIE | § | 4:21-cv-02698 |
| LITIGATION TRUST, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | JUDGE CHARLES ESKRIDGE |
| *v.* | § | |
| | § | |
| KAY RIECK, ET AL., | § | |
| | § | |
| *Defendants*. | § | |

### DEFENDANT STONE PIGMAN WALTHER WITTMANN L.L.C.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

TO THE HONORABLE CHARLES R. ESKRIDGE III, UNITED STATES DISTRICT JUDGE:

Plaintiff's Second Amended Complaint (Dkt. 288) against Stone Pigman Walther Wittmann L.L.C. ("Stone Pigman") impermissibly attempts to recover transfers from a ***Furie Operating Alaska, LLC*** ("Furie") bank account to Stone Pigman that Plaintiff now vaguely suggests ***might*** at ***some*** point have included Cornucopia Oil and Gas, LLC ("Cornucopia") funds – without saying how much or when. *See* Dkt. 288, ¶¶ 56, 59, 206, 216, 221, 231. Plaintiff's failure to plausibly plead that a single dollar of Cornucopia's funds allegedly went to Stone Pigman (through a Furie bank account or otherwise) requires dismissal under federal pleading standards.

Moreover, Plaintiff's threadbare and conclusory allegations regarding Cornucopia's alleged transfer of relatively insignificant sums (through Furie as initial transferee) to Stone Pigman fails to explain – much less identify the who, what, when, where, and why – to

support allegations that the purported transfers were made "with the actual intent to hinder, delay or defraud" Cornucopia's creditors.

Stone Pigman respectfully moves to dismiss Plaintiff's conclusory fraudulent-transfer claims under FED. R. CIV. P. 12(b)(6), 8(a), and 9(b)  and deny Plaintiff leave to replead.

TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... 4

NATURE AND STAGE OF PROCEEDINGS ................................................................. 6

STATEMENT OF FACTS ......................................................................................... 7

STATEMENT OF ISSUES ........................................................................................ 7

STANDARD OF REVIEW ........................................................................................ 7

ARGUMENT ......................................................................................................... 8

I.     PLAINTIFF'S SECOND AMENDED COMPLAINT FAILS TO PLAUSIBLY PLEAD
       THAT ANY OF CORNUCOPIA'S FUNDS WENT TO STONE PIGMAN ............................ 8

       A.     The Second Amended Complaint is Devoid of Any, Much Less
              Plausible, Allegations Regarding Constructive Fraudulent Transfer
              Elements ........................................................................................... 11

       B.     Stone Pigman is Not Alleged to be an Initial Transferee And A
              Majority of Transfers Plaintiff Seeks Passed Directly to Nunes ................. 12

II.    THE "ACTUAL" FRAUDULENT TRANSFER CLAIM FALLS WOEFULLY SHORT
       OF HEIGHTENED PLEADING REQUIREMENTS BY FAILING TO PLEAD WITH
       PARTICULARITY ..................................................................................... 13

CONCLUSION ...................................................................................................... 14

CERTIFICATE OF CONFERENCE ............................................................................ 16

CERTIFICATE OF COMPLIANCE ............................................................................ 16

CERTIFICATE OF SERVICE ................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
    556 US 662 (2009).................................................................................7, 9, 10

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................7, 10, 11

*Benchmark Electronics, Inc. v. J.M. Huber Corp.*,
    343 F.3d 719 (5th Cir. 2003) ..................................................................... 8

*Campbell v. Texas Tea Reclamation, LLC*,
    2021 WL 2211807 (S.D. Tex. June 1, 2021)................................................ 11

*Champion v. Texas Southern University*,
    2021 WL 1199318 (Mar. 30, 2021)............................................................. 7

*In re Almazan*,
    2011 WL 841349 (Bankr. S.D. Tex. Mar. 7, 2011)....................................... 13

*In re Cyr*,
    602 B.R. 315 (Bankr. W.D. Tex. 2019)....................................................... 11

*In re Specialty Select Care Ctr. of San Antonio, LLC*,
    No. 17-44248-ELM, 2021 WL 3083522 (Bankr. N.D. Tex. July 21, 2021)................ 13

*Matter of Coutee*,
    984 F.2d 138 (5th Cir. 1993) ................................................................... 12

*Southmark Corp. v. Schulte, Roth & Zabel, L.L.P.*,
    242 B.R. 330 (N.D. Tex. 1999) ................................................................ 12

**Statutes**

11 U.S.C. § 544 ......................................................................................6, 8

11 U.S.C. § 546(a) ..................................................................................... 8

11 U.S.C. § 548 ......................................................................................6, 8

**Rules**

FED. R. CIV. P. 12(b)(6)........................................................................2, 7, 8, 14

FED. R. CIV. P. 8(a)...........................................................................passim

FED. R. CIV. P. 8(a)(2) .............................................................................. 7

FED. R. CIV. P. 9(b)...........................................................................2, 7, 13, 14

**Other Authorities**

5 COLLIER ON BANKRUPTCY P 550.02 (16th ed. 2021) ........................................... 12

## NATURE AND STAGE OF PROCEEDINGS

Stone Pigman removed this case on August 18, 2021 (Dkt. 01) and moved to dismiss on September 14, 2021 (Dkt. 45).  On October 19, 2021, Plaintiff sought leave to amend its complaint as to Stone Pigman (Dkt. 94), which Stone Pigman opposed on November 9, 2021 (Dkt. 112). On April 4, 2022, this Court granted Plaintiff's motion for leave to amend and denied Stone Pigman's first motion to dismiss as moot (Dkt. 152).  After Plaintiff filed its First Amended Complaint on April 12, 2022 (Dkt. 155), Stone Pigman filed its second motion to dismiss on May 5, 2022 (Dkt. 169).

On March 31, 2023, this Court entered its Opinion and Order dismissing **with prejudice** Plaintiff's amended claims against Stone Pigman for breach of fiduciary duty, actual and constructive fraudulent transfer (for claims arising out of the Furie bankruptcy estate), successor liability, successor by equitable estoppel, and fraudulent transfer of Cogan Partners' assets. Dkt. 213.

The Court's opinion also acknowledged that Plaintiff may have intended to assert fraudulent transfer claims with respect to the Cornucopia bankruptcy estate "[b]ut as currently pleaded, such claims—to the extent pleaded—are impossible to separate from those arising out of the Furie bankruptcy estate." *Id.* at 25. Thus, the Court dismissed without prejudice §§ 544 and 548 "claims with respect solely to the Cornucopia bankruptcy estate," allowing Plaintiff to seek leave to replead any such claims.  *Id.* at 25-26. On March 22, 2024, the Court granted Plaintiff leave to replead Cornucopia's purported actual and fraudulent transfer claims against Stone Pigman, among others. *See* Dkt. 286, p. 7.

Plaintiff filed the Second Amended Complaint on April 18, 2024 seeking to recover

$843,045.31 from Stone Pigman as alleged actual and constructive fraudulent transfers from the Cornucopia estate. Dkt. 288, ¶¶ 56, 59, 206, 216, 221, 231.

## STATEMENT OF FACTS

Stone Pigman incorporates by reference its "Nature and Stage of Proceedings" for its statement of facts.

## STATEMENT OF ISSUES

1.   Should the Sixteenth – actual fraudulent transfer – and Seventeenth – constructive fraudulent transfer – Causes of Action against Stone Pigman be dismissed under FED. R. CIV. P. 8(a) and 12(b)(6) for Plaintiff's failure to plausibly plead any transfer from Cornucopia to Stone Pigman?

2.   Should the alleged "actual" fraudulent transfers to Stone Pigman be dismissed because Plaintiff failed to plead with particularity as required by FED. R. CIV. P. 9(b)?

## STANDARD OF REVIEW

*Issue 1*.  Federal pleading standards require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As to Stone Pigman, the Second Amended Complaint flunks this test, providing nothing "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009), quoting *Twombly*, 550 U.S. 555).  Failure to meet these standards warrants dismissal under Rule 12(b)(6) for failure to satisfy Rule 8(a)(2).  *See Champion v. Texas Southern University*, 2021 WL 1199318, at *1-2 (S.D. Tex. Mar. 30, 2021) (Eskridge, J.).

*Issue 2*.  FED. R. CIV. P. 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Under

longstanding Fifth Circuit precedent, the plaintiff must plead "the who, what, when, where, and how" of any fraud – which Plaintiff fails to do.  *See Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

**ARGUMENT**

**I.     PLAINTIFF'S SECOND AMENDED COMPLAINT FAILS TO PLAUSIBLY PLEAD THAT ANY OF CORNUCOPIA'S FUNDS WENT TO STONE PIGMAN**

The Court dismissed ***with prejudice*** Plaintiff's "claims under §§ 544 and 548 arising out of the Furie bankruptcy estate" against Stone Pigman because such claims were barred by limitations under 11 U.S.C. § 546(a). Dkt. 213 at 25. The Court also dismissed without prejudice §§ 544 and 548 claims "with respect ***solely*** to the Cornucopia bankruptcy estate[,]" to the extent any exist. *Id.*  Plaintiff's Second Amended Complaint does not plausibly plead or identify any alleged transfers that arose solely from the Cornucopia bankruptcy estate and thus fails to state a claim under Rule 12(b)(6) and must be dismissed.

Plaintiff's Second Amended Complaint merely alleges ***the possibility*** that "funds transferred to a [Furie] account and then transferred out to the defendants were also transfers of Cornucopia's property." *See* Dkt 288, ¶¶ 206, 221. What's glaringly missing are any ***plausible*** allegations that money paid to Stone Pigman ***from a Furie account*** related ***solely*** to the Cornucopia estate. Tellingly, the purported transfers to Stone Pigman identified in the Second Amended Complaint are the ***same Furie transfers*** identified and dismissed with prejudice in Plaintiff's First Amended Complaint. *Compare* Dkt. 155, ¶ 166 (First Amended Complaint) ("Furie paid Stone Pigman $843,128.74 between January 19, 2017 and June 1, 2018 (with an additional payment of $83.43 made on October 16, 2018))

*with* Dkt. 288, ¶ 59 ("Stone Pigman received $843,128.74 from [Furie] Account 6064 between January 2017 and June 2018. Transfers to Stone Pigman are identified in Exhibit D to this complaint.") and Dkt. 288, Ex. D (showing "Transfers to Stone Pigman from *FOA's* Bank Accounts") (emphasis added).

Plaintiff's allegations that Cornucopia deposited funds into a Furie account and some of those funds possibly might have ended up at Stone Pigman are speculative, implausible, and woefully insufficient to satisfy federal pleading standards. *See* Dkt. 288 ¶¶ 56, 59, 206, 216, 221, 231; *Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. [] Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'") (internal citation and quotations omitted).

In fact, a ***draft*** of Plaintiff's Second Amended Complaint sent to Stone Pigman before Plaintiff filed its Motion for Leave to Amend (Dkt. 229) contained slightly more definitive (albeit conclusory) language – omitted from the actual, filed version of the complaint (Dkt. 229-1) – suggesting that the Furie funds that went to Stone Pigman had actually come from Cornucopia. *See* the following screenshot from Dkt. 244-1 (Exhibit 1 to Stone Pigman's Response Opposing Plaintiff's Motion for Leave to Amend), showing in red strikethrough the allegations Plaintiff apparently concluded that it could not make as to Stone Pigman:

280298.      Nunes received the above-described transfers from FOA's Account 6064 where some of the funds were transferred from Cornucopia.

281299.      Stone Pigman also received the above-described transfers from FOA's Account 6064 where some of the funds were transferred from Cornucopia.

Consistent with the as-filed complaint attached to Plaintiff's Motion for Leave to Amend, Plaintiff's Second Amended Complaint also omits any suggestion that Furie funds paid to Stone Pigman **actually came** solely **from Cornucopia**. *See* Dkt. 288, ¶¶ 230, 231.

Simply put, the Cornucopia transfers to Furie alleged in the Second Amended Complaint, even when taken as true, aren't tied to Stone Pigman by anything other than speculation, and don't show that Plaintiff is entitled to relief from Stone Pigman because they don't show Stone Pigman got any of Cornucopia's money.  Indeed, Plaintiff only identifies one specific example of a transfer from Cornucopia to Furie and even that example doesn't allege those funds actually flowed through to Stone Pigman.  *See* Dkt. 288, ¶ 59; *Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'") (quoting FED. R. CIV. P. 8(a)).

Ultimately, alleging that Cornucopia transferred funds to Furie and Furie transferred funds to Stone Pigman at most might create a "possibility" of liability – but it fails to state a claim for the same reason the Supreme Court has found bare allegations of "parallel conduct" inadequate to satisfy federal pleading standards in an antitrust case.  *See* *Twombly*, 550 U.S. at 557 ("An allegation of parallel conduct is thus much like a naked assertion of conspiracy in a § 1 complaint: it gets the complaint close to stating a claim,

but without some further factual enhancement it stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'" (quoting FED. R. CIV. P. 8(a)).

**A.    The Second Amended Complaint is Devoid of Any, Much Less Plausible, Allegations Regarding Constructive Fraudulent Transfer Elements**

Setting aside Plaintiff's failure plausibly to plead funds transferred from Cornucopia to Stone Pigman, Plaintiff could not plead basic "constructive" fraudulent transfer elements regarding lack of reasonably equivalent value and insolvency. Indeed, Plaintiff **never complains** about the **quality** of any legal services that Stone Pigman allegedly rendered and **never disputes** the **validity** of Stone Pigman's expenses. Instead, Plaintiff focuses on defendant **Michael Anthony Nunes's** ("Nunes") alleged self-dealing through affiliate transactions **unrelated** to these alleged payments. Failure plausibly to plead these elements warrants dismissal. *See Campbell v. Tex. Tea Reclamation, LLC*, No. 3:20-CV-00090, 2021 WL 2211690, at *6 (S.D. Tex. May 6, 2021), report and recommendation adopted, No. 3:20-CV-90, 2021 WL 2211807 (S.D. Tex. June 1, 2021) (citing *Twombly* and finding that the complaint's mere repetition of "the words 'without receiving reasonably equivalent value' over and over and over does not survive a motion to dismiss under Rule 12(b)(6)."); *In re Cyr*, 602 B.R. 315, 332 (Bankr. W.D. Tex. 2019) (finding that the trustee "failed to properly plead insolvency for purposes of a constructively fraudulent transfer claim … [because] [t]he Trustee presented no allegations regarding the value of the Cyr's debt relative to the value of the Cyr's assets at the time the transfers were made.").

**B.**    **Stone Pigman is Not Alleged to be an Initial Transferee And A Majority of Transfers Plaintiff Seeks Passed Directly to Nunes**

Approximately $620,000 of the $843,045.31 Plaintiff seeks to recover from Stone Pigman was passed through directly to Nunes and isn't recoverable because Stone Pigman was a mere conduit for those funds to reach Nunes as the initial transferee. *See Southmark Corp. v. Schulte, Roth & Zabel, L.L.P.*, 242 B.R. 330, 338 (N.D. Tex. 1999), aff'd in part sub nom. *In re Southmark Corp.*, 239 F.3d 365 (5th Cir. 2000), as amended on reh'g (Dec. 11, 2000) (finding a law firm "served as a mere conduit and was not the initial transferee of the funds" in holding funds as an escrow agent); *Matter of Coutee*, 984 F.2d 138, 140-41 & n.3 (5th Cir. 1993) (adopting "dominion or control" test, under which "a party that receives a transfer directly from the debtor will not be considered the initial transferee unless that party gains actual dominion or control over the funds" and holding that bank, not law firm, was the initial transferee of funds paid by client to law firm to facilitate firm's payment of debt to bank); *see also* 5 COLLIER ON BANKRUPTCY P 550.02 (16th ed. 2021) ("[M]any courts have found that a party acting merely as a conduit who facilitates the transfer from the debtor to a third party is not a 'transferee' and, therefore, not the initial transferee.").

Plaintiff has been aware that $621,670.00 passed ***directly to Nunes*** since at least March 2022, when Stone Pigman served its objections and responses to Plaintiff's first set of interrogatories with schedules reflecting the amount of funds passed through to Nunes.

Moreover, Plaintiff implicitly concedes that Stone Pigman was a subsequent (*i.e.*, "immediate or mediate") transferee of funds that first allegedly traveled from Cornucopia

to Furie for various reasons and in unrelated amounts before allegedly later arriving at Stone Pigman. Dkt. 288, ¶ 59 ("Stone Pigman was also paid out of [Furie] Account 6064 in February 2017 *after Cornucopia transferred $1.325 million into the [Furie] account*.")(emphasis added).

## II. THE "ACTUAL" FRAUDULENT TRANSFER CLAIM FALLS WOEFULLY SHORT OF HEIGHTENED PLEADING REQUIREMENTS BY FAILING TO PLEAD WITH PARTICULARITY

Plaintiff's failures are even worse when it comes to alleged "Actual Fraudulent Transfer." *See In re Specialty Select Care Ctr. of San Antonio, LLC*, No. 17-44248-ELM, 2021 WL 3083522, at *16 (Bankr. N.D. Tex. July 21, 2021) (Morris, J.) (dismissing "actual" fraudulent transfer claims because the complaint failed to meet Rule 9(b) standards – the "Complaint fails to specify (1) whether the Debtor intended to hinder its creditors, intended to delay its creditors, or intended to defraud its creditors (or some specified combination thereof), (2) how or in what way the Debtor intended such harm, (3) towards which creditors or groups or categories of creditors the Debtor's conduct was directed, and (4) the factual basis for the Trustee's belief that the Debtor intended such conduct to affect these creditors or groups or categories of creditors (including, as applicable, any relevant badges of fraud and the factual basis for the existence of such badges of fraud)); *In re Almazan*, 2011 WL 841349, at *2 (Bankr. S.D. Tex. Mar. 7, 2011) (finding plaintiff failed to state a claim for "actual" fraudulent transfer because there were no allegations as to the transferor's intent).

Although Plaintiff makes a conclusory, omnibus allegation that "[t]he transfers to the defendants were made with the actual intent to hinder, delay, or defraud Cornucopia's

creditors" (Dkt. 288, ¶ 218), Plaintiff's bare allegations do not support a finding of "actual" fraudulent transfers *to Stone Pigman* – whether for representing Furie or otherwise. There are no particularized allegations of how paying Stone Pigman actually was intended to hinder, delay, or defraud other creditors, and no plausible theory put forth for how paying Stone Pigman for legal services and expenses was "actually fraudulent." Plaintiff cannot satisfy federal pleading standards for an actual fraudulent transfer claim against the Stone Pigman law firm, especially Rule 9(b), by relying on misdirection and innuendo about other alleged wrongdoing and extraction of funds by other parties. Again, there is no allegation that *Stone Pigman* participated in any of the other defendants' alleged wrongdoing.

## CONCLUSION

The Court should dismiss Plaintiff's claims against Stone Pigman with prejudice under FED. R. CIV. P. 8(a), 9(b), and 12(b)(6), and grant Stone Pigman such other and further relief to which it is entitled.

Respectfully submitted,

/s/ George M. Kryder

George M. Kryder – *Attorney in Charge*
  State Bar No. 11742900
  S.D. Tex Bar No. 14778
  gkryder@velaw.com
Matthew W. Moran
  State Bar No. 24002642
  S.D. Tex Bar No. 24471
  mmoran@velaw.com
Jordan W. Leu
  State Bar No. 24070139
  S.D. Tex Bar No. 1133712
  jleu@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3900
Dallas, Texas  75201
Telephone: (214) 220-7700
Fax: (214) 220-7716

Patrick W. Mizell
  State Bar No. 14233980
  S.D. Tex Bar No. 36390
  pmizell@velaw.com
VINSON & ELKINS LLP
845 Texas Ave., Suite 4700
Houston, Texas 77002
Telephone: (713) 758-2222

*Attorneys for Defendant Stone Pigman Walther Wittmann L.L.C.*

## CERTIFICATE OF CONFERENCE

Under the Court Procedures for Hon. Charles R. Eskridge III, ¶ 17 and LR 7.2, on April 26, 2024, I conferred with Plaintiff's counsel, Avery Samet, in a series of email exchanges in which Plaintiff took the position that Stone Pigman may somehow be precluded from filing a motion to dismiss the Second Amended Complaint and indicated that Plaintiff is "strongly opposed to more Rule 12 motions." Stone Pigman believes that despite multiple opportunities Plaintiff has failed to state any claims that can survive Rule 12 and that Stone Pigman's motion is meritorious and should be granted.

As it has done before, by letter to Plaintiff's counsel dated April 29, 2024, Stone Pigman set forth its legal and factual positions why Plaintiff's claims are subject to dismissal.

*/s/  George M. Kryder*
George M. Kryder

## CERTIFICATE OF COMPLIANCE

Under the COURT PROCEDURES FOR HON. CHARLES R. ESKRIDGE III, ¶ 18(c), I certify that this motion contains 2,464 words, except the excluded case caption, table of contents, table of authorities, signature block, and certificates. It was prepared in Microsoft Word using 13-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

*/s/  George M. Kryder*
George M. Kryder

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument was served upon all counsel of record on May 2, 2024, using the Court's electronic filing system.

*/s/  George M. Kryder*
George M. Kryder